IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(PHILADELPHIA)

| | |
|---|---|
| DANIEL J. HARSHBARGER AND EDITH M. HARSHBARGER, Individually and on Behalf of all Persons Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA MUTUAL LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. _____<br><br>Complaint -- Class Action |

### CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs Daniel J. Harshbarger and Edith M. Harshbarger, each by and through their counsel, on behalf of themselves and all other persons similarly situated ("Class"), allege the following facts and claims upon personal knowledge as to matters relating to themselves, and upon information and belief as to all other matters based upon the investigation of counsel as follows:

### INTRODUCTION

1.  Plaintiffs bring this complaint, for themselves and on behalf of a class of similarly situated participating (or "par") policyholders of Defendant Pennsylvania Mutual Life Insurance Company ("Penn Mutual" or the "Company") seeking damages and/or equitable relief for, *inter alia,* Penn Mutual's breaches of contract, including the implied covenants of good faith and fair dealing, and for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "Consumer Protection Law") for its alleged deceptive acts or practices, for failing to pay the full amount of annual policy dividends out of divisible surplus that are due to Plaintiffs

1

and the Class under their contracts, which divisible surplus includes all surplus (or profits) in excess of the maximum limit defined by 40 P.S. § 614 (the "excess surplus").

## PARTIES

2. Plaintiff Daniel J. Harshbarger resides in Pittsburgh, PA, and owns three Penn Mutual participating whole-life policies: one from April 15, 1973 to the present (policy number 5969491), another from May 24, 1974 to the present (policy number 6085128) and another from February 12, 1977 to the present (policy number 6560214).

3. Plaintiff Edith M. Harshbarger resides in Pittsburgh, PA, and owns two Penn Mutual participating whole-life policies, both from November 11, 1993 to the present (policy numbers 7955889 and 7955891).

4. Defendant Pennsylvania Mutual Life Insurance Company is a domestic mutual life insurance company of Pennsylvania with its headquarters in Horsham, Pennsylvania.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332 because the amount in controversy for the Class exceeds $5 million, exclusive of interest and costs, and there is diversity between most Class members and the Defendant.

6. Venue is proper here pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred here.

## SUBSTANTIVE ALLEGATIONS

### Pennsylvania Law Mandates That Domestic Life Insurers' Contracts Provide for the Distribution of All Excess Surplus <u>Annually as Participating Dividends</u>

7. A "participating" insurance policy is one that entitles the holder to a share in the mutual life insurer's annual surplus (profits) as dividends. In contrast, the holder of a "non-participating" insurance policy is not entitled to a share of the mutual's surplus as dividends.

Similarly, for the holders of contracts with funds in separate accounts (*e.g.*, certain annuities and variable life insurance products), the separate account assets (including surplus) and liabilities (including reserves) are legally separate from the mutual insurer and thus are not included and do not share in the mutual's divisible surplus or dividends.

8. The Pennsylvania statutory scheme authorizes life insurance companies to issue participating (par) life insurance policies only if they provide for the payment of dividends from surplus (or profits) on an annual basis (or other durational options not relevant here). For Pennsylvania domestic mutual life insurers, these annual dividends must include all surplus that exceeds a maximum annual "safety fund" limit (*i.e.*, all surplus in excess of 10% of its reserves, and not including the excess market value of its securities over their book value) (the "Safety Fund Limit").

9. The Pennsylvania dividend statute for life insurers requires the following contractual language for all participating policies:

> A provision that **the policy shall participate in the surplus of the company**, and that, beginning not later than the end of the third policy-year, **the company will annually determine the portion of the divisible surplus accruing on the policy,** and that the party entitled to elect such option **shall have the right to have the dividend arising from such participation** paid in cash, or applied in accordance with any one of such other dividend options as may be provided by the policy. If any such other dividend options are provided, the policy shall further state which option shall be automatically effective, if such party shall not have elected some other option. **In lieu of the foregoing provisions, the policy may contain a provision that the policy shall participate in the surplus of the company**, and that, beginning not later than the end of the fifth policy-year, **the company will determine the portion of the divisible surplus accruing on the policy, and that the party entitled thereto shall have the right to have the current dividend arising from such participation** paid in cash, and that, at periods of not more than five years thereafter, such apportionment and payment, at the option of such party, shall be had. **Renewable term policies of ten years or less may provide that the surplus accruing to such policies shall be determined and apportioned each year after the second policy-year**, and accumulated during each renewal period, and that at the end of any renewal period, or renewal of the policy by the insured, the company shall apply the accumulated surplus as an annuity for the next succeeding renewal term in the reduction of premiums.

40 P.S. § 510 (f) (emphasis added).  (Plaintiffs refer herein to the distributions of divisible surplus mandated for renewable term policies (of ten years or less) as dividends.)

10.     In compliment to the dividend statute, the safety fund statute, 40 P.S. § 614, provides that each domestic mutual life insurance company must pay all surplus that exceeds the Safety Fund Limit to its participating policyholders.  The purpose of the statute is to prevent mutual life insurers from hoarding surplus and to ensure the excess surplus is distributed annually to its par policyholders.  It states as follows:

> Any mutual life insurance company, incorporated under the laws of this Commonwealth and transacting business therein, may establish and maintain, or, if already established, may continue to maintain, a surplus or safety fund to an amount not in excess of ten per centum of its reserve, or one hundred thousand dollars, whichever is greater, and the excess of the market value of its securities over their book value.
>
> In cases where the surplus or safety fund at present existing, exclusive of all accumulations held on account of the outstanding deferred dividend policies, exceeds the limit above designated, the company shall be entitled to retain said surplus or safety fund, but shall not be entitled to add thereto so long as it exceeds said limit.
>
> For cause shown, the Insurance Commissioner may, at any time, permit any corporation to accumulate and maintain a surplus or safety fund in excess of the limit above mentioned for a prescribed period, not exceeding one year in any one permission, by filing in his office a decision stating his reasons therefore and causing the same to be published in his next annual report.

11.     Although § 614 permits the Pennsylvania Insurance Commissioner to allow domestic mutual life insurers to accumulate surplus in excess of 10% Safety Fund Limit "for cause shown" in a given year, no such permission was ever sought or obtained by Penn Mutual. In fact, Penn Mutual never had cause to seek such a permission given its financial strength.

**Plaintiffs and the Putative Class Own Par Penn Mutual Policies
Entitled to All the Protections Incorporated Therein from
<u>40 P.S. § 510 (f) and § 614</u>**

12.     Penn Mutual has issued participating life insurance policies to Plaintiffs and virtually all of its other policyholders who number, upon information and belief, in the hundreds

4

of thousands and comprise the putative Class. The policies must, and do, contain the requisite dividend language per Section 510 (f). For example, Plaintiff Edith M. Harshbarger's policies state:

> This policy shall participate in divisible surplus while it is in force except as provided in the Benefits on Lapse provision and the Settlement Options section. Dividends of such surplus, if any, to be apportioned to this policy shall be determined annually by Penn Mutual. Each dividend shall be payable at the end of the policy year, unless this policy is in force under the Settlement Options section, except that any dividend for the first policy year shall not be payable until the premium for the second policy year has been paid.

Plaintiff Daniel J. Harshbarger's policies contain the same relevant language.

13. Penn Mutual's policies do not make specific reference to §§ 510 or 614, but do contain the requisite language that each policy have the right to share in the divisible surplus, annually, and any resulting dividends (*e.g.*, the policies state they "shall participate in divisible surplus while it is in force" and "Dividends of such surplus, if any, to be apportioned to this policy shall be determined annually by Penn Mutual. Each dividend shall be payable at the end of the policy year…"). Thus, Penn Mutual's policies incorporate the requirement for ascertaining and paying annual dividends out of the divisible surplus per § 510, which divisible surplus includes the excess surplus mandated for payment to its par policyholders annually by § 614.

### Penn Mutual Retained Excess Surplus Due to its Participating Policyholders

14. Penn Mutual (like all other insurers operating nationally) is required by insurance regulators to file an Annual Statement (and other information) each year that contains detailed information about its financial condition for the prior year(s) on the financially conservative Statutory Accounting Principles ("SAP") basis. The accuracy of the information is attested to by its senior management.

15.     Based on its own financial information (reported by A.M. Best), Penn Mutual's safety fund exceeded the Safety Fund Limit for each of the years relevant to this action, and as a result the Company improperly retained excess surplus that it was required to distribute as dividends to Plaintiffs and the Class. That is, Penn Mutual's surplus exceeded its reserves by more than 10% in 17 of the last 18 years, and therefore it owes that excess to Plaintiffs and the Class. Reserves are set forth per 40 P.S. § 71 (captioned "Computation of reserve liability") and reported in the Annual Statement at page 3, lines 1 and 2. (The "excess of the market value of its securities over their book value" allowance set forth in § 614 is irrelevant because the book value of Penn Mutual's securities exceeded their market value so it is a negative number (and, in any event, the Asset Valuation Reserve now accounts for that item and, because booked as a liability, is already removed from surplus).

16.     The 10% Safety Fund Limit is computed by taking the Company's annual surplus and dividing it by its annual reserves per § 614. Therefore, Penn Mutual's safety fund percentages for the following pertinent years are as follows:

| Year | Safety Fund | Excess |
|------|-------------|--------|
| 1994 | 10.9%       | 0.9%   |
| 1995 | 12.0%       | 2.0%   |
| 1996 | 9.20%       | n/a    |
| 1997 | 10.7%       | 0.7%   |
| 1998 | 12.5%       | 2.5%   |
| 1999 | 15.1%       | 5.1%   |
| 2000 | 19.0%       | 9.0%   |
| 2001 | 21.0%       | 11.0%  |
| 2002 | 22.8%       | 12.8%  |
| 2003 | 23.2%       | 13.2%  |
| 2004 | 29.2%       | 19.2%  |
| 2005 | 30.2%       | 30.2%  |
| 2006 | 29.7%       | 19.7%  |
| 2007 | 28.9%       | 18.9%  |
| 2008 | 27.2%       | 17.2%  |

| | | |
|---|---|---|
| **2009** | 26.9% | 16.9% |
| **2010** | 28.7% | 18.7% |
| **2011** | 25.7% | 15.7% |

In the above calculations, Penn Mutual's surplus includes its surplus notes because they are treated as surplus under insurance accounting (SAP) and the governing statute does not distinguish among surplus subject to the Safety Fund Limit. (Without the surplus from its surplus notes, Penn Mutual's Safety Fund percentage also exceeds the Safety Fund Limit for each year: by 2 to 4 percentage points less than calculated above, *e.g.*, for 2011, the excess was 12.7% instead of 15.7%.)

17. Based on Plaintiffs' and their counsel's investigations, and these calculations, Plaintiffs and the Class have suffered damages in excess of $5 million, in specific amounts to be determined at trial.

18. To the extent that Penn Mutual is found to have under reported its surplus and/or over reported its reserves in its Annual Statements or other relevant filings, then Plaintiffs and the Class may have claims for additional years and greater amounts than those reflected in the percentages above.

## CLASS ACTION ALLEGATIONS

19. Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure seeking to represent a national class of all persons who own or have owned Penn Mutual participating policies during the applicable limitations period (the "Class"). Excluded from the Class is any person, firm, trust, corporation, officer, director and other individual or entity that is related to or affiliated with Penn Mutual, and the legal representatives, heirs, successors-in-interests or assigns of any such excluded party, and this Court and Court personnel.

20. The members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs believe that the number of Class members is in excess of 200,000. Class members can be identified from the records maintained by Penn Mutual and notified of the pendency of this action by mail using a form of notice similar to that customarily used in other class actions.

21. Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class. Plaintiffs have retained competent counsel experienced in policyholder class action litigation in both state and federal courts nationwide, including over unpaid life insurance dividends, and intend to prosecute this action vigorously.

22. Plaintiffs' claims are typical of those of the other members of the Class because (a) each has a participating policy imbued with identical rights to annual dividends and/or with substantially identical language supporting his/her claim, and (b) the harm sustained by Plaintiffs and all of the members of the Class arises from and was caused by the same course of conduct in which Penn Mutual engaged. The Plaintiffs do not have interests that are antagonistic to or in conflict with the Class.

23. Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting individual members of the Class. Common questions include:

(a) Whether and by how much Penn Mutual retained surplus in excess of the Safety Fund Limit;

(b) Whether Penn Mutual retained excess surplus, in breach of its contracts and any other duties, that should have been distributed as annual policy dividends to its participating policyholders comprising the Class;

(c) Whether the Class is entitled to an accounting;

(d) Whether the Class has sustained damages and the proper measure of such damages;

(e) Whether equitable relief is appropriate to prevent the continuation of the alleged ongoing wrongdoing; and

(f) Whether Penn Mutual, as a result of its alleged deceptive conduct, has violated the Consumer Protection Law and the proper measure of the damages and other remedies available there under.

24. In retaining excess surplus and failing to pay the annual dividends it was contractually obligated to pay under its policies that incorporate the governing statutes, Penn Mutual has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

25. Common questions of law or fact predominate over individual questions because par policyholders are all adversely affected by the Company's failure to honor its contracts, and correctly calculating its excess surplus will determine for all Class members the amount of additional dividends they are owed.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the harm suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged. Moreover, absent class treatment, there is a risk of inconsistent judgments by different courts hearing the identical claims of over 200,000 policyholders. Plaintiffs know of no difficulty that will be

encountered in the management of this litigation that would preclude its maintenance as a class action.

### The Discovery Rule/Concealment

27.  Plaintiffs did not discover earlier that Penn Mutual was retaining excess surplus and failing to pay annual dividends due to themselves and the Class, and had no reason to believe that Penn Mutual was failing to perform its contracts. Penn Mutual did not provide Plaintiffs and the Class with annual information about the Company and its financial performance sufficient that they would suspect or could discern the dividend violations of their insurance policies.

28.  In fact, Penn Mutual communicated directly with its participating policyholders through annual policy statements and otherwise, purporting to inform them of the full dividends to which there were entitled, yet failed to disclose to them that the Company was retaining excess surplus, that it was underpaying and underreporting annual dividends due to the participating policyholders, and/or any other information that would have allowed the Plaintiffs and the Class to independently and correctly calculate the annual excess surplus due to them.

29.  Plaintiffs learned only recently, shortly before filing this complaint, that Penn Mutual was violating their contracts by retaining excess surplus and underpaying their dividends.

30.  Therefore, any otherwise applicable statutes of limitation are tolled from the first violation of Plaintiffs' policies under the Discovery Rule and/or concealment doctrine.

### COUNT I – BREACH OF CONTRACT

31.  Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

32.  Plaintiffs and the Class entered into insurance contracts with Penn Mutual, in which they promised to pay premiums in return for the Company promising, *inter alia,* to allow them to fully participate in the Company's surplus or profits.

33. Plaintiffs and the Class have performed their part of these insurance contracts.

34. Penn Mutual has breached an express provision of its insurance contracts with Plaintiffs and the Class by not ascertaining and distributing annually the full amount of divisible surplus (which includes the excess surplus defined per § 614) due them as annual policy dividends. Instead, the Company has failed to distribute (and retained) its excess surplus in violation of its insurance contracts and/or the limits contained in the governing statutes incorporated therein.

35. Even if Penn Mutual has not breached an express provision of its insurance contracts, it has still breached the implied covenants of good faith and fair dealing with regards Plaintiffs and the Class under their policies by retaining excess surplus mandated for payment by law per 40 P.S. §§ 510 and 614 to its participating policyholders.

36. The Company's breaches of contract, including the implied covenants of good faith and fair dealing, have damaged Plaintiffs and the Class in an amount to be proven at trial.

## COUNT II –
## UNJUST ENRICHMENT

37. Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

38. Because Penn Mutual will be unjustly enriched if it is allowed to retain such funds, all excess surplus (that exceeding the annual 10% Safety Fund Limit) should be disgorged to Plaintiffs and the Class.

39. This relief is appropriate to the extent Plaintiffs and the other Class members may have no adequate remedy at law.

## COUNT III –
## MONEY HAD AND RECEIVED

40.     Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

41.     Penn Mutual owes Plaintiffs and the Class their distributions of excess surplus for money had and received from policyholders when they (over) paid their policy premiums, and for the surplus otherwise attributable to Class members, which funds must be paid to the Class as dictated by contract and the statutes incorporated therein.

## COUNT IV –
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1, *et seq.*

42.     Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

43.     This Count is predicated on allegations of deceptive conduct, and not on any allegation of fraud or fraudulent conduct.

44.     Plaintiffs and the members of the Class were harmed by Penn Mutual's deceptive conduct with regards the nonpayment on their policies of the requisite annual dividends out of excess surplus.

45.     Penn Mutual deceived Plaintiffs and the Class by selling them participating life insurance policies as described herein and then failing to disclose to them that it had failed to pay annual policy dividends out of its excess surplus in the amount required by their insurance policies, which contracts incorporate the governing statutes.

46.     Penn Mutual deceived Plaintiffs and the Class further by distributing annual policy statements to them that purported to disclose all the annual dividends to which they were entitled, but which statements were deceptive because they failed to disclose to them the actual larger amount of annual dividends to which each Plaintiff and Class member was entitled on each of their policies.

47. Penn Mutual's deceptive conduct violates 73 P.S. §201-2 (xxi), in particular, "engaging in any other ... deceptive conduct which creates a likelihood of confusion or of misunderstanding." Such deceptive conduct is "unlawful" as set forth in 73 P.S. §201-3.

48. As a direct and proximate result of Penn Mutual's deceptive conduct, Plaintiffs and the Class have suffered damages provided for under the Consumer Protection Law, including statutory and treble damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the Court to:

A. Certify this case as a class action;

B. Grant judgment against Penn Mutual on all Counts and for damages in such amount as the Company was required by its contracts and duties to distribute as dividends to Class members, including statutory interest thereon;

C. Grant judgment against Penn Mutual on Count IV under the Consumer Protection Law, including statutory and treble damages and all other relief provided there under;

D. Grant all appropriate equitable and/or injunctive relief, including for an accounting to the extent the surplus and reserve figures have been improperly and/or inadequately reported, against Penn Mutual to the extent the Court determines that an adequate remedy at law does not exist;

E. Award Plaintiffs their costs and disbursements incurred in maintaining this action, including reasonable attorneys' and experts' fees and other expenses, and pre-and post-judgment interest; and

F. Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

Dated: October 31, 2012

Respectfully submitted,

Daniel J. Harshbarger and
Edith M. Harshbarger
By their attorneys,

*[signature]*
Stephen M. Pincus (PA ID. 88976)

Joseph N. Kravec, Jr. (PA ID. 68992)
(*pro hac vice* to be filed)
**STEMBER FEINSTEIN DOYLE
     PAYNE & KRAVEC, LLC**
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Telephone: (412) 281-8400

Jason B. Adkins (*pro hac vice* to be filed)
John Peter Zavez (*pro hac vice* to be filed)
**ADKINS, KELSTON & ZAVEZ, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114
Telephone: (617) 367-1040

Andrew Friedman (*pro hac vice* to be filed)
**BONNETT, FAIRBOURN, FRIEDMAN
     & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100

Mark A. Chavez (*pro hac vice* to be filed)
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 381-5599

***Attorneys for Plaintiffs***