IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL J. HARSHBARGER, *et al.* | : | CIVIL ACTION |
| *Plaintiffs* | : | |
| | : | NO. 12-6172 |
| v. | : | |
| | : | |
| PENNSYLVANIA MUTUAL LIFE | : | |
| INSURANCE COMPANY | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                            April 11, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before the Court is the motion to dismiss filed by Pennsylvania Mutual Life Insurance Company ("Defendant" or "Penn Mutual") [ECF 8], which seeks the dismissal of the complaint on abstention grounds and/or for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure (Rule) 12(b)(6). Plaintiffs Daniel J. Harshbarger and Edith M. Harshbarger, (collectively "Plaintiffs") have opposed the motion to dismiss [ECF 20], making it ripe for consideration.

For the reasons stated herein, the motion to dismiss is granted and the Court will abstain from exercising its jurisdiction in this matter.

### BACKGROUND[1]

Penn Mutual is a Pennsylvania-domiciled mutual life insurance company. (Comp. ¶5). Plaintiffs, Daniel J. Harshbarger and Edith M. Harshbarger, are Pennsylvania residents who filed

---

[1] For purposes of ruling on Defendant's motion to dismiss, the facts set forth herein are taken from Plaintiffs' complaint and are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

the complaint against Penn Mutual, on their own behalf and on behalf of a class of similarly situated participating policyholders of Penn Mutual, seeking damages and/or equitable relief for, *inter alia*, breach of contract, including the implied covenants of good faith and fair dealing, and for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "Consumer Protection Law") for its alleged deceptive acts or practices in failing to pay the full amount of annual dividends from the divisible surplus due to Plaintiffs under their contracts, including all surplus (or profits) in excess of the maximum limit as defined by 40 P.S. § 614 (the "excess surplus"). (Comp. ¶1).

Plaintiffs have been policyholders of Penn Mutual participating whole-life insurance since at least 1973. (*Id*. at ¶¶2-3).[2] A "participating" insurance policy is one that entitles the holder to a share in the mutual life insurer's annual surplus (profits), paid as a dividend. (*Id*. at ¶7).

The Pennsylvania statutory scheme pertaining to participating insurance policies, like those owned by Plaintiffs, requires inclusion of the following language:

> A provision that the policy shall participate in the surplus of the company, and that, beginning not later than the end of the third policy-year, the company will annually determine the portion of the divisible surplus accruing on the policy, and that the party entitled to elect such option shall have the right to have the dividend arising from such participation paid in cash, or applied in accordance with any one of such other dividend options as may be provided by the policy. If any such other dividend options are provided, the policy shall further state which option shall be automatically effective, if such party shall not have elected some other option.

---

[2] Notwithstanding the lack of diversity between the named Plaintiffs and Penn Mutual, Plaintiffs rely upon 28 U.S.C. §1332(d) and their contention that "there is diversity between most Class members and the Defendant." (Comp. ¶5). However, at this stage of the proceedings, this Court is without sufficient information to determine one way or the other whether the court has original jurisdiction over the matter.

2

> In lieu of the foregoing provisions, the policy may contain a provision that the policy shall participate in the surplus of the company, and that, beginning not later than the end of the fifth policy-year, the company will determine the portion of the divisible surplus accruing on the policy, and that the party entitled thereto shall have the right to have the current dividend arising from such participation paid in cash, and that, at periods of not more than five years thereafter, such apportionment and payment, at the option of such party, shall be had.
>
> Renewable term policies of ten years or less may provide that the surplus accruing to such policies shall be determined and apportioned each year after the second policy-year, and accumulated during each renewal period, and that at the end of any renewal period, or renewal of the policy by the insured, the company shall apply the accumulated surplus as an annuity for the next succeeding renewal term in the reduction of premiums.

40 P.S. §510(f).

Plaintiffs contend that their Penn Mutual insurance policies contain the language required by §510(f). In that regard, the policies provide:

> This policy shall participate in divisible surplus while it is in force except as provided in the Benefits on Lapse provision and the Settlement Options section. Dividends of such surplus, if any, to be apportioned to this policy shall be determined annually by Penn Mutual. Each dividend shall be payable at the end of the policy year, unless this policy is in force under the Settlement Options section, except that any dividend for the first policy year shall not be payable until the premium for the second policy year has been paid.

(Comp. ¶12).

In their complaint, Plaintiffs further contend that Pennsylvania's "safety fund statute", found in 40 P.S. §614, requires that a domestic mutual life insurance company, such as Defendant, pay all surplus that exceeds the safety fund limit to its participating policyholders. (Comp. ¶10). Specifically, section §614 provides:

> Any mutual life insurance company, incorporated under the laws of this Commonwealth and transacting business therein, may

3

> establish and maintain, or, if already established, may continue to maintain, a surplus or safety fund to an amount not in excess of ten per centum of its reserve, or one hundred thousand dollars, whichever is greater, and the excess of the market value of its securities over their book value.
>
> In cases where the surplus or safety fund at present existing, exclusive of all accumulations held on account of the outstanding deferred dividend policies, exceeds the limit above designated, the company shall be entitled to retain said surplus or safety fund, but shall not be entitled to add thereto so long as it exceeds said limit.
>
> For cause shown, the Insurance Commissioner may, at any time, permit any corporation to accumulate and maintain a surplus or safety fund in excess of the limit above mentioned for a prescribed period, not exceeding one year in any one permission, by filing in his office a decision stating his reasons therefore and causing the same to be published in his next annual report.

40 P.S. §614.

According to Plaintiffs, Penn Mutual has retained excess surplus which Plaintiffs contend is mandated for payment to its participating policyholders by 40 P.S. §§510 and 614 and has, therefore, breached the insurance policy contracts with Plaintiffs.

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct

4

the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

As stated, Plaintiffs contend that Defendant breached the terms of the participating life insurance policies by improperly retaining excess surplus money which should have been distributed as dividends. Though Plaintiffs characterize their claims as contract claims based upon Defendant's alleged breach of the terms of the insurance policies, they readily acknowledge that their claims, as pled, rely upon obligations purportedly created by statutes, *to wit:* 40 P.S. §§510(f) and 610. As such, the determination of this matter is dependent on the interpretation and application of these and other related Pennsylvania insurance statutes and regulations.

Defendant argues that this Court should abstain from entertaining the merits of Plaintiffs' claims on the grounds of the primary jurisdiction doctrine since the issues raised by the complaint fall squarely within the jurisdiction, expertise, and regulatory authority of the

5

Pennsylvania Department of Insurance.[3] "Primary jurisdiction 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . .'" *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103 (3d Cir. 1995) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *W. Pac. R.R. Co.*, 352 U.S. at 63. Primary jurisdiction "transfers from court to agency the power to determine some of the incidents of such relations." *Id.* "[W]here the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency . . . ." *MCI Telecomms. Corp.*, 71 F.3d at 1104.

District courts are to consider four factors when determining whether abstention is warranted under the primary jurisdiction doctrine: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Raritan Baykeeper v.*

---

[3] Defendant also argues that this Court should abstain on the basis of the abstention doctrine espoused in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). However, because this Court concludes that primary jurisdiction abstention is appropriate here, it will not address this argument. Notwithstanding, relying on the Supreme Court's decision in *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), the Third Circuit has opined that abstention under the *Burford* doctrine is inappropriate where a plaintiff, like Plaintiffs here, seeks a legal remedy. *See Feige v. Sechrest*, 90 F.3d 846, 850 (3d Cir. 1996).

*NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011). For the reasons set forth below, these factors lead this Court to conclude that abstention is warranted.

> *Factor 1: Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise*

As stated, Plaintiffs characterize their cause of action as a claim for breach of contract, yet they readily acknowledge that their claim depends on the application of 40 P.S. §§510(f) and 614 to create an obligation that otherwise does not expressly exist in their contracts. By relying on these statutes as the authority that purportedly defines the parties' rights and obligations in this matter, Plaintiffs have raised issues that are within the regulatory authority, expertise, and discretion of the Pennsylvania Insurance Department (the "Department"), and not in this Court's discretion.

The Pennsylvania General Assembly has designated the Department as the administrative agency charged with executing the Commonwealth's insurance laws. 40 P.S. §41 ("There is hereby established a department, to be known as the Insurance Department, which is charged with the execution of the laws of this Commonwealth in relation to insurance."). Through passage and implementation of a vast regulatory scheme, the Department is vested with authority and discretion to enforce and regulate the promulgated insurance laws.[4]

Under the Department's regulations, an insurer's surplus is defined as its "[t]otal assets less total liabilities as calculated and reported in accordance with the annual statement instructions and accounting practices and procedures manual prescribed by the NAIC or as otherwise required by the Commissioner for annual financial statements filed with the

---

[4] Notably, Congress made it clear through its passage of the McCarran-Ferguson Act (the "Act") in 1945 that the regulation of insurance is principally a state function. *See e.g., Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033, 1039 (3d Cir. 1988). Section 1 of the Act declares that state regulation of the "business of insurance is in the public interest." 15 U.S.C. §1011.

7

Department." *See* 31 Pa. Code §25.1. In that light, the Department's regulatory oversight of Penn Mutual's capital and surplus includes, the functions of:

> (1) annually reviewing Penn Mutual's reserve liabilities, capital, and surplus, 40 P.S. §71 and §221.1-A-.15-A;
>
> (2) establishing minimum capital and surplus requirements for conducting business, *id.* at §386(d) and §386.2;
>
> (3) requiring reports of Penn Mutual's risk-based capital (which includes a review of Penn Mutual's surplus), *id.* at §221.2-A;
>
> (4) regulating Penn Mutual's issuance of surplus notes in exchange for cash or assets, *id.* at §445.2;
>
> (5) regulating dividends and other distributions that would reduce "total capital and surplus to an amount which is less than the amount required by the Insurance Department," *id.* at §459.8;
>
> (6) regulating Penn Mutual's investment practices, *id.* at §504.1; and
>
> (7) approving Penn Mutual's contract language with policyholders in advance of its use, *id.* at §477b.

To be in compliance with the insurance provisions, Penn Mutual is required to file annual reports with the Department "which shall exhibit its financial condition" and which comply with "accounting practices and procedures manuals prescribed by the National Association of Insurance Commissioners [NAIC]." 40 P.S. §443. The Department is required to examine Penn Mutual, at least once every five years, "to verify the financial condition of the company." *Id.* at §323.3(a) and §323.4. The Department is also authorized to evaluate whether Penn Mutual's surplus "is reasonable in relation to [its] outstanding liabilities and adequate to its financial needs." *Id.* at §991.1405(d). When determining whether Penn Mutual's surplus is, in the Department's view, "reasonable" and "adequate to [Penn Mutual's] financial needs," the Department considers the following factors:

8

> (1) The size of the insurer as measured by its assets, capital and surplus, reserves, premium writings, insurance in force and other appropriate criteria.
>
> (2) The extent to which the insurer's business is diversified among the several lines of insurance.
>
> (3) The number and size of risks insured in each line of business.
>
> (4) The extent of the geographical dispersion of the insurer's insured risks.
>
> (5) The nature and extent of the insurer's reinsurance program.
>
> (6) The quality, diversification and liquidity of the insurer's investment portfolio.
>
> (7) The recent past and projected future trend in the size of the insurer's surplus as regards policyholders.
>
> (8) The surplus as regards policyholders maintained by other comparable insurers considering the factors set forth in paragraphs (1) through (7).
>
> (9) The adequacy of the insurer's reserves.
>
> (10) The quality and liquidity of investments in affiliates. The department may treat any such investment as a disallowed asset for purposes of determining the adequacy of surplus as regards policyholders whenever in its judgment such investment so warrants.
>
> (11) The quality of the insurer's earnings and the extent to which the reported earnings include extraordinary items.

40 P.S. §991.1405(d).

These statutes, and those on which Plaintiffs rely to substantiate their claims, are aimed at ensuring that insurance companies within the Commonwealth are adequately capitalized to protect their insureds and to meet the Commonwealth's public concerns and policies. As outlined above, Pennsylvania's legislature and the Department have promulgated an all-encompassing and complex regulatory program aimed at this important state policy. In light of

9

this complex regulatory framework, by statute, the Department has primary jurisdiction and the expertise to regulate Penn Mutual's financial condition, including the amount and the distribution, if any, of its surplus. Therefore, since the questions at issue involve policy considerations within the Department's particular field of expertise, this first factor weighs in favor of abstention.

*Factor 2: Whether the question at issue is particularly within the agency's discretion*

Defendant argues that by relying on §614, Plaintiffs implicate the Department's authority and discretion to regulate Penn Mutual's capital and surplus levels. This Court agrees. Section 614 requires, *inter alia*, a valuation of "the excess of the market value of [Penn Mutual's] securities over their book value." By statute, to make this valuation, the "***Insurance Commissioner shall have full discretion*** in determining the method of calculating values according to the foregoing rule, and the values found by him in accordance with such method shall be final and binding." 40 P.S. §75 (emphasis added). In addition, §614 expressly vests the Department with discretion to administer the statute and to determine when, under what circumstances, and in what amounts, exceptions will be granted. That is, §614 provides that "[fo]r good cause shown, the Insurance Commissioner may, at any time, permit any corporation to accumulate and maintain a surplus or safety fund in excess of the limit above mentioned for a prescribed period."

Since the questions raised in this matter are particularly within the Department's discretion, this second factor weighs in favor of abstention. *Cf., AT&T Communications, Inc. v. Consolidated Rail Corp.*, 285 F. Supp.2d 649, 662 (E.D. Pa. 2003) (abstaining on primary jurisdiction grounds where administrative agency had discretion over application of permitted exemptions).

10

*Factor 3: Whether there exists a substantial danger of inconsistent rulings*

As stated, Plaintiffs' claims depend on the interpretation and application of various state statutes and regulations that compose Pennsylvania's extensive insurance regulation program. Though district courts are frequently called upon to interpret and apply state statutes, the court should hesitate to do so, where doing so would place it squarely in the realm reserved by the state legislature for the Department.[5] Under these statutes and regulations, the Department's oversight of Penn Mutual's solvency, financial condition, and surplus levels is an ongoing endeavor. Thus, a decision by this Court has the potential to conflict with the Department's decisions and exercise of its authority and discretion. Since there is a substantial danger of inconsistent rulings, this third factor weighs in favor of abstention.

*Factor 4: Whether a prior application to the agency has been made*

For this factor, Defendant points to the fact that the Department currently regulates Penn Mutual's capital and surplus. Neither Defendant nor Plaintiffs, however, has identified any prior application to the Department regarding the issues raised by Plaintiffs' claims. Since this Court is unaware of any prior applications to the Department, this fourth factor weighs against abstention.[6]

---

[5] This Court is also cognizant of the fact that Congress has expressly stated that the regulation of insurance is principally a state function. *See* Note 4, *supra*.

[6] Importantly, Plaintiffs could have raised the issues underlying their claims with the Department by filing a complaint with the Department. *See* 1 Pa. Code §35.9. Such course would have allowed the Department the first opportunity to address the intricate issues of the Commonwealth's insurance laws raised by Plaintiffs in this matter, and eliminated the possibility of conflicting rulings.

11

Weighing all of the above-cited factors, this Court concludes that it is appropriate to abstain and defer to the primary jurisdiction of the Pennsylvania Department of Insurance.[7]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and/or to abstain is granted. An order consistent with this memorandum opinion follows.

*Nitza I. Quiñones Alejandro, U.S.D.J.*

---

[7] In responding to Defendant's motion to dismiss, Plaintiffs place significant reliance on the Third Circuit's decision in *Raritan Baykeeper,* 660 F.3d 686. Plaintiffs' reliance, however, is misplaced. This case differs in significant respects to *Raritan.* First, in *Raritan,* the plaintiffs brought their claims in federal court pursuant to various federal statutes which expressly provided private causes of action to be litigated in federal courts. *Id.* at 691. In contrast, Plaintiffs bring their claims in federal court under state statutes which do not provide for private causes of action and do not expressly provide for such actions in federal court. Second, the federal statutes on which the *Raritan* plaintiffs relied did not provide any type of discretion to the state agency to which the defendants sought remand. *Id.* at 691-92. Here, however, Plaintiffs assert claims that rely upon Commonwealth statutes that provide the Insurance Department full discretion.

12