# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL J. HARSHBARGER AND EDITH M. HARSHBARGER, Individually and on Behalf of all Persons Similarly Situated, | |
| Plaintiffs, | Civil Action No. 2:12-cv-06172 |
| v. | |
| THE PENN MUTUAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

## STIPULATION OF SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................... 1

     A.       The Action and Underlying Allegations ............................. 1

     B.       The Parties' Respective Positions on Settlement ............................... 3

II.      DEFINITIONS AND CONVENTIONS ...................................................... 4

     A.       Definitions ............................................................. 4

     B.       Conventions ........................................................... 11

III.     SETTLEMENT PROCESS ................................................................... 11

IV.     THE SETTLEMENT RELIEF ............................................................... 12

     A.       Injunctive and Declaratory Relief ..................................... 12

     B.       Settlement Relief for In Force Settlement Policies ........................ 13

     C.       Settlement Relief for Terminated Settlement Policies .................... 15

     D.       No Reversion of Settlement Relief to Penn Mutual ........................ 16

     E.       No Reduction in Regular Dividends ..................................... 16

     F.       Deferral of Terminal Dividends for Risk-Based Capital Results .... 16

     G.       Report on Settlement Relief ............................................ 17

     H.       Implementation of Internal Procedures to Provide Settlement Relief .................................................................. 17

V.      SETTLEMENT ADMINISTRATION .................................................... 17

VI.     NOTICE TO THE SETTLEMENT CLASS .............................................. 19

     A.       Timing of Class Settlement Notice Package .................................. 19

     B.       Content of Class Settlement Notice Package .................................. 19

     C.       Re-mailing of Notice to a Settlement Class Member ..................... 20

VII.     OBJECTIONS TO SETTLEMENT ...................................................... 20

VIII.     RELEASE AND WAIVER ................................................................ 21

     A.       Definitions ............................................................. 21

     B.       Release and Waiver ..................................................... 22

IX.     SERVICE AWARDS, CLASS COUNSEL ATTORNEYS' FEES, AND CLASS COUNSEL EXPENSES ................................................................... 24

     A.       Service Awards ......................................................... 24

| | B. | Class Counsel Attorneys' Fees and Class Counsel Expenses .......... 24 |
| | C. | Payment of Attorneys' Fees and Expenses ..................................... 25 |
| | D. | Distribution of Attorneys' Fees and Expenses Payment to Class Counsel ................................................................................. 25 |
| | E. | Expenses of the Implementation of the Proposed Settlement .......... 26 |
| **X.** | | PRELIMINARY APPROVAL ORDER ..................................................... 26 |
| **XI.** | | FINAL ORDER AND JUDGMENT .......................................................... 26 |
| **XII.** | | TERMINATION OF ADMINISTRATIVE PROCEEDINGS BEFORE DEPARTMENT ................................................................................ 27 |
| **XIII.** | | CONTINGENCIES AND PROVISIONS RELATING TO MODIFICATION OR TERMINATION OF THIS AGREEMENT .................................. 27 |
| **XIV.** | | GENERAL MATTERS AND RESERVATIONS .......................................... 30 |
| | A. | Integration and Drafting .................................................................. 30 |
| | B. | Amendment, Court Approval, Extensions ....................................... 30 |
| | C. | Construction .................................................................................... 30 |
| | D. | Integration of Exhibits .................................................................... 31 |
| | E. | Waiver ............................................................................................. 31 |
| | F. | Counterparts .................................................................................... 31 |
| | G. | No Evidence, No Admission ............................................................ 31 |
| | H. | Tax Consequences ........................................................................... 31 |
| | I. | Notice .............................................................................................. 32 |
| | J. | No Effect on Contract or Duty ....................................................... 33 |
| | K. | Cooperation in Effecting Settlement ............................................... 33 |
| | L. | Confidentiality ................................................................................ 34 |
| | M. | Governing Law ................................................................................ 34 |
| | N. | Parties Bound .................................................................................. 34 |
| | O. | Authority to Execute Agreement ..................................................... 34 |
| | P. | Execution Date ................................................................................ 34 |

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiffs Daniel Harshbarger and Edith Harshbarger, in their individual capacities and as representatives of the proposed Settlement Class in the Action (collectively "Plaintiffs"), and Defendant The Penn Mutual Life Insurance Company ("Penn Mutual"), through their respective duly-authorized counsel, and intending to be legally bound thereby, that the claims asserted in the above-captioned proceedings in the United States District Court for the Eastern District of Pennsylvania, *Daniel J. Harshbarger and Edith M. Harshbarger v. Pennsylvania Mutual Life Insurance Company*, Civil Action No. 2:12-cv-06172 (which the Parties will seek to have the Court caption properly to identify Defendant as "The Penn Mutual Life Insurance Company") (the "Action"), be fully and finally settled, compromised and dismissed on the merits with prejudice, on the terms set forth in this Stipulation of Settlement and the exhibits hereto, subject to the conditions set forth herein permitting the termination upon specified circumstances, and further subject to and expressly conditioned upon the approval of the Court and the entry of a Final Order and Judgment substantially in the form provided for herein.

## I.    INTRODUCTION

### A.    The Action and Underlying Allegations

1.    Plaintiffs own five participating whole life insurance policies issued by Penn Mutual. Plaintiffs initiated the Action on November 1, 2012, as a class action before the United States District Court for the Eastern District of Pennsylvania. Plaintiffs allege that Penn Mutual has breached its obligations to its mutual policyholders to pay annual dividends by retaining surplus due to them under their contracts. In particular, Plaintiffs claim that dividends are due to policyholders, *inter alia*, pursuant to dividend language prescribed by 40 P.S. § 510(f) ("Section 510(f)"), in an amount exceeding the maximum retention limit defined by 40 P.S. § 614 ("Section 614"). Plaintiffs in the Action allege claims against Penn Mutual for breach of contract,

violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unjust enrichment and money had and received.

2.     Penn Mutual denies the allegations made by Plaintiffs in the Action and argues that Section 614 has no connection to Section 510(f) and is not enforceable by policyholders to require the additional distributions claimed by Plaintiffs.  Penn Mutual maintains that it has at all times complied with Pennsylvania law, including Section 614, and with all terms of the life insurance policies issued to Plaintiffs and to members of the putative class, and has at all times honored all obligations to them.

3.     On April 11, 2014, the Court in the Action granted in part Penn Mutual's motion to dismiss, abstaining from exercising jurisdiction and staying the Action pending a determination of underlying regulatory issues by the Pennsylvania Insurance Department (the "Department").

4.     Plaintiffs filed a formal administrative complaint with the Department on February 20, 2015.  Penn Mutual filed its Answer and New Matter on March 31, 2015.  Plaintiffs filed their Reply to New Matters Raised by Penn Mutual on April 22, 2015.

5.     The Parties have vigorously litigated issues relating to Plaintiffs' claims in the Court and before the Department, proceeding through discovery towards an administrative hearing scheduled to commence on April 26, 2016.  After substantial discovery and pre-hearing preparation, including the preparation and exchange of expert reports, Plaintiffs and Penn Mutual agreed to participate in a mediation in an effort to resolve both the Action and the pending administrative proceeding.  To accommodate the mediation process, the administrative hearing's Presiding Officer rescheduled the hearing to October 26, 2016.

6.     The Parties accordingly engaged in arm's-length settlement discussions, leading to a formal mediation in Philadelphia on May 24 and 25, 2016,

before the Hon. Diane M. Welsh (Ret.) of JAMS.  Through these extensive settlement negotiations, Plaintiffs and Penn Mutual reached agreement on the terms and conditions of a proposed settlement of all claims asserted in the Action and in the administrative proceeding.  As defined and set forth below, if approved by the Court, the proposed Settlement will obligate Penn Mutual to pay:  (1) Terminal Dividends to Settlement Class Members who are Owners or Beneficiaries of In Force Settlement Policies in the total amount of $97,073,303; (2) Terminal Dividends to Settlement Class Members who are Owners or Beneficiaries of Terminated Settlement Policies in the total amount of $13 million; (3) all costs incurred in providing the Class Settlement Notice and in administering the Settlement; and (4) Class Counsel Attorneys' Fees (not to exceed $10 million) and Class Counsel Expenses (not to exceed $700,000) in the amounts approved by the Court and Service Awards each to the Class Representatives in the amount approved by the Court (not to exceed $3,750 each).

B.      **The Parties' Respective Positions on Settlement**

1.      **Plaintiffs' Position**

In the course of the Action, Class Counsel have reviewed voluminous documents, analyzed extensive data, and retained and consulted with a variety of experts concerning the merits of Plaintiffs' claims and the defenses raised by Penn Mutual. Based upon the discovery, investigation and evaluation of the facts and the law, and notwithstanding their firm belief in the merits of their claims, Plaintiffs and Class Counsel have agreed to settle the Action after considering such factors as: (1) the benefits to Plaintiffs and the proposed Settlement Class provided by the proposed settlement; (2) the risks and uncertainty of continued future proceedings before the Department and the Court, especially in complex actions such as this, as well as the difficulties and delays inherent in any appeals which would likely follow any determinations in those proceedings; and (3) the desirability of consummating a compromise resolution in order

to provide immediate and meaningful relief to Plaintiffs and the other members of the proposed Settlement Class.

## 2. Penn Mutual's Position

Penn Mutual expressly denies any and all wrongdoing alleged in the Action, and all other contentions and allegations made, recognized, explicitly or implicitly, or pursued during the course of the Action and the administrative proceeding before the Department, and does not admit or concede any claimed, actual or potential fault, wrongdoing, or liability in connection with any facts or claims which have been or could have been alleged against it in the Action or before the Department. Notwithstanding the forgoing, Penn Mutual considers it desirable for the Action to be settled and dismissed, because the proposed settlement will: (1) provide substantial benefits to Penn Mutual policyholders; (2) confer benefits on Penn Mutual, including the avoidance of further expense and disruption of the management and operation of Penn Mutual's business due to the pendency and defense of the Action; (3) finally and for the future put to rest Plaintiffs' and the putative class claims and the underlying matters; and (4) avoid the substantial expense, burdens, and uncertainties associated with a potential finding of liability and corresponding injunctive and related relief for Plaintiffs and the putative class based on the claims alleged in the Action.

## II. DEFINITIONS AND CONVENTIONS

### A. Definitions

As used in this Agreement and the attached exhibits (which are incorporated by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1. "Action" means the above-captioned class action lawsuit.

2. "Agreement" or "Settlement Agreement" means, collectively, this Stipulation of Settlement and the exhibits attached hereto or incorporated herein, including any subsequent amendments and any exhibits to such amendments.

3. "Beneficiary" means the person or persons designated under the terms of the Settlement Policy contract as a beneficiary at the time of the maturity (by death or endowment) of the Policy. Where more than one person is designated as a beneficiary under the terms of a Settlement Policy, the term "Beneficiary" means all such beneficiaries, collectively, and any amount due under this Agreement shall be allocated between or among such beneficiaries in equal shares on a per capita basis.

4. "Cash Surrender Value" means the cash value or other amounts payable upon full surrender, without reduction for any outstanding policy loans, of the Settlement Policy, as of December 31, 2015, according to the terms of the applicable Settlement Policy, employing the methodology used to determine that In Force Settlement Policies had an aggregate Cash Surrender Values totaling $5,392,961,256 as of December 31, 2015. Such amount shall not include any applicable return-of-premium payable for coverage beyond December 31, 2015.

5. "Class Counsel" means, collectively, the law firms of: (a) Adkins Kelston & Zavez, P.C.; (b) Bonnett Fairbourn Friedman & Balint, P.C.; (c) Chavez & Gertler LLP; and (d) Feinstein Doyle Payne & Kravec, LLC.

6. "Class Counsel Attorneys' Fees" means the payment that Penn Mutual agrees to make to Class Counsel for reasonable attorneys' fees in an amount approved by the Court, not to exceed $10 million. Class Counsel Attorneys' Fees do not include, and is wholly in addition to, Penn Mutual's payment of Class Counsel Expenses.

7. "Class Counsel Expenses" means the payment that Penn Mutual agrees to make to Class Counsel for the reasonable expenses and costs incurred, advanced or charged by Class Counsel in connection with the Action, in an amount approved by the Court, not to exceed $700,000. Class Counsel Expenses do not include, and are wholly in addition to, Penn Mutual's payment of Class Counsel Attorneys' Fees.

8. "Class Representatives" means, collectively, the named Plaintiffs.

9. "Class Settlement Notice" means the notice provided to Settlement Class Members pursuant to this Agreement substantially in the form attached hereto as Exhibit 2, as described in Section VI.

10. "Class Settlement Notice Package" means the package of materials described in Section VI of this Agreement.

11. "Commissioner" means the Pennsylvania Insurance Commissioner.

12. "Court" means the United States District Court for the Eastern District of Pennsylvania.

13. "Cover Letter" means the correspondence from Penn Mutual to the Settlement Class Members substantially in the form attached hereto as Exhibit 1, as described in Section VI of this Agreement.

14. "Deferred Terminal Dividends" means the amount of Terminal Dividends, if any, that Penn Mutual defers paying during any period in which Penn Mutual reports an RBC lower than the RBC Threshold Amount.

15. "Department" means the Pennsylvania Insurance Department.

16. "Fairness Hearing" means a hearing to be held on a date set by the Court, at which time the Court will make a final decision on whether to approve this Agreement as fair, reasonable, and adequate.

17.     "Final Order and Judgment" means the Court's order and judgment approving the proposed Settlement and this Agreement, substantially in the form attached hereto as Exhibit 4, as described in Section XI of this Agreement.

18.     "Final Settlement Date" means the date on which the Order of the Department terminating and dismissing the administrative proceedings between the Parties becomes final for all purposes, including appeal.   For purposes of this Agreement:

(a)     if no appeal is taken from the Order of the Department terminating and dismissing the administrative proceedings, "Final Settlement Date" means the date on which the time to appeal from the Order of the Department has expired; or

(b)     if any appeal has been taken from the Order of the Department terminating and dismissing the administrative proceedings, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc* and petitions for *certiorari* or any other form of review, have been finally resolved by order, mandate or otherwise, in a manner that affirms the Order of the Department; or

(c)     if the Parties agree in writing and the Court so orders, "Final Settlement Date" can mean any other agreed date.

19.     "Implementation Date" means 30 days after the Final Settlement Date.

20.     "In Force Settlement Policy" means a Settlement Policy that was not fully terminated by lapse, surrender or maturity (by death or endowment) on or before December 31, 2015.

21.     "In Force Policy Terminal Dividend Fund" means the total amount of $97,073,303.  This Fund equals 1.8% of the aggregate Cash Surrender Values of In

Force Settlement Policies as of December 31, 2015 ($5,392,961,256). The In Force Policy Terminal Dividend Fund of $97,073,303 is to be paid to Owners and Beneficiaries of In Force Settlement Policies in accordance with Section IV.B.

22.     "In Force Policy Terminal Dividend Fund Balance" means the amount equal to the difference between: (a) $97,073,303; and (b) the total amount necessary to pay $25 to each of the Owners and Beneficiaries of In Force Settlement Policies in accordance with Section IV.B.

23.     "Owner" means any person or entity identified in Penn Mutual's company records as having an ownership interest at any time in a Settlement Policy, whether as a current owner or a former owner. For the purpose of this Agreement, a Beneficiary shall be treated as an Owner only if and to the extent that Penn Mutual received a valid notice of death claim under the Settlement Policy on or before December 31, 2015, or if Penn Mutual otherwise learns of a death, prior to the Implementation Date.

24.     "Parties" means, collectively, Plaintiffs and Penn Mutual.

25.     "Penn Mutual" means Defendant The Penn Mutual Life Insurance Company, its predecessors, successors, and subsidiaries.

26.     "Penn Mutual's Counsel" means Morgan, Lewis & Bockius LLP.

27.     "Plaintiffs" means, collectively, Daniel J. Harshbarger and Edith M. Harshbarger.

28.     "Preliminary Approval Order" means the order to be entered by the Court in substantially the form attached as Exhibit 3, preliminarily approving the Settlement, as described in Section X of this Agreement.

29.     "RBC" means Penn Mutual's risk based capital computed in accordance with 40 P.S. §§ 221.1-A, *et seq.*

30. "RBC Threshold Amount" means an RBC amount reported by Penn Mutual that is lower than an amount equal to 500% of Penn Mutual's authorized control level RBC.

31. "Release" means the release and waiver as defined in Section VIII of this Agreement.

32. "Released Transactions" are defined in Section VIII of this Agreement.

33. "Service Awards" means the payment that Penn Mutual agrees to make to the two Class Representatives in an amount approved by the Court, not to exceed $3,750 each. Service Awards do not include, and are wholly in addition to, Penn Mutual's payment of Class Counsel Attorneys' Fees and Class Counsel Expenses.

34. "Settlement" means the aggregate of transactions, rights, obligations, conditions, Release, and other matters contemplated by, described in or provided by this Agreement.

35. "Settlement Class" means a class certified by the Court pursuant to Rule 23(a) and (b)(1) and/or (b)(2), *Federal Rules of Civil Procedure*, defined to include collectively: (a) all persons who own or owned a Settlement Policy; and (b) all Beneficiaries of any Settlement Policy terminated by death on or before December 31, 2015, if such Beneficiaries notify or notified Penn Mutual of a death claim, or if Penn Mutual otherwise learns of a death, prior to the Implementation Date.

36. "Settlement Class Member" means a person included in the Settlement Class.

37. "Settlement Policy" means a participating life insurance policy issued by Penn Mutual as one of the insurance product types described in attached Appendix 1 and that was in force at any time during the period commencing January 1, 2006 (12:01 am, eastern) and ending December 31, 2015 (11:59 pm, eastern). The

"Settlement Policies" refers to the collective group of policies that includes each Settlement Policy.

38. "Settlement Relief" means the benefits provided to Settlement Class Members under the terms and conditions of this Agreement.

39. "Terminal Dividend" means a dividend, in addition to any other dividends declared by Penn Mutual, payable by Penn Mutual in accordance with the terms of this Settlement to: (a) the Owner upon termination of the Settlement Policy upon lapse or surrender; or (b) the Beneficiary or Beneficiaries of the Settlement Policy upon its maturity (by death, based on the filing of a valid claim or if Penn Mutual otherwise learns of said death, or endowment) under the Settlement Policy.

40. "Terminal Cash Surrender Value" means the cash surrender value reflected in the records of Penn Mutual as of the date that a Terminated Settlement Policy terminated by lapse, surrender or maturity (by death or endowment).

41. "Terminated Policy Terminal Dividend Fund" means the total amount of $13 million to be paid to Owners and Beneficiaries of Terminated Settlement Policies in accordance with Section IV.C.

42. "Terminated Policy Terminal Dividend Fund Balance" means the amount equal to the difference between: (a) $13 million; and (b) the total amount necessary to pay $25 to each of the Owners and Beneficiaries of Terminated Settlement Policies in accordance with Section IV.C.

43. "Terminated Settlement Policy" means a Settlement Policy that fully terminated by lapse, surrender or maturity (by death or endowment) on or before December 31, 2015. "Terminated Settlement Polices" refers to the collective group of policies that includes each Terminated Settlement Policy.

### B. Conventions

1. The terms "he" or "she" and "his" or "her" include "it" or "its," where applicable. Defined terms expressed in the singular also include the plural form of such term, and vice versa, where applicable.

2. All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs and exhibits of and to this Agreement, unless otherwise expressly stated in the reference.

## III. SETTLEMENT PROCESS

The dates for certain events contemplated by this Settlement Agreement are as follows:

| Event Date | Event |
| --- | --- |
| 10 days after execution of this Agreement | Submission of the Settlement and related Briefs to the Commissioner for Approval of the Consent Order contingent on approval by the Court in the Action |
| 7 days after Contingent Approval of the Consent Order by the Commissioner of the Department | Plaintiffs file Motion for Preliminary Approval in the Action |
| To be set by Court | Hearing on Preliminary Approval |
| 30 days after entry of the Preliminary Approval Order | Mailing of Class Settlement Notice Package |
| 21 days prior to deadline for submission of objections, or such other date set by Court | Filing of motion for approval of Penn Mutual's payment of Class Counsel Attorneys' Fees, Class Counsel Expenses, and Service Awards |
| 45 days after mailing of the Class Settlement Notice Package | Objections must be postmarked and sent to counsel for the Parties and filed with the Court |

| 45 days after mailing of the Class Settlement Notice Package | Requests to appear and be heard at the Fairness Hearing must be served on Class Counsel and Penn Mutual's Counsel and filed with the Court |
| To be set by Court | Fairness Hearing |
| 10 days after Final Order and Judgment entered by Court has become final for all purposes, including appeal | Parties file joint motion before the Department, supported by their respective briefs, seeking termination of administrative proceedings |
| The date on which the Order of the Department terminating the administrative proceedings becomes final for all purposes, including appeal | Final Settlement Date |
| 30 days after the Final Settlement Date | Implementation Date |

## IV.     THE SETTLEMENT RELIEF

The Parties agree that Penn Mutual will provide the Settlement Relief described below.

### A.     Injunctive and Declaratory Relief

Penn Mutual agrees to the following injunctive and declaratory relief from the Court addressing the historical application of Section 510(f) and Section 614 as between Penn Mutual and its participating policyholders. Upon Final Approval of the Settlement, Penn Mutual will be ordered to declare and/or pay Terminal Dividends benefiting all Settlement Class Members, thereby providing mandatory injunctive relief and avoiding inconsistent or varying adjudications of the rights of mutual policyholders to additional dividends that would establish incompatible standards of conduct for Penn Mutual. The manner in which the mandatory Terminal Dividends will be effectuated depends upon

whether the Settlement Policy is an In Force Settlement Policy or a Terminated Settlement Policy, as set forth in Sections IV.B and IV.C below.

Also, as set forth in Section XII below, as an integral term of the Settlement, declaratory relief further addressing the application of Section 510(f) and Section 614 will be implemented through the Consent Order to be entered by the Department.

### B. Settlement Relief for In Force Settlement Policies

On or before the Implementation Date, Penn Mutual shall declare a Terminal Dividend for each In Force Settlement Policy. The Terminal Dividends to be declared will be calculated and paid out of the In Force Policy Terminal Dividend Fund, allocated among the In Force Settlement Policies pro rata based on the relative Terminal Cash Surrender Values of such policies; provided, however each In Force Settlement Policy will receive a minimum Terminal Dividend payment of $25.

The In Force Policy Terminal Dividend Fund will be allocated according to the following formula:

1. Penn Mutual will pay from the In Force Policy Terminal Dividend Fund the total amount necessary to pay a Terminal Dividend in an amount not less than $25 per policy to the Owners and Beneficiaries of the In Force Settlement Policies, payable as set forth below.

2. In addition to the amounts set forth in the preceding paragraph, Penn Mutual will pay additional Terminal Dividends, payable as set forth below, in an aggregate amount equal to the In Force Policy Terminal Dividend Fund Balance to the Owners and Beneficiaries of the In Force Settlement Policies. Each In Force Settlement Policy will receive an additional Terminal Dividend payment equal to the product of (i) the In Force Policy Terminal Dividend Fund Balance and (ii) a fraction, expressed as a percentage, the numerator of which is the Cash Surrender Value of the In Force Settlement Policy as of December 31, 2015 and the denominator of which is the

aggregate amount of the Cash Surrender Values as of December 31, 2015 of all In Force Settlement Policies.

3. In no event will Penn Mutual pay more than $97,073,303 in Terminal Dividends to Owners or Beneficiaries of In Force Settlement Policies.

The total amount of the Terminal Dividend for In Force Settlement Policies is $97,073,303. This amount is based on policyholder records previously provided by Penn Mutual to Class Counsel verifying that as of December 31, 2015, the In Force Settlement Policies had an aggregate Cash Surrender Values totaling $5,392,961,256. Penn Mutual represents and warrants that the policyholder information provided to Class Counsel accurately report the amount of Cash Surrender Values for In Force Policies reflected in Penn Mutual's business records. For any In Force Settlement Policies that terminate after December 31, 2015 but before the Implementation Date, Penn Mutual shall make a cash payment in an amount calculated in accordance with this section to: (a) the Owner of each Settlement Policy that terminated by lapse or surrender or the Owner's estate if the Owner is deceased at the time of payment, or (b) the Beneficiary or Beneficiaries of each Settlement Policy that terminated upon maturity under the Settlement Policy.

If an In Force Policy has more than one Owner or Beneficiary, the Terminal Dividends payable in respect of that In Force Policy shall be allocated between or among the Owners or Beneficiaries in equal shares, on a per capita basis.

Within 30 days of the Implementation Date, Penn Mutual shall prepare and disseminate to each Settlement Class Member and for each In Force Settlement Policy a notice referencing this litigation (with docket number) and setting forth the amount and description of the Settlement Relief on that policy and advising the Settlement Class Member to retain the notice document with their copy of the policy.

### C. Settlement Relief for Terminated Settlement Policies

On or before the Implementation Date, Penn Mutual will pay the Terminated Policy Terminal Dividend Fund to: (a) the Owners of Terminated Settlement Policies that terminated by lapse or surrender; and (b) the Beneficiaries of Terminated Settlement Policies that terminated upon maturity (by death or endowment) under the Settlement Policies. The Terminated Policy Terminal Dividend Fund will be allocated among the Owners and Beneficiaries of the Terminated Settlement Policies pro rata based on the relative Terminal Cash Surrender Values of such policies; provided, however each eligible Owner or Beneficiary will receive a minimum payment of $25 for each Terminated Settlement Policy.

The Terminated Policy Terminal Dividend Fund will be allocated according to the following formula:

1. Penn Mutual will pay from the Terminated Policy Terminal Dividend Fund the total amount necessary to pay $25 per policy to the Owners and Beneficiaries of the Terminated Settlement Policies.

2. Penn Mutual will pay the Terminated Policy Terminal Dividend Fund Balance to the Owners and Beneficiaries of the Terminated Settlement Policies. Each Terminated Settlement Policy will receive an additional payment equal to the product of (i) the Terminal Dividend Fund Balance and (ii) a fraction, expressed as a percentage, the numerator of which is the Terminal Dividend Cash Surrender Value of the Terminated Settlement Policy and the denominator of which is the aggregate amount of the Terminal Cash Surrender Values of all Terminated Settlement Policies.

3. In no event will Penn Mutual pay more than $13 million in Terminal Dividends to Owners or Beneficiaries of Terminated Settlement Policies.

4.     If a Terminated Policy has more than one Owner or Beneficiary, the Terminal Dividends payable in respect of that Terminated Policy shall be allocated between or among the Owners or Beneficiaries in equal shares, on a per capita basis.

### D.     No Reversion of Settlement Relief to Penn Mutual

No portion of the Terminated Policy Terminal Dividend Fund is subject to reversion to Penn Mutual.  In the event Penn Mutual is unable to pay any Settlement Relief due for any Terminated Settlement Policies because, e.g., the eligible Settlement Class Member(s) cannot be located, such amounts, if any, will be reported to Class Counsel within six months after the Implementation Date and upon joint motion to the Court shall be allocated and paid in accordance with a further order of the Court.

No portion of the In Force Policy Terminal Dividend Fund is subject to reversion to Penn Mutual.  In the event Penn Mutual is unable to pay any Settlement Relief due for any In-Force Settlement Policies because, e.g., the eligible Settlement Class Member(s) cannot be located, such amounts, if any, will be addressed in a joint motion to the Court and allocated and paid in accordance with a further order of the Court or by operation of law.

### E.     No Reduction in Regular Dividends

The Settlement Relief is separate and in addition to policyholder dividends otherwise distributed by Penn Mutual.  Therefore, Penn Mutual will not consider the Settlement Relief in any way in determining its dividend scale or annual dividend determinations nor will its dividend scale or annual dividend determinations be reduced or offset by or on account of the Settlement Relief.

### F.     Deferral of Terminal Dividends for Risk-Based Capital Results

Penn Mutual may temporarily suspend and defer the payment of Terminal Dividends in any period for which Penn Mutual reports RBC lower than the RBC Threshold Amount.  Penn Mutual shall pay any such Deferred Terminal Dividends and

shall resume payment of Terminal Dividends at such time as its RBC next equals or exceeds the RBC Threshold Amount.

### G. Report on Settlement Relief

Penn Mutual will provide reports to Class Counsel within six and fifteen months of the Implementation Date of Settlement Relief paid to Settlement Class Members within 180 days and one year of the Implementation Date.

### H. Implementation of Internal Procedures to Provide Settlement Relief

Penn Mutual represents and warrants that it will institute internal procedures on or before the Implementation Date to ensure the timely payment of Settlement Relief to Settlement Class Members.

## V. SETTLEMENT ADMINISTRATION

Penn Mutual will administer and implement the Settlement. Penn Mutual will bear all costs and expenses incurred in doing so, including without limiting the foregoing: preparation, publication, printing and mailing costs of the Class Settlement Notice and Class Settlement Notice Package; the costs of conducting the search for addresses of Owners as provided in this Agreement; the costs of any post office rental box; any costs of receiving and distributing to counsel items received concerning the administration of the Settlement; administration costs of providing Settlement Relief; the costs of retrieving documents and data necessary to administer and provide the Settlement Relief; and responding to questions of class members in accordance with the terms of the Settlement.

In performing its duties to administer and implement the Settlement, Penn Mutual will:

1. utilize the national change of address database to update its mailing records for the Class Settlement Notice prior to the mailing of the Class Settlement Notice;

2. prepare and timely mail the Class Settlement Notice Package;

3.     process returned mail, re-mail returned mail which provides a new address, investigate the availability of a correct address for other returned items once using an industry accepted source agreeable to Class Counsel such as Accurint, and re-mail if an updated address is available;

4.     create an email address to which requests for documents relating to the settlement may be directed by Settlement Class Members and from which requested documents filed with the Court will be provided free of charge to Settlement Class Members;

5.     receive items submitted or mailed to Penn Mutual by Settlement Class Members and promptly provide copies of objections to the Settlement to the Parties' counsel;

6.     receive any other written correspondence or communication concerning the Settlement from Settlement Class Members, provide copies of such correspondence which require a response to the Parties' counsel, and send responses to such correspondence and communications as directed by Parties' counsel;

7.     make available a sufficient number of trained Service Department personnel adequate to promptly respond to questions or inquiries by or on behalf of Settlement Class Members;

8.     mail copies of this Agreement to Settlement Class Members upon request;

9.     make any additional mailings required by this Agreement or the Court;

10.     execute other tasks mutually agreed to by the Parties;

11.     provide to Class Counsel, for approval by Class Counsel, whose approval shall not be unreasonably withheld, a proposed script and FAQs for use by the

call center representatives in responding to telephonic inquiries from Settlement Class Members;

12.    accurately and neutrally describe in terms agreed to by the Parties, and train and instruct its employees and agents to accurately and neutrally describe, the provisions of this Agreement in all of its communications concerning this Agreement;

13.    not render any legal, investment, insurance, tax or savings advice whatsoever;

14.    promptly refer to Class Counsel any inquiries from Settlement Class Members who request to communicate with Class Counsel; and

15.    provide to Class Counsel upon request information that is reasonably necessary to advise the Court concerning the Settlement Administration process in advance of the Fairness Hearing or in connection with any appeal of the Final Order and Judgment and as is reasonably necessary to access compliance with the Agreement within one year following the Implementation Date.

## VI.   NOTICE TO THE SETTLEMENT CLASS

### A.   Timing of Class Settlement Notice Package

No later than 30 days after the entry of the Preliminary Approval Order, Penn Mutual will send a Class Settlement Notice Package to each Settlement Class Member by first class mail, postage prepaid, to the last known address based on Penn Mutual's records as updated in accordance with Section V above.

### B.   Content of Class Settlement Notice Package

The Class Settlement Notice Package for each Settlement Class Member will consist of the Cover Letter (in substantially the same form as that attached hereto as Exhibit 1) and the Class Settlement Notice (in substantially the same form as that attached hereto as Exhibit 2).

### C. Re-mailing of Notice to a Settlement Class Member

Penn Mutual will re-mail any Class Settlement Notice Package returned by the U.S. Postal Service with a forwarding address once. Penn Mutual will promptly investigate the availability of a correct address for other returned items once using an industry accepted source agreeable to Class Counsel, such as Accurint, and re-mail if an updated address is available. Penn Mutual is not obligated to re-mail items returned more than 30 days after the date of the mailing of the Class Settlement Notice Package.

## VII. OBJECTIONS TO SETTLEMENT

1. Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement, or to the approval of Class Counsel Attorneys' Fees, Class Counsel Expenses and/or the Service Awards, must no later than 45 days after the mailing of the Class Settlement Notice Package, or as the Court otherwise may direct, deliver to Class Counsel and to Penn Mutual's Counsel (as specified in the Class Settlement Notice) and file with the Court a written statement of the objections, as well as the specific reason(s), if any, for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention, any evidence or other information the Settlement Class Member wishes to introduce in support of the objections and the Settlement Class Member's policy number(s), name, address, and any email address and phone number. Settlement Class Members may make objections either on their own or through an attorney retained at their own expense.

2. Any Settlement Class Member who files and serves a written objection, as described in the preceding paragraph, may appear at the Fairness Hearing, either in person or through an attorney hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness or adequacy of this Agreement or the Settlement, or to Penn Mutual's payment of the Class Counsel Attorneys' Fees and/or

Class Counsel Expenses. Settlement Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must no later than 45 days after the mailing of the Class Settlement Notice Package, or as the Court may otherwise direct, deliver to Class Counsel and to Penn Mutual's Counsel (as specified in the Class Settlement Notice) and file with the Court a notice of intention to appear.

3.     Any Settlement Class Member who fails to comply with the provisions of this Section shall waive and forfeit any and all rights he or she may have to object and/or appear separately and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Action.

4.     Any Settlement Class Member who properly objects consistent with the provisions of this Section VII to the Settlement shall nevertheless be entitled to all of the benefits of the Settlement if it is nevertheless approved by the Court.

## VIII.  RELEASE AND WAIVER

### A.     Definitions

1.     The term "Releasees" means Penn Mutual and its past, present and future parents, divisions, subsidiaries, affiliates, predecessors, successors and assigns (which shall include any person or entity that controls, is controlled by, or is under common control with any such party), and each of their respective past, present and future officers, directors, trustees, employees, representatives, agents, appointed agents, attorneys, successors and assigns, or any of them, including any person or entity acting on behalf or direction of any of them.

2.     The term "Released Transactions" means the events, transactions or circumstances concerning the Settlement Policies that were alleged or asserted, or that could have been alleged or asserted in the Action based on the same factual predicate as the claims alleged in the Action (including without limitation matters asserted in the

pleadings filed in the Action and in the administrative proceeding, the motions papers, submissions and other filings of the Parties, or in Plaintiffs' expert reports), including specifically: (a) Penn Mutual's payment of dividends, or alleged failure to pay adequate or legally required dividends, on any of the Settlement Policies; (b) Penn Mutual's compliance or alleged non-compliance with the provisions of Section 614 and/or Section 510(f); (c) Penn Mutual's compliance or alleged non-compliance with any policy provisions contained in or otherwise incorporated in the Settlement Policies in accordance with Section 510(f); and (d) Penn Mutual's computation of its safety fund amount under Section 614 so long as it is consistent with the Consent Order.

## B. Release and Waiver

1. Plaintiffs and the Settlement Class Members, on behalf of themselves, their spouses, heirs, assigns, beneficiaries, executors, administrators, trusts, trustees, predecessors and successors, hereby expressly release and discharge the Releasees from any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, whether known or unknown, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, either as a class claim or as an individual claim, or before any court, arbitration panel or regulatory or administrative agency.

2. Plaintiffs and the Settlement Class Members hereby expressly further agree that they shall not now or hereafter institute, maintain, or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class, or on behalf of any other person or entity any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, including, without limitation, claims for mental anguish and/or punitive or exemplary damages, whether based on

federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions.

3. Nothing in this Release shall be deemed to alter Plaintiffs' or the Settlement Class Members' contractual rights under the Settlement Policies except as expressly specified in this Settlement.

4. Plaintiffs and the Settlement Class Members expressly understand that § 1542 of the Civil Code of the State of California provides that

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS [OR HER] FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM [OR HER] MUST HAVE MATERIALLY AFFECTED HIS [OR HER] SETTLEMENT WITH THE DEBTOR.

To the extent that California or other similar federal or state law may apply (because of or notwithstanding the choice of law provisions in this Agreement), Plaintiffs and the Settlement Class Members hereby agree that the provisions of § 1542 and all such similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Settlement Class Members based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, and Plaintiffs and the Settlement Class Members agree that this is an essential term of this Agreement.

5. In connection with this Release, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, facts in addition to or different from those which they now know or believe to be true, or losses that may exist or have been underestimated based upon, arising out of, relating to, and/or in conjunction with the Released Transactions herein. Plaintiffs and the Settlement Class Members nevertheless agree that this Release fully, finally, and forever shall settle, discharge and release all

liability based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, which exists, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding).

6.      As of the Final Settlement Date, each of the Releasees shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Class Counsel, Plaintiffs and each and all of the Settlement Class Members, from all claims (including, without limitation, unknown claims) based upon, arising out of, relating to, and/or in conjunction with the Released Transactions and the institution, prosecution, assertion, settlement, or resolution of the Action and administrative proceeding before the Department.

7.      Without limiting the foregoing, nothing in this Release shall release, preclude, or limit any claim or action to enforce the terms of this Agreement.

## IX.    SERVICE AWARDS, CLASS COUNSEL ATTORNEYS' FEES, AND CLASS COUNSEL EXPENSES

### A.    Service Awards

Subject to Court approval, in recognition of their service as Class Representatives, Penn Mutual shall pay to Daniel J. Harshbarger and Edith M. Harshbarger each $3,750, or any lesser amount awarded by the Court, as full and complete compensation for their service as Class Representatives. These Service Awards are not conditioned on Plaintiffs' support for the Settlement. Penn Mutual will pay these amounts in addition to any benefits that Plaintiffs are entitled to receive as Settlement Class Members, and will not diminish or otherwise adversely affect any other Settlement Benefit provided to the Settlement Class or Plaintiffs.

### B.    Class Counsel Attorneys' Fees and Class Counsel Expenses

Penn Mutual will pay Class Counsel Attorneys' Fees in an amount not to exceed $10 million. Class Counsel will make, and Penn Mutual agrees not to oppose, a separate

application to the Court for the approval of Penn Mutual's payment of Class Counsel Attorneys' Fees not to exceed a total of $10 million, plus Class Counsel Expenses in an additional amount not to exceed a total of $700,000. These amounts encompass all attorneys' fees, costs, expenses, and other amounts incurred or paid or for which Plaintiffs and Class Counsel or their predecessors are or may become obligated relating to the Action for which they will seek compensation, including the time prior to the filing of the Action, the conduct of the Action, and the full implementation of the Settlement.

Class Counsel will apply for approval of Penn Mutual's payment of the Class Counsel Attorneys' Fees and Class Counsel Expenses at least 21 days prior to the deadline for the submission of objections, or such other date set by the Court. The amount of the Class Counsel Attorneys' Fees and Class Counsel Expenses approved by the Court for payment by Penn Mutual shall be determined at the Fairness Hearing, and shall be addressed by the Court in a separate order, but shall not exceed attorneys' fees of $10 million and expenses of $700,000. Penn Mutual's payment of Class Counsel Attorneys' Fees and Class Counsel Expenses is in addition to, and will not diminish or otherwise adversely affect, any other Settlement Benefit provided to the Settlement Class or Plaintiffs.

### C. Payment of Attorneys' Fees and Expenses

Penn Mutual will wire the Class Counsel Attorneys' Fees and Class Counsel Expenses as approved by the Court to an account established by Class Counsel for this purpose. Penn Mutual will do so no later than ten (10) days after the Final Settlement Date.

### D. Distribution of Attorneys' Fees and Expenses Payment to Class Counsel

Disagreements, if any, between or among Class Counsel in the Action relating to the Court's award of fees and expenses, or of their individual shares of such an award,

will be determined by the Court presiding over the Action, which will retain sole and exclusive jurisdiction to resolve any such disagreements. Disagreements between or among Class Counsel will have no impact on the effectiveness or the implementation of this Settlement, nor will such disagreements involve or have any impact on or result in any increase of the obligations imposed upon Penn Mutual by this Agreement.

### E. Expenses of the Implementation of the Proposed Settlement

Penn Mutual will bear all administrative expenses reasonably incurred for the implementation of the Settlement, including those described in Section VI above. Penn Mutual shall not be liable for, or obliged to pay any fees, expenses, costs, or other disbursements to, or incur any expense on behalf of, any Plaintiff, Settlement Class Member, or other person or entity, either directly or indirectly, in connection with the Action, this Agreement, or the Settlement, other than the amounts expressly provided for in this Agreement.

## X. PRELIMINARY APPROVAL ORDER

The Parties shall submit this Agreement, including all attached exhibits, to the Court and seek to obtain from the Court a Preliminary Approval Order in substantially the same form as Exhibit 3 to this Agreement.

## XI. FINAL ORDER AND JUDGMENT

Upon the Court's approval of this Agreement, the Parties shall at the Fairness Hearing request the Court sign and enter a Final Order and Judgment in substantially the same form attached as Exhibit 4 to this Agreement.

Within seven (7) business days after the entry of the Final Order and Judgment, if any Objections were filed to the Settlement, Class Counsel shall serve on all such Objectors (or their counsel if represented by counsel) a copy of the Final Order and Judgment.

## XII. TERMINATION OF ADMINISTRATIVE PROCEEDINGS BEFORE DEPARTMENT

Within ten (10) days after the Final Order and Judgment becomes final for all purposes, including appeal, the Parties will jointly move the Department for an Order terminating and dismissing the administrative proceedings.

For the purposes of this section and this Agreement, the Final Order and Judgment will become final for all purposes, including appeal:

(a)     if no appeal is taken from the Final Order and Judgment, on the date on which the time to appeal from the Final Order and Judgment has expired; or

(b)     if any appeal has been taken from the Final Order and Judgment, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review, have been finally resolved by order, mandate or otherwise, in a manner that affirms the Final Order and Judgment.

## XIII. CONTINGENCIES AND PROVISIONS RELATING TO MODIFICATION OR TERMINATION OF THIS AGREEMENT

1.     This Agreement is conditioned and contingent upon entry by the Department of a final Consent Order in the form attached hereto as Exhibit 5, or in a form with modifications that neither Party reasonably deems to be material.  Plaintiffs have agreed to support entry by the Department of the final Consent Order in consideration for the Settlement Relief provided by Penn Mutual under this Agreement and solely for the purpose of effectuating this Agreement.  The Parties will seek the Commissioner's approval of the Consent Order within ten (10) days after this Agreement is fully executed.  The Consent Order will be conditioned upon entry of the Final Order and Judgment by the Court.  The Parties agree that if the Commissioner initially declines to approve entry of a Consent Order in the form attached hereto as Exhibit 5 (or in a form modified in a way that neither Party reasonably deems to be

material), the Parties will promptly negotiate and, in good faith, attempt to reach agreement on alternative provisions of a modified proposed Consent Order acceptable to the Commissioner that effectuates the intent of the Parties. Penn Mutual or Plaintiffs, through Class Counsel, may terminate this Agreement if the Commissioner declines to approve entry of a Consent Order in the form attached hereto as Exhibit 5, if the Parties fail to agree on mutually acceptable terms of a modified proposed Consent Order or if the Commissioner fails to approve any such modified Consent Order proposed by the Parties. Plaintiffs will file a motion for entry of the Preliminary Approval Order with the Court within seven (7) days after the Commissioner grants conditional approval of the Consent Order.

2.      Except as otherwise provided for herein, this Agreement may be terminated at the discretion of either Penn Mutual or the Plaintiffs, through Class Counsel, if the Court, or any appellate court, rejects, modifies, or denies approval of any aspect of this Agreement or the Settlement that the terminating Party reasonably determines is material, other than the portions relating to Class Counsel Attorneys' Fees, Class Counsel Expenses or the Service Awards. However, the terminating Party may only do so after first promptly negotiating and, in good faith, attempting to reach agreement on alternative provisions to effectuate the intent of the Parties. The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section, no later than 20 days after receiving notice of the event prompting the termination.

3.      Penn Mutual or Plaintiffs may terminate this Agreement if, prior to Court approval, any regulator or governmental entity requires any modification to the Agreement that either Party reasonably deems to be material, other than the portions relating to Class Counsel Attorneys' Fees and Class Counsel Expenses.

4.    If this Agreement is terminated, it shall be void, and no Party shall be bound by any of its terms, except that the Parties shall remain bound by the terms of this Paragraph (including its subparts), and except that under no circumstances shall Penn Mutual have any claim for reimbursement of costs and expenses it may have incurred in connection with the administration and implementation of the Settlement (including the costs of giving Class Settlement Notice) prior to termination.  Consistent with the foregoing, in the event of termination:

(a)    Penn Mutual, the Plaintiffs, and the Settlement Class Members shall be restored to their respective positions existing immediately before the execution of this Agreement;

(b)    Penn Mutual expressly and affirmatively reserves all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action, including, without limitation, any applicable statutes of limitation and the argument that the Action may not be litigated as a class action;

(c)    Plaintiffs, on behalf of themselves and their heirs, assigns, executors, administrators and successors, and the Settlement Class Members, expressly and affirmatively reserve and do not waive any motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Action;

(d)    neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any action taken by a Party or Settlement Class Member pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

(e)    with respect to any order or judgment entered pursuant to the Settlement after the date of this Agreement, and prior to termination, the Parties agree to apply jointly for the order or judgment to be vacated and without any force or effect; and

(f)     the Parties shall jointly request that the Action be restored to the same position as if there had been no settlement, taking into consideration whether the Parties wish to engage in further discussion regarding a potential settlement.

## XIV.  GENERAL MATTERS AND RESERVATIONS

### A.     Integration and Drafting

The Parties agree that this Agreement is clear and unambiguous, that it was drafted and negotiated by Penn Mutual's Counsel and Class Counsel at arm's length, that it sets forth the entire Settlement Agreement among the Parties, that no other agreements not expressed or referred to in this Agreement exist, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed.

### B.     Amendment, Court Approval, Extensions

This Agreement may not be amended without the written consent of all Parties and approval of the Court; provided, however, that the Parties may agree to reasonable extensions of time for any deadline stated in this Agreement to be a specific date or a fixed number of days from an identified event (including such dates and time periods provided for in Section III above) that are necessary to carry out any provisions of this Settlement Agreement, provided that any extension of more than 45 days must be approved by the Court.  However, after the entry of the Final Order and Judgment, the Parties may make modifications and amendments as described in this Agreement or as otherwise permitted by the Final Order and Judgment.

### C.     Construction

For the purpose of construing this Agreement, the Parties agree that it shall be deemed to have been drafted equally by all Parties and shall not be construed strictly for or against any of the Parties.

### D. Integration of Exhibits

The exhibits hereto are incorporated by reference as if set forth herein verbatim and are an integral part of this Agreement.

### E. Waiver

The waiver by any Party of any breach of this Agreement shall not be construed as a waiver of any other breach.

### F. Counterparts

This Agreement may be executed in counterparts, each of which when executed and delivered shall be considered an original. Executed signature pages shall be valid and enforceable whether they are originals or copies, and whether they are transmitted by facsimile, e-mail or any other means.

### G. No Evidence, No Admission

1. In no event shall this Agreement, any of its provisions, or any negotiations, statements, or proceedings relating to it be offered as, received as, used as, or deemed to be evidence in the Action, any other action, or in any other proceeding, except in a proceeding to enforce this Agreement.

2. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or proceedings shall be offered as, used as, or deemed to be evidence or an admission or concession by any person of any matter.

### H. Tax Consequences

1. Each Settlement Class Member's or other person's or entity's tax obligations or consequences, if any, and the determination of those obligations, are the sole responsibility of the Settlement Class Member or other person or entity, and each such person or entity shall be deemed to release and hold Penn Mutual harmless therefrom. Penn Mutual shall act, as is required by the Internal Revenue Code and the

regulations promulgated thereunder in reporting, and income tax withholding with respect to, any Settlement Relief provided pursuant to this Agreement.

2. Penn Mutual shall not make any payment hereunder if Penn Mutual has determined in good faith that a withholding certificate or other document is required by any law or regulation to be provided by the payee prior to making such payment and the document has not been provided. In the event a withholding certification or other document is required by law or regulation to be provided by the payee, Penn Mutual shall notify the payee within 15 days prior to the issuance of any payment to be made under this Agreement of the documents needed and notify the payee that completed copies of these documents must be received by the Administrator or Penn Mutual prior to issuance of any payment under this Agreement.

3. Penn Mutual will submit IRS form 1099R or other appropriate filings with respect to Settlement Benefits provided under this Agreement to the extent it deems it appropriate to do so.

**I.     Notice**

Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by hand delivery or overnight delivery service as follows:

If to Penn Mutual, then to:

> Jay H. Calvert, Jr.
> John P. Lavelle, Jr.
> MORGAN, LEWIS & BOCKIUS, LLP
> 1701 Market Street
> Philadelphia, PA 19103

If to Plaintiffs, then to:

> Jason B. Adkins
> ADKINS, KELSTON & ZAVEZ, P.C.
> 90 Canal Street, 5th Floor
> Boston, MA 02114

Andrew S. Friedman
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2235 East Camelback Road, Suite 300
Phoenix, AZ 85016

Mark A. Chavez
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA 94941

Joseph N. Kravec, Jr.
FEINSTEIN DOYLE
PAYNE & KRAVEC, LLC
Law & Finance Building, 13th Floor
429 Fourth Avenue
Pittsburgh, PA 15219

Should any of these addresses change, the person changing his or her address shall promptly advise the Court and the other Parties, in writing.

### J. No Effect on Contract or Duty

Neither this Agreement nor any of the benefits to be provided under this Agreement shall be interpreted to alter in any way the terms of any Settlement Class Member's Settlement Policy or to constitute a novation of any Settlement Policy.

### K. Cooperation in Effecting Settlement

The Parties, their successors and assigns, and their attorneys, undertake to implement the terms of this Agreement in good faith, to use good faith in interpreting this Agreement and resolving any disputes that may arise in the implementation of this Agreement, to cooperate with one another in seeking Court approval of this Agreement, and to use their best efforts to effect the prompt consummation of this Agreement.

**L. Confidentiality**

The Parties and their counsel agree that their discussions and the information exchanged in the course of negotiating this Settlement and Agreement are confidential, and were made available on the condition that neither the Parties nor their counsel may disclose their content to third-parties (other than experts or consultants retained by the Parties in connection with this case), that they not be the subject of public comment, and that they not be publicly disclosed or used by the Parties or their counsel in any way in the Action should it not settle, or in any other proceeding.

**M. Governing Law**

This Settlement Agreement shall be governed by, and interpreted according to, the law of the Commonwealth of Pennsylvania, excluding its conflict of laws provisions.

**N. Parties Bound**

This Agreement shall be binding upon and inure to the benefit of Plaintiffs, Settlement Class Members, Class Counsel, Penn Mutual and its affiliates, and the respective heirs, predecessors, successors and assigns of each of the foregoing.

**O. Authority to Execute Agreement**

Each Party or person executing this Agreement in a representative capacity on behalf of a corporate entity hereby represents that he or she is duly authorized by such entity to execute this Agreement on its behalf, and to bind it to the terms and conditions hereof.

**P. Execution Date**

This Agreement shall be deemed executed upon the last date of execution by all the undersigned.

DATED: 10-10-16          By: _[signature]_ Daniel J. Harshbarger
                                   Daniel J. Harshbarger

DATED: 10-10-16          By: _[signature]_ Edith M. Harshbarger
                                   Edith M. Harshbarger

DATED: 10/11/16          **ADKINS, KELSTON & ZAVEZ, P.C.**

                                   By: _[signature]_ Jason B. Adkins
                                        Jason B. Adkins
                                        John Peter Zavez
                                        90 Canal Street, 5th Floor
                                        Boston, MA 02114

DATED: 10/11/16          **BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**

                                   By: _[signature]_
                                        Andrew S. Friedman
                                        Francis J. Balint, Jr.
                                        2235 East Camelback Road, Suite 300
                                        Phoenix, AZ 85016

DATED: 10/11/16          **CHAVEZ & GERTLER LLP**

                                   By: _[signature]_
                                        Mark A. Chavez
                                        42 Miller Avenue
                                        Mill Valley, CA 94941

DATED: 10 | 10 | 16

**FEINSTEIN DOYLE
PAYNE & KRAVEC, LLC**

By: _____
    Joseph N. Kravec, Jr.
    Law & Finance Building, 13th Floor
    429 Fourth Avenue
    Pittsburgh, PA 15219

    *Attorneys for Plaintiffs*

DATED:_____

**MORGAN, LEWIS & BOCKIUS, LLP**

By_____
    Jay H. Calvert, Jr.
    John P. Lavelle, Jr.
    1701 Market Street
    Philadelphia, PA 19103

    *Attorneys for The Penn Mutual Life
    Insurance Company*

DATED:_____

THE PENN MUTUAL LIFE INSURANCE
COMPANY

By_____

DATED:_____          **FEINSTEIN DOYLE**
                               **PAYNE & KRAVEC, LLC**


                               By:_____
                                  Joseph N. Kravec, Jr.
                                  Law & Finance Building, 13th Floor
                                  429 Fourth Avenue
                                  Pittsburgh, PA 15219

                                  *Attorneys for Plaintiffs*


DATED: 10/10/16                **MORGAN, LEWIS & BOCKIUS, LLP**

                               By_____
                                  Jay H. Calvert, Jr.
                                  John P. Lavelle, Jr.
                                  1701 Market Street
                                  Philadelphia, PA 19103

                                  *Attorneys for The Penn Mutual Life*
                                  *Insurance Company*


DATED: 10/10/16                THE PENN MUTUAL LIFE INSURANCE
                               COMPANY

                               By_____

**APPENDIX 1 – Settlement Policies**

All participating life insurance policies issued by Penn Mutual in force at any time during the period commencing January 1, 2006 (12:01 am, eastern) and ending December 31, 2015 (11:59 pm, eastern) in any of the following policy types:

> **Whole Life**
>
> **Term**
>
> **Indexed Universal Life**
>
> **Universal Life**
>
> **Variable Universal Life (Fixed)**
>
> **Variable Universal Life (Variable)**

**EXHIBIT 1 – Cover Letter**

The Penn Mutual Life Insurance
Company
600 Dresher Road
Horsham, PA 19044

<Date>

<First name> <Last name>
<Address>
<City>, <ST> <Zip code>

Re:     Notice of Proposed Class Action Settlement

Dear <First name>,

Our records indicate that you are the owner of participating life insurance policy <##############>
issued by Penn Mutual that was in force at some time from January 1, 2006 through December 31, 2015;
or are the owner or beneficiary (for a policy if terminated due to death) of a policy that was terminated due
to death, surrender, lapse or maturity from January 1, 2006 through December 31, 2015.  Therefore,
according to our records, you are a member of the Settlement Class in *Harshbarger, et al. v. The Penn
Mutual Life Insurance Co.*, Case No. 12-cv-06172-NIQA ("the *Harshbarger* Action"), which is currently
pending in the United States District Court for the Eastern District of Pennsylvania (the "Court").  At the
direction of the Court, the Plaintiffs in the *Harshbarger* Action also brought an administrative proceeding
before the Pennsylvania Insurance Department (the "Department") raising the same matters.

Penn Mutual has worked with the Plaintiffs in the *Harshbarger* Action to resolve these matters in a way
that benefits you and other Penn Mutual policyholders.  Specifically, the Parties have arrived at a
proposed settlement whereby owners or beneficiaries of in force participating policies as of December 31,
2015, as well as owners or beneficiaries of policies that were terminated from January 1, 2006 through
December 31, 2015, will receive either a terminal dividend or a cash payment.  These payments to the
Settlement Class will total approximately $110 million.

The terms of the proposed settlement have been approved by the Department.  However, the proposed
settlement is not final until also approved by the Court in the *Harshbarger* Action.

The enclosed Notice of Proposed Class Action Settlement (the "Notice") describes your rights in
connection with the settlement approval process in the *Harshbarger* Action.  The Notice describes the
procedure you must follow should you wish to object to any aspect of the proposed settlement.  Please
carefully review these materials.

Penn Mutual does not expect the proposed settlement to affect in any way its ability to pay claims and to
honor its commitments to policyholders, nor will it adversely affect the amount of dividends that might be
paid in the future.

As explained in the enclosed Notice, you may request copies of documents relating to the proposed
settlement, as well as other documents filed in the *Harshbarger Action*, for free by emailing your request
to <#############@pennmutual.com>.  Should you have any questions, please call 1-215-956-8000.
Plaintiffs' counsel in the *Harshbarger* Action can be reached directly by email at akz@akzlaw.com.  We're
here to help.

Sincerely,
[Penn Mutual Representative]

**EXHIBIT 2 – Class Settlement Notice**

**LEGAL NOTICE OF CLASS ACTION SETTLEMENT**

*Harshbarger, et al. v. The Penn Mutual Life Insurance Co.*, Case No. 2:12-cv-06172-NIQA

**If you owned or were the beneficiary under a**
# Participating Life Insurance Policy Issued By
# The Penn Mutual Life Insurance Company
**that was in force at any time from**
# January 1, 2006 through December 31, 2015,
**then your rights may be affected by a class action settlement.**
*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- This Notice advises you of a proposed Settlement in a class action lawsuit that may entitle you to money and affect your legal rights.

- You may be a Settlement Class Member and entitled to money from this Settlement if you owned, or became the beneficiary of a death benefit under, a Penn Mutual participating life insurance policy that was in force at any time from January 1, 2006 through December 31, 2015.

- If the Court approves this Settlement, Penn Mutual will provide the following benefits to Settlement Class Members:

  o *For policies in force* as of December 31, 2015, Penn Mutual will declare Terminal Dividends, amounting to 1.8% of its participating policies' combined cash surrender value, payable on each policy upon the earlier of the insured's death or the policy's termination by lapse or surrender according to a formula. The Terminal Dividends will total approximately $97 million in the aggregate.

  o *For policies terminated* due to death, surrender or lapse between January 1, 2006 and December 31, 2015, Penn Mutual will declare and pay a policy dividend totaling $13 million to the owners or beneficiaries of those policies.

- If the Court approves this Settlement, Settlement Class Members will give up any right they may have to sue Penn Mutual over the allegations at issue in the lawsuit that is being settled.

- Penn Mutual will also pay the Plaintiffs' lawyers' reasonable attorneys' fees (not to exceed $10 million) and expenses (not to exceed $700,000), and pay the Class Representatives service awards, all subject to Court approval.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **WHAT YOU CAN DO:** | **WHAT WILL HAPPEN AS A RESULT:** |
| Do Nothing | You will be part of the Settlement.  You will be eligible for a monetary payment if the Court approves the Settlement.  You will give up any right you may have to pursue your own lawsuit on these claims. |
| Object – Submit Your Objection Filed or Postmarked By _____ | You can write to the Court about why you do not think all or any part of the Settlement should be approved.  The Court can only approve or deny the Settlement, not change the terms of the Settlement. |
| Discuss The Settlement With The Court – Submit Your Request To Attend The Hearing Postmarked By _____ | You can ask the Court for permission to speak in Court about your opinion of the Settlement.  You may hire an attorney to represent you if you so desire.  The Court will hold a hearing to determine whether to approve the Settlement on [DATE]. |

If you have any questions after reading the detailed Settlement notice below, please call 1-215-956-8000.

## NOTICE OF CLASS ACTION SETTLEMENT PURSUANT TO FED. R. CIV. P. 23(e)(1)

**To:**  All owners of participating life insurance policies issued by Penn Mutual that were in force at any time from January 1, 2006 through December 31, 2015; and all beneficiaries of policies that were terminated due to death from January 1, 2006 through December 31, 2015, provided Penn Mutual received a valid notice of death claim under the operative policy on or before December 31, 2015, or if Penn Mutual otherwise learned or learns of said death, prior to the date funds in this case are to be distributed (collectively, the "Settlement Class").

DB1/ 89057408.4

According to Penn Mutual's records, you are a member of this Settlement Class. The purpose of this Notice is to advise you of your rights relating to this Settlement.

## Class Action Determination

This Settlement will end a class action lawsuit brought by Daniel J. Harshbarger and Edith M. Harshbarger ("Plaintiffs") against The Penn Mutual Life Insurance Company ("Penn Mutual"). The lawsuit is pending before United States District Judge Nitza I. Quiñones Alejandro of the United States District Court for the Eastern District of Pennsylvania (the "Court").

The Court has determined, for purposes of possible settlement, that this lawsuit may proceed as a class action pursuant to Rule 23(b)(1)(A) and (b)(2) of the Federal Rules of Civil Procedure. The Court has also preliminarily determined that Plaintiffs fairly and adequately represent the interests of the Settlement Class.

## Description of the Lawsuit

This lawsuit is about Plaintiffs' allegation that Penn Mutual was legally required to pay more policy dividends to Penn Mutual's participating life insurance policyholders than Penn Mutual actually paid. The members of the Settlement Class described above are (a) owners of participating life insurance policies issued by Penn Mutual that were in force at any time from January 1, 2006 through December 31, 2015, and (b) beneficiaries of such policies that were terminated due to death from January 1, 2006 through December 31, 2015.

## Procedural Background

Plaintiffs filed this lawsuit on November 2, 2012. Plaintiffs alleged that Section 410(f) of Pennsylvania's Insurance Company Law of 1921, 40 P.S. § 510(f) ("Section 510(f)"), requires Penn Mutual to pay to participating policyholders, through policy dividends, any surplus held by

Penn Mutual that exceeds the surplus limit under Section 429 of the Insurance Company Law of 1921, 40 P.S. § 614 ("Section 614"). Plaintiffs thus asserted that "excess surplus" under Section 614 was "divisible surplus" under Section 510(f) and must be distributed as policy dividends to Penn Mutual's participating life insurance policyholders. Based on these allegations, Plaintiffs brought claims on behalf of themselves and other Penn Mutual policyholders for breach of contract, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unjust enrichment, and money had and received.

Following briefing on Penn Mutual's Motion to Dismiss, on April 11, 2014, the Court entered an order in which it abstained from hearing the lawsuit in deference to the primary jurisdiction of the Pennsylvania Insurance Commissioner ("the Commissioner") and stayed the lawsuit pending resolution of Plaintiffs' claims before the Pennsylvania Insurance Department ("the Department"). On February 20, 2015, Plaintiffs filed their Insurance Complaint ("Complaint") with the Department, requesting among other things that the Commissioner confirm how excess surplus is to be calculated under Section 614; find that Penn Mutual had retained surplus in excess of the Section 614 limit; and rule that excess surplus under Section 614 constitutes "divisible surplus" under Section 510(f) which must be distributed as policy dividends. The Parties proceeded through discovery before the Department, which involved extensive document productions as well as the exchange of initial expert reports.

On May 26, 2016, following a two day mediation before the Honorable Diane M. Welsh (Ret.) of JAMS, the Parties agreed to a proposed settlement of the pending proceedings before the Department and the Court according to the terms described below, which have been approved by the Department, preliminarily approved by the Court, and are subject to the final approval of the Court.

**Terms of Proposed Settlement**

The Settlement affords members of the Settlement Class the following benefits:

For each Policy in force as of December 31, 2015 (individually referred to as an "In Force Policy"), Penn Mutual's Board of Trustees will approve and declare a Terminal Dividend payable upon the earlier of: (1) the death of the insured; or (2) the termination of the In Force Policy upon lapse, surrender or maturity of the Policy. Under the Settlement Penn Mutual will pay Terminal Dividends to such In Force Policies totaling $97,073,303. This amount will be allocated as follows. First, each In Force Policy will be allocated a Terminal Dividend of $25. The aggregate cost of these dividends ($_____) will be deducted from the $97,073,303 fund and the remainder of that fund ("Remaining In Force Amount"), which amounts to $_____, will then be allocated to each In Force Policy that had a Cash Surrender Value as of December 31, 2015 ("Second In Force Allocation"). The Second In Force Allocation will be *pro rata*, which means each eligible In Force Policy's share under the Second In Force Allocation will equal the Remaining In Force Amount times the Cash Surrender Value of the In Force Policy divided by the aggregate Cash Surrender Value of all such eligible In Force Policies.

For those Policies that were terminated due to death, surrender, lapse or maturity from January 1, 2006 through December 31, 2015 (the "Terminated Policies"), Penn Mutual will pay a total of $13 million to the owners or beneficiaries (for those Policies terminated due to death) of those Policies. This amount will be allocated as follows. First, each Terminated Policy will be allocated a Terminal Dividend of $25. The aggregate cost of these dividends ($_____) will be deducted from the $13 million fund and the remainder of that fund ("Remaining Terminated Amount"), which is $_____, will then be allocated to each Terminated Policy that had a cash

surrender value at termination ("Second Terminated Allocation"). The Second Terminated Allocation will be *pro rata*, which means each eligible Terminated Policy's share under the Second Terminated Allocation will equal the Remaining Terminated Amount times the cash surrender value of the Terminated Policy divided by the aggregate cash surrender value of all the eligible Terminated Policies.

Penn Mutual's obligation to pay the Terminal Dividends is conditioned on Penn Mutual having risk based capital ("RBC") levels of no less than 500% of its "authorized control level" RBC amount ("RBC Threshold Amount"). If this condition is not met, the Company will suspend and defer the payment of Terminal Dividends until such time as its RBC next exceeds the RBC Threshold Amount. Payment of deferred Terminal Dividends will thereafter resume when, and will continue for so long as, Penn Mutual's RBC exceeds the RBC Threshold Amount.

### **Proposed Release and Waiver**

In exchange for receiving benefits under the Settlement, Settlement Class Members will give up any right they may have to sue Penn Mutual for claims related to this lawsuit. This is pursuant to the Settlement's Release and Waiver provision which is re-printed verbatim below:

### A. Definitions

1. The term "Releasees" means Penn Mutual and its past, present and future parents, divisions, subsidiaries, affiliates, predecessors, successors and assigns (which shall include any person or entity that controls, is controlled by, or is under common control with any such party), and each of their respective past, present and future officers, directors, trustees, employees, representatives, agents, appointed agents, attorneys, successors and assigns, or any of them, including any person or entity acting on behalf or direction of any of them.

2.     The term "Released Transactions" means the events, transactions, or circumstances concerning the Settlement Policies that were alleged or asserted, or that could have been alleged or asserted in the Action based on the same factual predicate as the claims alleged in the Action (including without limitation matters asserted in the pleadings filed in the Action and in the administrative proceeding, the motions papers, submissions and other filings of the Parties, or in Plaintiffs' expert reports), including specifically: (a) Penn Mutual's payment of dividends, or alleged failure to pay adequate or legally required dividends, on any of the Settlement Policies; (b) Penn Mutual's compliance or alleged non-compliance with the provisions of Section 614 and/or Section 510(f); (c) Penn Mutual's compliance or alleged non-compliance with any policy provisions contained in or otherwise incorporated in the Settlement Policies in accordance with Section 510(f); and (d) Penn Mutual's computation of its safety fund amount under Section 614 so long as it is consistent with the Consent Order.

**B. Release and Waiver**

1.     Plaintiffs and the Settlement Class Members, on behalf of themselves, their spouses, heirs, assigns, beneficiaries, executors, administrators, trusts, trustees, predecessors and successors, hereby expressly release and discharge the Releasees from any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, whether known or unknown, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, either as a class claim or as an individual claim, or before any court, arbitration panel or regulatory or administrative agency.

2.     Plaintiffs and the Settlement Class Members hereby expressly further agree that they shall not now or hereafter institute, maintain, or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class, or on behalf of any other person or entity any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief,

interest, demands or rights, including, without limitation, claims for mental anguish and/or punitive or exemplary damages, whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions.

3. Nothing in this Release shall be deemed to alter Plaintiffs' or the Settlement Class Members' contractual rights under the Settlement Policies except as expressly specified in this Settlement.

4. Plaintiffs and the Settlement Class Members expressly understand that §1542 of the Civil Code of the State of California provides that

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS [OR HER] FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM [OR HER] MUST HAVE MATERIALLY AFFECTED HIS [OR HER] SETTLEMENT WITH THE DEBTOR.

To the extent that California or other similar federal or state law may apply (because of or notwithstanding the choice of law provisions in this Agreement), Plaintiffs and the Settlement Class Members hereby agree that the provisions of § 1542 and all such similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Settlement Class Members based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, and Plaintiffs and the Settlement Class Members agree that this is an essential term of this Agreement.

5. In connection with this Release, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, facts in addition to or different from those which they now know or believe to be true, or losses that may exist or have been underestimated based upon, arising out

of, relating to, and/or in conjunction with the Released Transactions herein. Plaintiffs and the Settlement Class Members nevertheless agree that this Release fully, finally, and forever shall settle, discharge and release all liability based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, which exists, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding).

6.     As of the Final Settlement Date, each of the Releasees shall be deemed to have, and by operation the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Class Counsel, Plaintiffs and each and all of the Settlement Class Members, from all claims (including, without limitation, unknown claims) based upon, arising out of, relating to, and/or in conjunction with the Released Transactions and the institution, prosecution, assertion, settlement, or resolution of the Action and administrative proceeding before the Department.

7.     Without limiting the foregoing, nothing in this Release shall release, preclude, or limit any claim or action to enforce the terms of this Agreement.

*     *     *

The proposed Settlement and final relief to the Settlement Class is contingent upon the approval of both the Commissioner and upon the final approval, judgment, and order of the Court. The Parties have obtained the approval of the Settlement from the Commissioner. A Fairness Hearing on the final approval of the Settlement is scheduled before the Court for: _____.

Penn Mutual has entered into this Settlement without admitting that any of Plaintiffs' allegations have any basis in law or in fact, and without admitting any fault, liability, or culpability. More detailed information concerning the claims of the respective parties, and the proposed scope of relief can be obtained from reviewing the Settlement and the pleadings on file

with the Court, which may be requested free of charge by emailing <############@pennmutual.com>.

## **Effect of the Class Action Determination**

All members of the Settlement Class as defined above will be bound by the judgment entered by the Court, whether or not favorable to the Settlement Class. That is, the judgment in this case will specifically resolve the rights of the Settlement Class with respect to the claims raised by Plaintiffs in this litigation, and any future litigation, arbitration, regulatory action, remediation, or other proceeding based upon, arising out of, relating to, and/or in conjunction with the Released Transactions. Pursuant to the terms of the Settlement, Penn Mutual will pay Class counsel's reasonable attorneys' fees not to exceed $10 million and Class counsel's expenses not to exceed $700,000, subject to the approval of the Court. Penn Mutual will also pay the two Class Representatives service awards of $3,750 each, likewise subject to approval of the Court. Plaintiffs will file a motion seeking approval of an amount as and for Class counsel's reasonable attorneys' fees, Class counsel's expenses, and the service awards, together with supporting information, on or before _____.

Finally, Penn Mutual is also paying all notice and administrative expenses relating to the Settlement. You are not obliged to pay any judgment, court costs, or lawyers' fees, unless you elect to retain your own attorney, at your own expense.

## **Right to Object**

As a member of the Settlement Class, you need not engage your own attorney. Plaintiffs are represented by attorneys Jason B. Adkins and John P. Zavez of Adkins, Kelston & Zavez, P.C., Andrew S. Friedman and Francis J. Balint, Jr. of Bonnett, Fairbourn, Friedman & Balint, P.C., Mark A. Chavez of Chavez & Gertler LLP, and Joseph N. Kravec, Jr. of Feinstein Doyle

Payne & Kravec, LLC ("Class Counsel"). You will be represented (without any charge to you) by Class Counsel. If you wish, however, you may appear either by hiring your own lawyer or by representing yourself.

The Court has set a Fairness Hearing on the approval of this proposed Settlement for _____. As a member of the Settlement Class, you have the right to voice your approval of, or objections to, any aspect of the proposed Settlement. Any such objection must be in writing, and must on or before [insert date 45 days from the date of mailing] be (a) sent to Class Counsel and Penn Mutual's counsel at their respective addresses identified at the end of this Notice and (b) filed with the Court. The objection must include the specific reasons, if any, for your objection, including any legal support you believe should be brought to the Court's attention, any evidence or other information you wish to introduce in support of the objection, along with your policy number(s), name, address, and any email address and phone number. You may make objections on your own or through an attorney retained at your own expense.

Should you file an objection, you also have the right to appear and be heard at the Fairness Hearing. Should you or your hired attorney wish to appear at the Fairness Hearing, a notice of intention to appear must on or before [insert date 45 days from the date of mailing] be (a) sent to Class Counsel and Penn Mutual's counsel at their respective addresses identified at the end of this Notice and (b) filed with the Court. As noted above, the Fairness Hearing will occur on _____, at the below location:

**United States District Court for the Eastern District of Pennsylvania**
**United States Courthouse**
**601 Market Street, Courtroom 8-B**
**Philadelphia, PA 19106**

Failure to comply with the objection requirements described above (and in Section VII of the Settlement Agreement) will result in the waiver or forfeiture of any and all rights you may have had to appear separately and/or object to the terms of the Settlement.

To be clear, however, any Settlement Class Member who properly objects to the Settlement, shall nevertheless be entitled to all of the benefits of the Settlement, if it is approved by the Court.

### Addresses of the Parties' Legal Counsel

Class Counsel:

Jason B. Adkins
John Peter Zavez
**ADKINS, KELSTON & ZAVECZ, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114

Andrew S. Friedman
Francis J. Balint, Jr.
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016

Mark A. Chavez
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA 94941

Joseph N. Kravec, Jr.
**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Law & Finance Building, 13th Floor
429 Fourth Avenue
Pittsburgh, PA 15219

Penn Mutual's Counsel:

Jay H. Calvert, Jr.
John P. Lavelle, Jr.
Joseph B. G. Fay
David L. Harbaugh
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103

If you have any questions after reading the detailed Settlement notice above, please <u>call 1-215-956-8000</u>.

**EXHIBIT 3 – Preliminary Approval Order**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL J. HARSHBARGER AND EDITH M. HARSHBARGER, Individually and on Behalf of all Persons Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE PENN MUTUAL LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 2:12-cv-06172 |

## PRELIMINARY APPROVAL ORDER

**AND NOW**, the ___ day of ____, 2016, the Court, having considered the Plaintiffs' "Motion for Preliminary Approval of Proposed Class Settlement and for Preliminary Certification of the Proposed Settlement Class and Appointment of Class Counsel," filed in connection with the Stipulation of Settlement ("Settlement Agreement") between Plaintiffs, individually and as representatives of the class of persons defined below ("Settlement Class"), and Defendant The Penn Mutual Life Insurance Company ("Penn Mutual"):

**WHEREFORE**, with respect to certifying this action as a class action for settlement purposes the Court finds:

A.   The Settlement Class is so numerous that joinder of all members is impracticable;

B.   There are questions of law and fact common to the members of the Settlement Class;

C.     The individual claims of the Plaintiffs are typical of the claims of the other members of the Settlement Class;

D.     Plaintiffs are appropriate and adequate representatives of the Settlement Class;

E.     Inconsistent or varying adjudications with respect to individual Settlement Class members as to the interpretation of the Pennsylvania statutes at issue in this litigation, and as to common language contained in Penn Mutual policies, would create a risk of establishing incompatible standards of conduct for Penn Mutual;

F.     Penn Mutual has acted on grounds that apply generally to members of the Settlement Class, such that final declaratory or injunctive relief is appropriate respecting the proposed Settlement Class as a whole; and

G.     After consideration of factors described in Rule 23(g), *Federal Rules of Civil Procedure*, Plaintiffs' counsel, Adkins Kelston & Zavez, P.C., Bonnett Fairbourn Friedman & Balint, P.C., Chavez & Gertler LLP, and Feinstein Doyle Payne & Kravec, LLC (collectively, "Class Counsel"), will fairly and adequately represent the interests of the Settlement Class.

**WHEREFORE**, with respect to the Settlement Agreement, the Court finds that, subject to a final hearing, the proposed Settlement is fair, reasonable and adequate.

**IT IS HEREBY ORDERED:**

1.     Pursuant to Fed. R. Civ. P. 23(c)(1), the Court certifies this action as a class action pursuant to Fed. R. Civ. 23(b)(1)(A) and (b)(2), and, in accordance with Fed. R. Civ. P. 23(c)(1)(B) defines the Settlement Class as: "(a) all persons who own or owned a Settlement Policy; and (b) all Beneficiaries of any Settlement Policy terminated by death on or before December 31, 2015, if such Beneficiaries notify or notified Penn Mutual of a death claim, or if Penn Mutual otherwise learns of said death, prior to the Implementation Date."  A "Settlement Policy" means a participating life insurance policy issued by Penn Mutual as one of the insurance product types described in Appendix 1 of the Settlement

Agreement and that was in-force at any time during the period commencing January 1, 2006 and ending December 31, 2015.

2.      For purposes of Fed. R. Civ. P. 23(c)(1)(B), the claims, issues or defenses hereby certified for purposes of settlement only are all of the claims raised in the Complaint in this action, including the issues raised thereby and the legal defenses that might be asserted in response thereto.

3.      Plaintiffs are hereby appointed as Class Representatives for the Settlement Class.

4.      Pursuant to Fed. R. Civ. P. 23(g), Adkins Kelston & Zavez, P.C., Bonnett Fairbourn Friedman & Balint, P.C., Chavez & Gertler LLP, and Feinstein Doyle Payne & Kravec, LLC are hereby collectively appointed as Class Counsel for the Settlement Class.

5.      A Fairness Hearing is hereby scheduled for _____, 2016, at _____ am/pm to consider the fairness, reasonableness, and adequacy of the Settlement Agreement, including final certification of the proposed Settlement Class and the reasonableness of Penn Mutual's payment of proposed Class Counsel Attorneys' Fees, Class Counsel Expenses and Service Awards to the Class Representatives, and whether the proposed Settlement should be finally approved by the Court.

6.      The Court approves the proposed Class Settlement Notice Package, and directs that notice be afforded the members of the Settlement Class by direct mail as provided in the Settlement Agreement.  The Court concludes that the Class Settlement Notice:  (a) is the best practicable notice under the circumstances; (b) is reasonably calculated to apprise Settlement Class Members of the pendency of the Action and of their right to object to the proposed Settlement; (c) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution and its Amendments.

7.     Penn Mutual is hereby authorized to establish the means necessary to administer the Settlement pending final approval by the Court, in accordance with the terms of the Settlement Agreement.

8.     Penn Mutual is directed to mail the Class Settlement Notice Package to each Settlement Class Member by first-class mail, postage prepaid, to his or her last known address no later than 30 days after entry of the Preliminary Approval Order. Penn Mutual is furthermore directed to perform updating of addresses for notices returned as undeliverable and/or remailing of undeliverable notices in accordance with the provisions of the Settlement Agreement.

9.     Penn Mutual is directed to file proof of the mailing of the Class Settlement Notice Packages at or before the Fairness Hearing, as prescribed in the Settlement Agreement.

10.     Members of the Settlement Class shall have until no later than 45 days after mailing of the Class Settlement Notice Package or at such other time as the Court may hereafter direct, to object to any aspect of the proposed Settlement Agreement, including the certification of the proposed Settlement Class.

11.     Each member of the Settlement Class who wishes to object to the fairness, reasonableness or adequacy of any aspect of the proposed Settlement Agreement must mail to Class Counsel and Penn Mutual's Counsel (as specified in the Class Settlement Notice) and must file with the Court, no later than 45 days after mailing of the Class Settlement Notice Package or at such other time as the Court may hereafter direct, a written statement of the objection, as well as the specific reasons, if any, for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of his or her objection, and the Settlement Class Member's policy number(s), name, address, and any email address and phone number, or be forever barred from separately objecting.

12.     Penn Mutual's Counsel and Class Counsel are directed to promptly furnish each other with copies of any and all objections that might come into their possession.

13.     Any attorney hired by a Settlement Class Member at the Settlement Class Member's sole expense for the purpose of objecting to any aspect of the proposed Settlement Agreement, including the award of Class Counsel Attorneys' Fees, Class Counsel Expenses or the proposed Service Awards to the Class Representatives, must mail to Class Counsel and Penn Mutual's Counsel (as specified in the Class Settlement Notice) and file with the Clerk of the Court, no later than 45 days after mailing of the Class Settlement Notice Package or as the Court otherwise may direct, a notice of appearance.

14.     A Settlement Class Member who files and serves a written objection and who intends to make an appearance at the Fairness Hearing, either in person or through personal counsel hired at the Settlement Class Member's expense, must mail to Class Counsel and Penn Mutual's Counsel (as specified in the Class Settlement Notice) and file with the Court, no later than 45 days after mailing of the Class Settlement Notice Package or as the Court otherwise may hereafter direct, a notice of intention to appear at the Fairness Hearing.

15.     Pending the Fairness Hearing, and in aid of its jurisdiction over the claims asserted herein and its ability to resolves those claims, the Court hereby preliminarily bars and enjoins all members of the Settlement Class and/or their representatives from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing litigation as Settlement Class members or otherwise based on or relating to the claims or causes of actions or the facts alleged in the Action or the Released Transactions, as those terms are defined in the Settlement Agreement.

16.     Class Counsel shall file their Motion for Approval of Class Counsel Attorneys' Fees, Class Counsel Expenses and Service Awards to the Class Representatives, together will any supporting papers, no later than twenty-one (21) days

after distribution of the Notice and not less than thirty (30) days before the Fairness Hearing.

17.    Class Counsel shall file any response to Settlement Class Member objections, together with any supporting papers, no later than ten (10) days before the Fairness Hearing.

**BY THE COURT:**

_____
**Hon. Nitza I. Quiñones Alejandro**

**EXHIBIT 4 – Final Order and Judgment**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL J. HARSHBARGER AND EDITH
M. HARSHBARGER, Individually and on
Behalf of all Persons Similarly Situated,

        Plaintiffs,

    v.

THE PENN MUTUAL LIFE INSURANCE
COMPANY,

        Defendant.

Civil Action No. 2:12-cv-06172

## FINAL ORDER AND JUDGMENT

**AND NOW**, the ___ day of ____, 2016, in the above-captioned action ("the Action") comes the Court, having considered the Plaintiffs' "Motion for Final Approval of Proposed Class Settlement and for Final Certification of the Proposed Settlement Class and Appointment of Class Counsel" filed in connection with the Stipulation of Settlement ("Settlement Agreement") between Plaintiffs, individually and as representatives of the class of persons defined below ("Settlement Class"), and Defendant The Penn Mutual Life Insurance Company ("Penn Mutual").

**WHEREFORE**,

A.     Plaintiffs initiated the Action on November 1, 2012, as a class action before the United States District Court for the Eastern Division of Pennsylvania. Plaintiffs allege that Penn Mutual has breached its obligations to its mutual policyholders to pay annual dividends by retaining surplus due to them under their contracts, which dividend language is prescribed by 40 P.S. § 510(f) ("Section 510(f)"), in an amount exceeding the maximum retention limit defined by 40 P.S. § 614 ("Section 614"). Plaintiffs allege in the Action that

Pennsylvania law mandates that all participating policies contain language requiring the distribution of all divisible surplus, which they allege includes all surplus over the limit established by Section 614. Plaintiffs in the Action allege claims against Penn Mutual for breach of contract, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unjust enrichment, and money had and received.

B.  Penn Mutual denies the allegations made by Plaintiffs in the Action and asserts that it has at all times complied with Pennsylvania law, including Section 614, and with all terms of the life insurance policies issued to Plaintiffs and to members of the putative class, and has at all times honored all obligations to them. Penn Mutual contends, among other things, that: (1) there is no connection between Section 614 and Section 510(f); (2) Section 614 has been impliedly repealed; (3) Penn Mutual's retained surplus at all times has complied with Section 614 and has been below the Section 614 limit; and (4) in the event Penn Mutual's surplus could be found to exceed the Section 614 limit, the Company would be entitled to exemptive relief allowing it to maintain surplus exceeding the statutory cap.

C.  On April 11, 2014, in response to Penn Mutual's motion to dismiss, the Court in the Action abstained from exercising jurisdiction and stayed the Action pending a preliminary determination of underlying regulatory issues by the Pennsylvania Insurance Department (the "Department").

D.  Plaintiffs filed a formal administrative complaint with the Department on February 20, 2015. Among other things, Plaintiffs asked the Department to determine that Penn Mutual's surplus exceeded the limit established by Section 614 in various years. Penn Mutual filed its Answer and New Matter on March 31, 2015, in which it denied Plaintiffs' assertions and sought a declaratory order from the Department regarding the authority and interpretation of Section 614 and determining that Penn Mutual has at all

times complied with any applicable provisions of Section 614. Penn Mutual also asked that, to the extent the Department determined that Penn Mutual is subject to Section 614, the Department should exercise discretion under the statute to permit Penn Mutual to accumulate and maintain surplus in excess of the Section 614 limit. Plaintiffs filed their Reply to New Matters Raised by Penn Mutual on April 22, 2015, in which Plaintiffs responded to the assertions made in Penn Mutual's Answer and New Matter.

E.     The Parties have vigorously litigated issues relating to Plaintiffs' claims in the Court and before the Department, proceeding through discovery towards an administrative hearing scheduled to commence on April 26, 2016. After substantial discovery and pre-hearing preparation, including the preparation and exchange of expert reports, Plaintiffs and Penn Mutual agreed to participate in a mediation in an effort to resolve both the Action and the pending administrative proceedings.

F.     The Parties accordingly engaged in arm's-length settlement discussions, leading to a formal mediation in Philadelphia, Pennsylvania on May 24 and 25, 2016, before the Hon. Diane M. Welsh (Ret.) of JAMS. Through these extensive and protracted settlement negotiations, Plaintiffs and Penn Mutual reached agreement on the terms and conditions of a proposed settlement of all claims asserted in the Action and in the administrative proceeding.

G.     The Court having by Order dated _____ previously (a) granted preliminary approval of the Settlement Agreement, (b) granted preliminary certification of the Settlement Class, and (c) preliminarily appointed Plaintiffs Daniel Harshbarger and Edith Harshbarger as Class Representatives and the law firms of Adkins Kelston & Zavez, P.C., Bonnett Fairbourn Friedman & Balint, P.C., Chavez & Gertler LLP, and Feinstein Doyle Payne & Kravec, LLC as Class Counsel; and

H.     the Court having conducted a Fairness Hearing on _____, 2016;

I.       the Court having considered all submissions made to it in connection with the proposed Settlement Agreement,

**IT IS ORDERED:**

1.       The Court finally certifies the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(1)(A) and (b)(2) for settlement purposes and appoints Plaintiffs as Class Representatives for the Settlement Class and Adkins Kelston & Zavez, P.C., Bonnett Fairbourn Friedman & Balint, P.C., Chavez & Gertler LLP, and Feinstein Doyle Payne & Kravec, LLC (collectively, "Class Counsel"), as counsel for the Settlement Class;

2.       The Court finds that the Class Settlement Notice Package and all other instruments provided to Settlement Class Members pursuant to the Settlement Agreement, and the notice methodology utilized to distribute such notice:

(a)       constituted the best practicable notice under the circumstances;

(b)       constituted notice that was reasonably calculated to apprise Settlement Class Members of the pendency of the Action and their right to object to the Settlement and to appear at the Fairness Hearing;

(c)       was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and

(d)       met all applicable requirements of the *Federal Rules of Civil Procedure* and the United States Constitution and its Amendments, including the Due Process Clause;

3.       The Court finds that Class Counsel and Plaintiffs adequately represented the Settlement Class for purposes of litigating the Action on their behalf and negotiating, entering into, and implementing the Settlement Agreement;

4.       The Court finds that it has personal jurisdiction over all Settlement Class

Members, that it has subject matter jurisdiction over the claims asserted in the Action and that venue is proper;

5. The Court finally approves the Settlement Agreement as fair, reasonable and adequate, and consistent and in compliance with the applicable provisions of the United States Constitution and the Federal Rules of Civil Procedure, as to, and in the best interests of, the Settlement Class;

6. The Court directs the Parties and their counsel to implement and consummate the Settlement Agreement according to its terms and provisions, including the provision of Settlement Relief to the Settlement Class as provided therein;

7. The Court directs Penn Mutual to declare, administer and pay the Terminal Dividends to Settlement Class Members who are Owners or Beneficiaries of In Force Settlement Policies, and to establish and distribute the Terminal Dividends to Settlement Class Members who are Owners or Beneficiaries of Terminated Settlement Policies, all in accordance with the terms of the Settlement Agreement;

8. The Court directs Penn Mutual to pay all costs of administration in accordance with the terms of the Settlement Agreement;

9. The Court authorizes and directs Penn Mutual to perform all other acts as appropriate and necessary to implement the Settlement Agreement;

10. The Court declares the Settlement Agreement to be binding on, and have res judicata and preclusive effect in all pending and future lawsuits, arbitrations, administrative proceedings, remediation proceedings, regulatory proceedings or other legal proceedings (as set forth more fully in the Release provisions of the Settlement Agreement) maintained by or on behalf of Plaintiffs and all other Settlement Class Members, as well as their heirs, executors, personal representatives, conservators and

administrators, predecessors, successors and assigns, that are encompassed by the Settlement Agreement or the Release provisions contained therein;

11.     The Court approves the following Release provisions set forth in the Settlement Agreement, with terms as defined below or in the Settlement Agreement:

**<u>Definitions</u>:**

The term "Releasees" means Penn Mutual and its past, present and future parents, divisions, subsidiaries, affiliates, predecessors, successors and assigns (which shall include any person or entity that controls, is controlled by, or is under common control with any such party), and each of their respective past, present and future officers, directors, trustees, employees, representatives, agents, appointed agents, attorneys, successors and assigns, or any of them, including any person or entity acting on behalf or direction of any of them.

The term "Released Transactions" means the events, transactions or circumstances concerning the Settlement Policies that were alleged or asserted, or that could have been alleged or asserted in the Action based on the same factual predicate as the claims alleged in the Action (including without limitation matters asserted in the pleadings filed in the Action and in the administrative proceeding, the motions papers, submissions and other filings of the Parties, or in Plaintiffs' expert reports), including specifically:  (a) Penn Mutual's payment of dividends, or alleged failure to pay adequate or legally required dividends, on any of the Settlement Policies; (b) Penn Mutual's compliance or alleged non-compliance with the provisions of Section 614 and/or Section 510(f); (c) Penn Mutual's compliance or alleged non-compliance with any policy provisions contained in or otherwise incorporated in the Settlement Policies in accordance with Section 510(f); and (d)

Penn Mutual's computation of its safety fund amount under Section 614 so long as it is consistent with the Consent Order.

**Release and Waiver:**

Plaintiffs and the Settlement Class Members, on behalf of themselves, their spouses, heirs, assigns, beneficiaries, executors, administrators, trusts, trustees, predecessors and successors, hereby expressly release and discharge the Releasees from any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, whether known or unknown, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, either as a class claim or as an individual claim, or before any court, arbitration panel or regulatory or administrative agency.

Plaintiffs and the Settlement Class Members hereby expressly further agree that they shall not now or hereafter institute, maintain, or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class, or on behalf of any other person or entity any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, including, without limitation, claims for mental anguish and/or punitive or exemplary damages, whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions.

Nothing in this Release shall be deemed to alter Plaintiffs' or the Settlement Class Members' contractual rights under the Settlement Policies except as expressly specified in this Settlement.

Plaintiffs and the Settlement Class Members expressly understand that §1542 of the Civil Code of the State of California provides that

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS [OR HER] FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM [OR HER] MUST HAVE MATERIALLY AFFECTED HIS [OR HER] SETTLEMENT WITH THE DEBTOR.

To the extent that California or other similar federal or state law may apply (because of or notwithstanding the choice of law provisions in this Agreement), Plaintiffs and the Settlement Class Members hereby agree that the provisions of §1542 and all such similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Settlement Class Members based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, and Plaintiffs and the Settlement Class Members agree that this is an essential term of this Agreement.

In connection with this Release, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, facts in addition to or different from those which they now know or believe to be true, or losses that may exist or have been underestimated based upon, arising out of, relating to, and/or in conjunction with the Released Transactions herein. Plaintiffs and the Settlement Class Members nevertheless agree that this Release fully, finally, and forever shall settle, discharge

and release all liability based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, which exists, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding).

As of the Final Settlement Date, each of the Releasees shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Class Counsel, Plaintiffs, and each and all of the Settlement Class Members, from all claims (including, without limitation, unknown claims) based upon, arising out of, relating to, and/or in conjunction with the Released Transactions and the institution, prosecution, assertion, settlement, or resolution of the Action and administrative proceeding before the Department.

Without limiting the foregoing, nothing in this Release shall release, preclude, or limit any claim or action to enforce the terms of this Agreement.

12. The Court authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, or expansions of the Settlement Agreement and all exhibits attached thereto which (a) are consistent with this Final Order, and (b) do not limit the rights of Settlement Class Members and any Person entitled to Settlement Relief under the Settlement Agreement;

13. The Court requires that any appeal of the Final Order or Judgment, or any part thereof, be preceded by (a) an objection to the Settlement Agreement which is rejected by the Court, in whole or in part, (b) a request for a stay of implementation of the Settlement Agreement, and (c) the posting of an appropriate bond; absent satisfaction of all three of these requirements, the Court authorizes Penn Mutual to proceed with implementation of the Settlement Agreement, even if such implementation would moot the appeal;

14.     The Court awards to each of the Class Representatives Service Awards in the amount of $_____, for the reasons set forth by separate order of the Court and incorporated herein by reference;

15.     The Court approves Penn Mutual's payment of Class Counsel Attorneys' Fees in the amount of $_____and Class Counsel Expenses in the amount of $_____ for the reasons set forth by separate order of the Court and incorporated herein by reference;

16.     The Court dismisses the Action on the merits and with prejudice and without an award of attorneys' fees and costs other than as approved by the Court as provided for in the Settlement Agreement;

17.     Without affecting the finality of the Final Order and Judgment, the Court retains jurisdiction as to all matters relating to the Action and Settlement Agreement, including modification, administration, consummation, enforcement, interpretation, and effectuation of the Settlement Agreement and the Final Order, including without limitation the Settlement Notice, Settlement Relief (and the amount thereof), the amount and/or allocation of Class Counsel's Attorneys' Fees and Class Counsel's Expenses among Class Counsel, any remand after appeal or denial of any appellate challenge, any collateral challenge to the Settlement, and any aspect of or collateral challenge to Class Counsel's or Plaintiffs' representation of the Class, and for any other necessary or appropriate purpose; provided however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under the Settlement Agreement which are not in conflict with the Final Order and Judgment.

**BY THE COURT:**

_____
**Hon. Nitza I. Quiñones Alejandro**

**EXHIBIT 5 – Consent order**

# BEFORE THE INSURANCE COMMISSIONER
## OF THE
## COMMONWEALTH OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL J. AND EDITH M. HARSHBARGER,** | : Pursuant to the Insurance Company Law |
| COMPLAINANTS, | : of 1921, Act of May 17, 1921, P.L. 682, |
| | : *as amended*, 40 P.S. §§ 361 *et. seq*. and |
| | : the referral by the United States District |
| v. | : Court for the Eastern District of |
| | : Pennsylvania |
| PENNSYLVANIA MUTUAL LIFE | : |
| INSURANCE COMPANY, | : Formal Complaint |
| RESPONDENT. | : Docket No. **FC15-03-002** |
| | : |
| | : E.D. Pa. Docket No. 12-6172 |

## <u>CONSENT ORDER</u>

And now, this _____ day of _____, 2016, this Order is hereby issued by the Pennsylvania Insurance Commissioner ("Commissioner") pursuant to the statutes cited above and in connection with the matter captioned above.

Complainants Daniel J. and Edith M. Harshbarger ("Complainants") and Respondent The Penn Mutual Life Insurance Company (erroneously named in the caption as the "Pennsylvania Mutual Life Insurance Company"; hereinafter "Penn Mutual") (hereinafter collectively referred to as "the Parties") hereby agree that this Consent Order, and the Findings of Fact and Conclusions of Law contained herein, shall have the full force and effect of an Order duly entered in accordance with the adjudicatory procedures set forth in the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 31.1 *et seq.*, the Special Rules of Administrative Practice and Procedure, 31 Pa. Code § 56.1, *et seq.*, or other applicable law.

<u>**FINDINGS OF FACT**</u>

**I.      Background of the Parties**

1.      Penn Mutual is a Pennsylvania-domiciled mutual life insurance company. (*See* Complainants' Responses to Penn Mutual's First Set of Requests for Admission, at 4, RFA 1.)

2.      Penn Mutual is the only remaining mutual life insurance company domiciled in Pennsylvania.

3.      Complainants are Pennsylvania residents and holders of participating life insurance policies issued by Penn Mutual.  (*See* Complainants' Policies:  Harshbarger 000001; Harshbarger 000016; Harshbarger 000034; Harshbarger 000056; Harshbarger 000077.)

**II.     Relevant Statutory Provisions**

   **A.      <u>Section 614</u>**

4.      Section 614 was first enacted in 1911.  (*See* Act No. 226, P.L. 581 § 23 (1911); *see also* Answer and New Matter, ¶ 39; Complainants' Reply to New Matters, ¶ 39.)

5.      Section 614 was subsequently re-enacted as part of the Insurance Company Law of 1921 (the "Company Law").  (*See* 1921, May 17, P.L. 682, art. IV, § 429; *see also* Answer and New Matter, ¶ 39; Complainants' Reply to New Matters, ¶ 39.)

6.      Since its enactment, Section 614 has not been amended.  (*See* Answer and New Matter, ¶ 39; Complainants' Reply to New Matters, ¶ 39.)

     **B.**     <u>Section 510</u>

7.     40 P.S. § 510 ("Section 510") was first enacted in 1911. (*See* Act No. 226, P.L. 581 § 25 (1911).)

8.     Section 510 was subsequently re-enacted as part of the 1921 Company Law. (1921, May 17, P.L. 682, art. IV, § 410.)

**III.**   **"Surplus Notes"**

9.     "Surplus notes" are subordinated debt instruments that provide mutual insurers with a source of financing. (40 P.S. § 445.2.)

10.     Payment of principal or interest on a surplus note is subordinated to all other liabilities of the insurer. (40 P.S. § 445.2(e).)

11.     Subordination allows the insurer to list amounts owed on surplus notes "below the line" on the liability page of its financial statements.

12.     The debt owed on a surplus note is listed as part of the mutual insurer's surplus because the proceeds are available to pay "above the line" policy claims. (*See* 40 P.S. § 445.2(g) ("Principal or interest on a surplus note may not be recorded as a liability or an expense against the insurer except to the extent that payment has been approved by the Insurance Commissioner.").)

13.     The debt owed on a surplus note remains an obligation of the insurer to the noteholder (the lender), because surplus notes eventually need to be repaid to institutional investors.

## IV. The Penn Insurance and Annuity Company

14.     The Penn Insurance and Annuity Company ("PIA") is a Delaware-domiciled stock life insurance company.  (*See* Penn Mutual's Responses to Complainants' First Set of Requests for Admission at 7, RFA 8.)

15.     PIA is a wholly owned subsidiary of Penn Mutual.

16.     PIA has its own surplus, or "net worth," that supports the insurance policies PIA has written.

17.     Because PIA is wholly owned by Penn Mutual, however, its surplus is counted a second time as an asset on Penn Mutual's balance sheet (i.e., the value of PIA as an equity investment owned by Penn Mutual).  This "stacking" of insurance companies, which is commonplace in the insurance industry, causes PIA's surplus to support two different sets of insurance reserve liabilities—those of PIA and those of Penn Mutual.

## V. Penn Mutual's "Reserve Liabilities"

18.     Penn Mutual annually files with the Department an actuarial opinion on the reserves and actuarial items held in support of Penn Mutual's policies and contracts. (40 P.S. § 71(g)(2).)

19.     Penn Mutual's actuarial opinions identify certain liability rows of its annual statements as reserves, consistent with Department regulations.  (31 Pa. Code § 84b.5(e)(1).)

20.     Penn Mutual's actuarial opinion as of December 31, 2014, covered the reserves reflected in the following liability rows of Penn Mutual's 2014 Annual Statement:

- Row 1—Aggregate reserve for life contracts
- Row 2—Aggregate reserve for accident and health contracts
- Row 3—Liability for deposit-type contracts
- Row 4.1—Contract claims for life contracts
- Row 4.2—Contract claims for accident and health contracts
- Row 5—Policyholders' dividends due and unpaid
- Row 6—Provision for policyholders' dividends payable in following calendar year
- Row 9.4—Interest maintenance reserve
- Row 13—Transfers to Separate Accounts due or accrued
- Row 27—Liabilities from Separate Accounts statement

(*See* Actuarial Opinion as of December 31, 2014, PML_022234-37.)

21.    These liability rows are held in support of Penn Mutual's policies, contracts, and certificates and are reported in the actuarial opinion as reserve liabilities.

## CONCLUSIONS OF LAW

### I.    There Is No Private Right of Action to Enforce Section 614

22.    Enforcement of Section 614 is explicitly committed to the discretion of the Commissioner. There is no private right of action for an insured to enforce Section 614. (*See Lerro ex rel. Lerro v. Upper Darby Twp.*, 798 A.2d 817, 822 (Pa. Commw. Ct. 2002) (stating that "appellate courts have held that where the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals"); *United Servs. Auto. Ass'n v. Foster*, 783 F. Supp. 916, 922 (M.D. Pa. 1992) (stating that "the Pennsylvania Insurance Code does not create a private right of action or enforcement"); *Leach v. Nw. Mut. Ins. Co.*, 262 F. App'x 455, 459 (3d Cir. 2008).)

### VI.    Sections 510 and 614 Are Independent Statutes

#### A.    Section 614

23.    Section 614 permits "[a]ny mutual life insurance company, incorporated under the laws of this Commonwealth and transacting business therein," to "establish and

maintain, or, if already established, [to] continue to maintain, a surplus or safety fund to an amount not in excess of ten per centum of its reserve, or one hundred thousand dollars, whichever is greater, and the excess of the market value of its securities over their book value." (40 P.S. § 614.)

24. Section 614 applies only to domestic Pennsylvania mutual life insurers. (*Id.*)

25. The Pennsylvania Insurance Code does not define "surplus or safety fund."

26. Section 614 does not incorporate the term "divisible surplus." Section 614 does not refer to or incorporate by reference 40 P.S. § 510(f), which does incorporate the term "divisible surplus." (40 P.S. §§ 510(f), 614.)

27. An insurer's "surplus" is an accounting and regulatory concept defined as (i) the excess of an insurer's assets, over (ii) the insurer's liabilities, where both assets and liabilities are measured according to statutory accounting principles. (*See* Expert Report of Steven Schreiber, at 22.)

**B.** Section 510

28. Section 510 sets forth "uniform policy provisions" that must be included within life or endowment insurance policies delivered in Pennsylvania. (*See* 40 P.S. § 510.)

29. Section 510 applies to all life insurance companies issuing life policies in Pennsylvania. (*Id.*)

30. Subsection (f) of Section 510 provides that participating life insurance policies must include "[a] provision that the policy shall participate in the surplus of the company, and that, beginning not later than the end of the third policy year, the company

will annually determine the portion of the divisible surplus accruing on the policy. . . ." (*Id.*)

31.     Complainants' policies comply with the provisions of Section 510, and include the language required by Section 510(f).  (*See* Insurance Complaint, ¶ 13.)

32.     The Pennsylvania Insurance Code does not define "divisible surplus."

33.     Section 510 does not create a right to a particular amount of dividend or a right to a dividend from any source other than "divisible surplus."

34.     To the extent Section 510 does create a right to a dividend from divisible surplus, it does so only to the extent that such "divisible surplus" has "accru[ed] on the policy."  (*See* 40 P.S. § 510(f).)

35.     Section 510(f) does not refer to a "surplus or safety fund," nor does it refer to or incorporate by reference Section 614.  (40 P.S. § 510(f).)

**C.**     Pennsylvania Law vs. New York and Massachusetts Law

36.     Sections 510 and 614 in Pennsylvania materially differ from statutes governing the distribution of dividends in New York and Massachusetts.

37.     In 1906, the Uniform Laws Commission (or "Committee of Fifteen") recommended numerous life insurance reforms, including a limit on surplus held on participating life insurance policies (safety fund statutes).

38.     Versions of safety fund statutes adopted in New York and Massachusetts, explicitly required a mandatory distribution of all surplus in excess of a "contingency reserve," with that amount being subject to a "hard cap."  (*See, e.g.,* M.G.L. c.175, §§ 140-141, N.Y. Ins. Law §§ 4219, 4231).

39.     In contrast, the statute adopted by Pennsylvania in 1911 and codified as Section 510 provided only that participating life policies include a provision for

distributions of "divisible surplus," with no reference to a surplus cap or contingency reserve limit.  (*See id*.)

40.     New York's statute on divisible surplus states that "every domestic life insurance company shall ascertain and distribute annually ... the proportion of any surplus accruing upon every participating insurance policy ... [a]fter setting aside from such surplus … such sums as may be deemed advisable for the accumulation of a ***surplus not in excess of the maximum prescribed in this chapter***, every such company shall thereupon apportion the remainder of such earnings…."  (N.Y. Ins. Law § 4231(a)(1), (3) (emphasis added).)

41.     The "surplus not in excess of the maximum prescribed in this chapter" refers to N.Y. Ins. Law § 4219, which provides limitations on accumulation of surplus of life insurance companies.

42.     Massachusetts' statute on divisible surplus states that "every domestic life company … shall provide in every participating policy … that the proportion of the divisible surplus of the company contributed by said policy shall be ascertained and distributed annually … Every such company shall on December thirty-first of each year or as soon thereafter as practicable … and ***providing also for a contingency reserve not in excess of the limit prescribed in the following section***…."  (Mass. Gen. Laws ch. 175 § 140.)

43.     The "contingency reserve not in excess of the limit prescribed in the following section" refers to Mass. Gen. Laws ch. 175 § 141, which provides limitations on accumulation of surplus of life insurance companies.

44.     Unlike the statutes in New York and Massachusetts, which explicitly link a mutual life insurance company's duty to annually ascertain divisible surplus and the distribution of such surplus to the surplus permitted to be retained under each state's safety fund statute, no such explicit connection exists in Section 614 with regard to Section 510(f).

45.     "Divisible surplus" in Section 510(f) is not equivalent to funds in excess of the "surplus or safety fund" referenced in Section 614.

46.     Section 510 applies to all life insurance companies that issue life policies in Pennsylvania, whether those companies are Pennsylvania domestic companies or companies from other states licensed to do business in Pennsylvania, and whether those companies are stock or mutual insurers.  Section 614 applies only to domestic Pennsylvania mutual life insurers.

47.     Accordingly, Sections 614 and 510 are independent statutes.  (*See Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1155 (Pa. 2003) (noting that the court's "role in statutory interpretation is to give effect to the intent of the General Assembly" in matters of statutory interpretation) (citations omitted).)

## VII.    Surplus Notes Must Be Deducted from Section 614 Surplus

48.     The Pennsylvania Insurance Code does not define what is included in the "surplus" that may be maintained pursuant to Section 614, nor does Section 614 define what is included in the "reserve" that is used to calculate the "surplus" that may be maintained pursuant to Section 614.

49.     The current balance, including accrued interest, of an insurer's "surplus notes," must be deducted from the "surplus" balance used in the ratio of "surplus" to "reserves" in a Section 614 calculation.

50. The debt owed on a surplus note is listed as part of the mutual insurer's surplus. The debt, however, remains an obligation of the insurer to the noteholder.

51. Surplus notes have the qualities of debt and few, if any, of the qualities typically associated with the common understanding of the term "surplus," and should accordingly be excluded from any calculation of "surplus" under Section 614.

## VIII. The Section 614 Reserve Includes Liabilities of Wholly Owned Life Insurance Subsidiaries

52. If a Pennsylvania domestic mutual life insurer subject to Section 614 has a wholly owned life insurance subsidiary, the liabilities of the subsidiary that are shown on its then-current statutory statement shall be included in the reserves of the Pennsylvania domestic mutual life insurer in calculating whether the insurer's surplus exceeds the limit specified in Section 614.

53. Because PIA's surplus is counted as an asset on both Penn Mutual's and PIA's balance sheets, an appropriate adjustment must be made in calculating Penn Mutual's reserve under Section 614 to avoid double-counting the surplus.

54. Accordingly, for purposes of a Section 614 calculation, Penn Mutual's surplus should be calculated to adjust for the surplus of PIA by including PIA's liabilities in Penn Mutual's "reserve" to avoid counting the surplus of PIA a second time as surplus on Penn Mutual's balance sheet.

## IX. The Section 614 Reserve Includes "Reserve Liabilities" as Defined by Section 71 of the Insurance Department Act of 1921

55. Each year, the Commissioner must value "the reserve liabilities (hereinafter called reserves or net value), as of the thirty-first day of December of the preceding year, for all outstanding life insurance policies and annuity and pure

endowment contracts" of every life insurance company doing business in Pennsylvania. (40 P.S. § 71(a).)

56.     The "aggregate reserves or net value so ascertained of the policies and contracts of any such life insurance company shall be deemed its reserve liability. . . ." (40 P.S. § 71(d).)

57.     Every life insurer doing business in Pennsylvania must annually file with the Department an "opinion of a qualified actuary" attesting that "the reserves and related actuarial items held in support of the policies, contracts and certificates specified by the Insurance Commissioner by regulation are computed appropriately," based on assumptions satisfying contractual provisions, and consistent with prior reports and Pennsylvania law.  (40 P.S. § 71(g)(2).)

58.     The annual filing must include "an opinion of the same qualified actuary as to whether the reserves and related actuarial items held in support of the policies, contracts and certificates specified by the Insurance Commissioner by regulation … make adequate provision for the company or society's obligations under the policies."  (40 P.S. § 71(g)(3).)

59.     The Commissioner must "define the specifics of this [opinion of a qualified actuary] and add any other items deemed to be necessary to its scope" by regulation.  (40 P.S. § 71(g)(2).)

60.     The Commissioner specified by regulation that a life insurer's "reserves" includes "aggregate reserve for insurance and annuity contracts, liability for deposit-type contracts, liability for contract claims and equivalent items in the separate account statement or statements [of the insurer]."  (31 Pa. Code § 84b.5(e)(1).)

61.     Therefore, the reserves reflected in the liability rows of Penn Mutual's Annual Statement as set forth above should be included in the "reserve" denominator for the Section 614 calculation.

62.     Specifically, in accordance with 31 Pa. Code § 84b.5(e)(1), the "reserve" under Section 614 should include all of the following rows of the liability page of the balance sheet from the NAIC's statutory annual statement:

- Row 1—Aggregate reserve for life contracts
- Row 2—Aggregate reserve for accident and health contracts
- Row 3—Liability for deposit-type contracts
- Row 4.1—Contract claims for life contracts
- Row 4.2—Contract claims for accident and health contracts
- Row 5—Policyholders' dividends due and unpaid
- Row 6—Provision for policyholders' dividends payable in following calendar year
- Row 9 and its subparts—Contract Liabilities Not Included Elsewhere
- Row 13—Transfers to Separate Accounts due or accrued
- Row 27—Liabilities from Separate Accounts statement

All of these liabilities are held in support of the insurer's policies, contracts, and certificates reported in the actuarial opinion as reserve liabilities. Therefore, they should be included in the "reserve" denominator for purposes of Section 614.

## <u>CONCLUSION</u>

63. The terms of the settlement of this matter, as set forth in the Stipulation of Settlement and the exhibits attached thereto, which were agreed to by the Parties on October 11, 2016, are hereby approved by the Commissioner. *See* Stipulation of Settlement, Exhibit B to the Joint Motion for Entry of Consent Order (hereinafter referred to as the "Settlement Agreement").

64. The Commissioner determines that the Settlement Agreement is consistent with and made pursuant to the above Findings of Fact and Conclusions of Law.

65. Penn Mutual's proposal to account for the Terminal Dividends in accordance with SSAP 51 - Life Contracts is approved.

66. The requirement that Penn Mutual suspend and defer the payment of Terminal Dividends if Penn Mutual's risk based capital is less than an amount equal to 500% of its authorized control level risk based capital, and that payment of such deferred Terminal Dividends shall resume when, and shall continue for so long as, this threshold is equaled or exceeded, is hereby approved. *See* Settlement Agreement, Section IV, F.

67. In consideration for payment by Penn Mutual under the Settlement Agreement and solely for the purpose of effectuating the settlement, Complainants consent to this Consent Order.

68. Penn Mutual may offer and use the Consent Order as an administrative determination, as evidence for the purpose of establishing collateral estoppel or claim preclusion in any future judicial or administrative proceeding; provided, however, that no

person or entity who is not a party to the class action may offer or use the Consent Order for any such purpose.

69. This Consent Order shall be made final upon execution by the Commissioner and once final, this Consent Order may not be amended without written consent of all Parties and as ordered by the Commissioner. The Parties agree to be bound by the Consent Order and, unless mutually agreed by the Parties, will not seek reconsideration and/or appeal of this Consent Order.

70. The above-captioned administrative proceedings currently pending before the Department are hereby placed in suspense pending final approval of the class settlement in the Federal Court action. The administrative proceedings shall be terminated and dismissed after entry of both this Consent Order and a Final Order and Judgment approving the Settlement Agreement between the Parties in the Federal Court action (E.D. Pa. Docket No. 12-6172) by motion of the Parties.

71. This order is effective immediately.

**DATED:** [*] [*], 2016                    **RESPECTFULLY SUBMITTED,**

DANIEL J. AND EDITH M.                    THE PENN MUTUAL LIFE
HARSHBARGER                               INSURANCE COMPANY

By Their Attorneys:                        By Its Attorneys:

_____                   _____
Jason B. Adkins (*pro hac vice*)          Jay H. Calvert, Jr. (PA ID 04377)
John Peter Zavez (*pro hac vice*)         John P. Lavelle, Jr. (PA ID 54279)
**ADKINS, KELSTON & ZAVEZ, P.C.**         Joseph B. G. Fay (PA ID 33480)
90 Canal Street, 5th Floor                David L. Harbaugh (PA ID 32525)
Boston, MA  02114                         **MORGAN, LEWIS & BOCKIUS LLP**
(617) 367-1040 (Phone)                    1701 Market Street
(617) 742-8280 (Fax)                      Philadelphia, PA 19103
                                          (215) 963-5000 (Phone)
                                          (215) 963-5001 (Fax)

Andrew S. Friedman (*pro hac vice*)
Francis J. Balint, Jr. (*pro hac vice*)
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, AZ  85016
(602) 274-1100

Mark A. Chavez (*pro hac vice*)
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA  94941
(415) 381-5599

Joseph N. Kravec, Jr., (PA ID 68992)
**FEINSTEIN DOYLE PAYNE &
KRAVEC, LLC**
429 Fourth Avenue, Suite 1300
Pittsburgh, PA  15219
(412) 281-8400

APPROVED AND SO ORDERED:

_____

TERESA D. MILLER
Insurance Commissioner

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing documents upon all parties of record in this proceeding in accordance with the requirements of § 33.32 (relating to service by a participant).

Dated this ___ day of [*], 2016.

_____

*Counsel for The Penn Mutual*
*Life Insurance Company*