IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA

<table>
<tr><td>DANIEL J. HARSHBARGER AND EDITH M.<br>HARSHBARGER, Individually and on Behalf<br>of all Persons Similarly Situated,<br><br>                Plaintiffs,<br><br>v.<br><br>THE PENN MUTUAL LIFE INSURANCE<br>COMPANY,<br><br>                Defendant.<br>_____</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Civil Action No. 2:12-cv-06172-NIQA</td></tr>
</table>

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT
AGREEMENT, PRELIMINARY CERTIFICATION OF THE SETTLEMENT
<u>CLASS AND APPOINTMENT OF CLASS COUNSEL</u>**

Jason B. Adkins (admitted pro hac vice)
ADKINS, KELSTON & ZAVEZ, P.C.
90 Canal Street, 5th Floor
Boston, MA 02114
Phone (617) 367-1040

Andrew S. Friedman (admitted pro hac vice)
Francis J. Balint, Jr. (admitted pro hac vice)
BONNETT, FAIRBOURN, FRIEDMAN &
  BALINT, P.C.
2325 East Camelback Road, #300
Phoenix, AZ 85016
Phone: (602) 274-1100

Mark A. Chavez (admitted pro hac vice)
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA 94941
Phone: (415) 381-5599

Joseph N. Kravec, Jr., (PA ID 68992)
FEINSTEIN DOYLE PAYNE &
  KRAVEC, LLC
429 Fourth Avenue, Suite 1300
Pittsburgh, PA 15219
Phone: (412) 281-8400

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.   PROCEDURAL BACKGROUND ................................................................... 1

II.  SUMMARY OF THE PUTATIVE CLASS CLAIMS AND THE DEFENSES ................... 3

   A.  Plaintiffs' Alleged Claims................................................................. 3

   B.  Penn Mutual's Defenses ................................................................. 4

III. THE PROPOSED SETTLEMENT................................................................. 4

IV.  THE PROPOSED SETTLEMENT CLASS ..................................................... 6

V.   LEGAL ARGUMENT ......................................................................... 7

   A.  The Proposed Settlement Warrants Preliminary Approval................................. 7

   B.  The Proposed Settlement Class Warrants Preliminary Certification............................. 10

      1.  The Requirements of Rule 23(a) Are Met..................................................... 10

         a.  Numerosity ........................................................................ 11

         b.  Commonality........................................................................ 11

         c.  Typicality .......................................................................... 12

         d.  Adequate Representation............................................................. 12

      2.  The Requirements of Rule 23(b)(1)(A) and 23(b)(2) Are Met ..................................... 13

   C.  Class Counsel Should Be Preliminarily Appointed to Represent the Proposed Settlement
       Class .................................................................................... 16

   D.  The Proposed Class Notice Program Is More than Adequate........................................... 16

VI.  PROPOSED TIMETABLE ..................................................................... 18

VII. CONCLUSION.............................................................................. 19

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Coast Professional Inc.*, No. 2:12-121461-NIQA, 2016 WL 861329 ..................... 8

*Alexander v. Coast Professional, Inc.*, No. 2:12-cv-12-1461-NIQA [ECF 92]
   (E.D. Pa. August 10, 2015) ............................................................................... 16, 18

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ................................... 11, 13

*Am. Sales Co. v. SmithKline Beecham Corp.*, 274 F.R.D. 127 (E.D. Pa. 2010) ......................... 17

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ..................................................... 11, 15

*Blandina v. Midland Funding, LLC*, 2:13-cv-1179-NIQA [ECF 88] (E.D. Pa. Mar. 9, 2016) ...... 9

*Bourlas v. Davis Law Associates*, 237 F.R.D. 345 (E.D.N.Y. 2006) ........................................ 18

*Cumberland Farms, Inc. v. Browning Ferris Ind.*, 120 F.R.D. 642 (E.D. Pa. 1988) ................. 11

*Est. of Gardner v. Contl. Cas. Co.*, 3:13CV1918(JBA), 2016 WL 806823
   (D. Conn. Mar. 1, 2016) ............................................................................................. 15

*Gates v. Rohm and Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ............................................. 9, 10

*Goldstein v. Savings Bank Life Insurance Co.*, 2004 WL 5783465 (Mass. Super. 2004) ............ 13

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir.1988) ........................................................................ 15

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807
   (E.D. Pa. May 11, 2004) ......................................................................................... 9

*In re Budeprion XL Mktg. & Sales Litig.*, 09-MD-2107, 2012 WL 2527021
   (E.D. Pa. July 2, 2012) ............................................................................................ 15

*In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468 (E.D. Pa. 2010) ... 10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768
   (3d Cir. 1995) ......................................................................................... 7, 10, 13

*In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000) ............................................. 14

*In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ........................... 9

*In re National Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191 (E.D. Pa. 2014)..................................................................................................... 7

*In re Nat'l Football League Players Concussion Injury Litig.*, No. 15-2206, 2016 WL 1552205 (3d Cir. Apr. 18, 2016)....................................................................... 11, 12, 13, 16

*In re Prudential Insurance Co. of America Sales Practices Litig.*, 177 F.R.D. 216 (D.N.J. 1997)................................................................................................... 17

*In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585 (3d Cir. 2009) ............................ 14

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002)........................................ 7

*In re: Shop-Vac Mktg. and Sales Practices Litig.*, 2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016) .......................................................................................... 9, 18

*Klingensmith v. BP Products North America, Inc.*, 2008 WL 4360965 (W.D. Pa. Sept. 24, 2008) ...................................................................................... 7

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)................................................ 10

*Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007) ........................................ 7, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...................................... 16, 17

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001)............... 13

*Parks v. Portnoff Law Assocs.*, 243 F.Supp.2d 244 (E.D.Pa.2003) .............................................. 17

*Penn Mutual Life Ins. Co. v. Lederer*, 252 U.S. 523 (1920)........................................................... 3

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292 (M.D. Pa. 1995)............................. 9

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013).................................................... 11, 12

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)...................................................................... 11

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) (2012) (en banc)........................ 15

*Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) .......................... 13

*Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................................... 11, 14

*Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D. Pa. 1979) ......................................... 11

iii

## Statutes

40 P.S. § 510(f) ............................................................................... 2, 3, 4, 8

40 P.S. § 614 ....................................................................................... *passim*

40 P.S. § 1171.5 ......................................................................................... 14

## Rules

Fed. R. Civ. P. 23 ........................................................................................ 1

Fed. R. Civ. P. 23(a) ............................................................................ *passim*

Fed. R. Civ. P. 23(b) ............................................................................ *passim*

Fed. R. Civ. P. 23(c) ............................................................................... 17, 18

Fed. R. Civ. P. 23(e) ................................................................................. 1, 7

Fed. R. Civ. P. 23(g) ............................................................................... 1, 16

## Treatises

Manual for Complex Litigation (Fourth), § 21.222 (2004) ............................ 6

Manual for Complex Litigation (Fourth), § 21.273 ................................... 16

Manual for Complex Litigation (Fourth), §21.632 ....................................... 7

Newberg on Class Actions § 8:15 (5th ed. 2014) ...................................... 17

Plaintiffs Daniel J. Harshbarger and Edith M. Harshbarger ("Plaintiffs" or "the Harshbargers") and Defendant The Penn Mutual Life Insurance Company ("Penn Mutual") have reached a proposed class settlement ("the Proposed Settlement") resolving all claims alleged in the above-captioned action. The Proposed Settlement, if approved, will resolve complex insurance issues and afford $110 million in relief to thousands of Penn Mutual policyholders. The proposed settlement has been evaluated and contingently approved by the Pennsylvania Insurance Commissioner in proceedings before the Pennsylvania Department of Insurance ("the Department"). The Department's approval will become final, and the regulatory proceedings will be terminated and dismissed, upon final approval of the proposed class settlement by this Court.

Pursuant to Rule 23, *Federal Rule of Civil Procedure,* Plaintiffs now respectfully move the Court for preliminary approval of the Proposed Settlement, preliminary certification of the Proposed Settlement Class and the appointment of Class Counsel for the Proposed Settlement Class. As shown below, the Proposed Settlement satisfies all the prerequisites for preliminary approval under Rule 23(e), Plaintiffs satisfy all the prerequisites for preliminary certification of the Proposed Settlement Class under Rule 23(a) and (b), and Class Counsel satisfy all the prerequisites under Rule 23(g).

## I.    PROCEDURAL BACKGROUND

The Harshbargers own participating ("par") whole life insurance policies issued by Penn Mutual. On October 12, 2012, the Harshbargers filed suit in this Court against Penn Mutual, alleging Penn Mutual had breached its obligations to its par policyholders by retaining surplus due to them ("divisible surplus") in an amount exceeding the maximum retention limit permitted by 40 P.S. § 614 ("Section 614" or "the Safety Fund Law"). [ECF 1] Under Pennsylvania law, all participating policies delivered in Pennsylvania must contain language providing that the policies will share in the insurer's divisible surplus, which Plaintiffs alleged includes all surplus over the limit established by Section 614. The Harshbargers therefore asserted class claims against Penn Mutual for breach of contract, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unjust enrichment and money had and received.

Concluding that Plaintiffs' claims raised complex regulatory issues, the Court on April 11, 2014, abstained from exercising jurisdiction and stayed these class action proceedings pending a preliminary determination of those issues by the Department. [ECF 33 & 34] Plaintiffs accordingly filed a complaint with the Department, and proceeded through discovery towards an administrative hearing. After substantial discovery and pre-hearing preparation, including the preparation and exchange of expert reports, Plaintiffs and Penn Mutual agreed to mediation in an attempt to resolve both the pending administrative proceedings and this stayed class action. [Declaration of Jason B. Adkins in Support of Plaintiffs' Motion for Preliminary Approval, etc. ("Adkins Decl.") at ¶ 5.] Following two days of mediation before retired U.S. District Court Magistrate Judge Diane Welsh of JAMS, the parties reached a compromise resolution of both the class claims and the administrative proceedings. *Id*.

The Proposed Settlement, which is memorialized by the Stipulation of Settlement[1] executed October 11, 2016 [ECF 47] ("SOS"), is expressly conditioned upon entry by the Department of a Consent Order ("the Consent Order") addressing the administrative interpretation and application of the operative insurance statutes, 40 P.S. §§ 510(f) and 614. SOS, Section XII. The Department entered the Consent Order on April 18, 2017 (submitted herewith as Exhibit 1). The Consent Order is expressly conditioned on entry of a Final Order and Judgment by this Court approving the Proposed Class Settlement. *Id.* The administrative proceedings will be terminated and dismissed upon entry of the Final Order and Judgment by this Court. *Id.*; Adkins Decl. at ¶ 6.

Accordingly, Plaintiffs now ask the Court to commence the class settlement approval process by preliminarily approving the Proposed Settlement, preliminarily certifying a class of Penn Mutual policyholders under Fed. R. Civ. P. 23(b)(1) and/or (b)(2) and appointing Class Counsel, so that notice and an opportunity to be heard on the fairness, adequacy and reasonableness of the Proposed Settlement may be given to the members of the Proposed

---

[1] Capitalized terms in this memorandum have the same meaning as those terms are defined in the SOS.

Settlement Class.

## II.  SUMMARY OF THE PUTATIVE CLASS CLAIMS AND THE DEFENSES

### A.  Plaintiffs' Alleged Claims

Plaintiffs allege that the participating policyholders of a mutual life insurance company have the fundamental right to share in the profits of the insurer and that the payment of dividends by a mutual insurer "are, in a sense, a repayment of that part of the premium previously paid which experience has proved was in excess of the amount which had been assumed would be required to meet the policy obligations (ordinarily termed losses) or the legal reserve and the expense of conducting the business."  *Penn Mutual Life Ins. Co. v. Lederer*, 252 U.S. 523, 525 (1920). Plaintiffs also allege that in Pennsylvania it is a fundamental right of the par policyholders to receive the amount of surplus that exceeds the policy reserves as codified by Section 614, the Safety Fund Law, and 40 P.S. § 510(f) ("Section 510(f)"). These statutory protections were first enacted in Pennsylvania in 1911, and readopted one year after the Supreme Court's decision in *Penn Mutual v. Lederer*.

Plaintiffs assert that Section 614 requires that all surplus must be returned to the par policyholders except for a "safety fund" equal to the greater of $100,000 or 10% of the company's policy "reserve."  40 P.S. § 614. Section 614 states in pertinent part:

> Any mutual life insurance company, incorporated under the laws of this Commonwealth and transacting business therein, may establish and maintain, or, if already established, may continue to maintain, a surplus or safety fund to an amount not in excess of ten per centum of its reserve, or one hundred thousand dollars, whichever is greater, and the excess of the market value of its securities over their book value.

*Id.* (emphasis added).

Plaintiffs' Complaint alleges that Section 510(f) implements the directive of Section 614 by requiring all Pennsylvania-domiciled mutual life insurance companies to (a) include in each participating policy a provision confirming that the par policyholder "shall participate in the surplus of the company" and (b) "annually determine the portion of the divisible surplus accruing

3

on the policy," in which the par policyholder has "the right to have [a] dividend arising from such participation paid in cash." 40 P.S. § 510(f). Plaintiffs contend that Penn Mutual has retained surplus exceeding the Safety Fund limit established by Section 614.

### B. Penn Mutual's Defenses

After succeeding with its primary jurisdiction argument, Penn Mutual raised numerous defenses in the administrative proceedings before the Department. Penn Mutual contends, among other things, that: (a) there is no connection between Section 614 and Section 510(f); (b) Section 614 has been impliedly repealed through subsequent legislation and non-enforcement by the Department; (c) Penn Mutual's retained surplus at all times has complied with Section 614 and has been below the Section 614 limit; and (d) in the event Penn Mutual's surplus could be found to exceed the Section 614 limit, the company would be entitled to discretionary relief from the Department allowing it to maintain surplus exceeding the alleged statutory cap.

## III. THE PROPOSED SETTLEMENT

The Proposed Settlement provides for a declaratory judgment and injunctive relief ("the Settlement Class Benefits") to all Penn Mutual par policyholders for each par policy that was in force at any time during the period commencing January 1, 2006 and ending December 31, 2015 ("a Settlement Policy"), in the form of a "Terminal Dividend" – a permanent dividend paid in addition to any other dividends declared by Penn Mutual. SOS, Section IV. The manner in which the Terminal Dividend injunction will be effectuated depends on whether the Settlement Policy (a) was in-force as of December 31, 2015 ("In Force Settlement Policies") or (b) had fully terminated by lapse, surrender or death on or before December 31, 2015 ("Terminated Settlement Policies"):

> ➤ *In Force Settlement Policies*: Under the Proposed Settlement Penn Mutual will be ordered by the Department and by this Court to pay to those Settlement Class members whose Settlement Policies were in force as of December 31, 2015 – in addition to all contractual benefits otherwise due under the policy – a Terminal

Dividend in an amount equal to 1.8% of the total Cash Surrender Value for each In Force Settlement Policy as of December 31, 2015. Penn Mutual is required to pay the Terminal Dividend upon termination of each In Force Settlement Policy (whether by surrender or upon death of the insured). Penn Mutual is obligated under the Proposed Settlement to pay Terminal Dividends for In Force Settlement Policies totaling $97 million.

➢ ***Terminated Settlement Policies:*** Under the Proposed Settlement Penn Mutual will be ordered by the Department and by this Court to pay to those Settlement Class members whose Settlement Policies terminated by lapse or surrender on or before December 31, 2015, a *pro rata* share of a $13 million Terminal Dividend Fund established by Penn Mutual, based on a formula set out in the Stipulation of Settlement. That formula establishes a minimum cash payment of $25 per Terminated Settlement Policy.

SOS, Section IV.

Thus, under the Proposed Settlement the Settlement Class members will receive Terminal Dividends totaling $110 million, payable immediately or upon termination (whether by surrender or upon death). Importantly, Penn Mutual will be ordered to pay the Settlement Class Benefits automatically; the Settlement Class members will not need to file a claim or take any other steps to receive the payments due to them under the Proposed Settlement. In addition to, and without in any way diminishing, the foregoing Settlement Class Benefits, Penn Mutual will pay (a) all costs of to administer and implement the Settlement, including all Class Notice expenses, (b) Plaintiffs' Court-approved litigation expenses not to exceed $700,000, (c) Plaintiffs' attorneys' fees in an amount approved by the Court not to exceed $10 million, and (d) service awards to Plaintiffs in an amount approved by the Court not to exceed $3,750 each. SOS, Sections VI & IX.

The Proposed Settlement thus provides non-speculative, substantial economic relief to all Settlement Class members without the need for any claims process or eligibility determination

and without diminishment of Penn Mutual's separate payment of costs that would otherwise be borne by the Proposed Settlement Class, including all notice, administration and implementation expenses, attorneys' fees and litigation expenses.

In return for the foregoing Settlement Class Benefits, the Settlement Class members will release all claims that Plaintiffs alleged or could allege arising out of the same factual predicate alleged in the Complaint, and Plaintiffs agree to the entry of the Consent Order by the Department. SOS, Sections VIII, XIII(1). As is typical in such class-wide settlements, Penn Mutual expressly denies any and all wrongdoing, and does not by virtue of the Proposed Settlement admit or concede any claimed, actual or potential wrongdoing or liability in connection with any claims which have been or could have been alleged against it in this Action or before the Department. *Id.*, Section I(B)(2).

## IV. THE PROPOSED SETTLEMENT CLASS

The benefits of the Proposed Settlement can only be achieved through the certification of the Proposed Settlement Class, which under the Settlement Agreement is defined as "(a) all persons who own or owned a Settlement Policy; and (b) all Beneficiaries of any Settlement Policy terminated by death on or before December 31, 2015, if such Beneficiaries notify or notified Penn Mutual of a death claim, or if Penn Mutual otherwise learns of a death, prior to the Implementation Date." SOS Section II, ¶ 35. A "Settlement Policy" means a participating life insurance policy issued by Penn Mutual that was in-force at any time during the period commencing January 1, 2006 and ending December 31, 2015. *Id.*, ¶ 37.

This proposed class definition is more than sufficiently "precise, objective and presently ascertainable" for purposes of this preliminary determination. Manual for Complex Litigation (Fourth) ("MCL 4th"), § 21.222 (2004). As explained below, the Proposed Settlement Class is to be certified under Rule 23(b)(1)(A) and 23(b)(2), because inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for PennMutual and because Penn Mutual has acted on grounds that apply generally to all par

policyholders within the Proposed Settlement Class, such that final declaratory and injunctive relief is appropriate with respect to the Proposed Settlement Class as a whole.

## V.  LEGAL ARGUMENT

The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). "Thus, courts should favor the use of devices that tend to foster negotiated solutions to these actions. Prima facie, this would include settlement classes." *Id.*

Review of a proposed class action settlement under Rule 23 (e) is a two-step process. The first step involves preliminary approval of the settlement as warranting the issuance of notice of pendency of the proposed settlement and the scheduling of a final fairness hearing. *Klingensmith v. BP Products North America, Inc.*, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *see generally*, MCL 4th §21.632. At the preliminary approval stage, the Court need determine only "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (citation omitted). A settlement is presumed to be fair when the negotiations were at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation. *In re General Motors,* 55 F.3d at 785.[2]

### A.  The Proposed Settlement Warrants Preliminary Approval

---

[2] At step two, after notice to the class and an opportunity for class members to object to the proposed settlement or otherwise be heard, the Court determines whether the settlement is sufficiently fair, reasonable and adequate to warrant final approval under Rule 23(e). *In re National Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014).

Here, there are no grounds to doubt the fairness of the Proposed Settlement, nor any obvious deficiencies with respect to unfair or uneven treatment of any member of the Proposed Settlement Class. To the contrary, the fundamental fairness of the Proposed Settlement has already been preliminarily vetted by the Department, which this Court has recognized possesses specialized expertise on insurance matters. In referring this matter to the Department, the Court found that Plaintiffs' claims raise issues involving technical or policy issues not only within the Department's field of expertise, but within the Department's discretion. [Doc. 33, at 7-12]

Moreover, each factor typically considered at the preliminary approval stage confirms that the Proposed Settlement falls "within the range of possible approval."

*First*, the Proposed Settlement provides undeniably substantial relief to the Settlement Class, tailored to the specific claims asserted by Plaintiffs. Adkins Decl., at ¶¶ 10 - 11. The injunctive relief afforded by the Settlement provides Terminal Dividends having a face amount of $110 million, a truly exceptional result. *Id*. There is no subjective or disproportionate treatment of the Settlement Class members, because all of them will receive Settlement Class Benefits calibrated to the objectively determined Cash Surrender Values of their respective Settlement Policies. *Id*., at ¶ 10. [3]

Likewise, there is no preferential treatment of the Class Representatives: with the exception of the $3,750 service awards (payable only upon approval by the Court), the Plaintiffs receive precisely the same relief as the other members of the Settlement Class. *See Alexander v. Coast Professional Inc.*, No. 2:12-121461-NIQA, 2016 WL 861329, at *8 (recognizing service award of $2,000 as "well within the range of awards made in similar cases"). All Settlement Class members are furthermore equally benefited by Penn Mutual's agreement to absorb all costs

---

[3] Because Terminated Policies no longer receive ordinary dividends, they have no claim to future dividends determined in accordance with Sections 510(f) and 614. In contrast, In Force Settlement Policies will continue to receive dividends in future years and, as such, are compromising and resolving any claim for additional dividends based on the application of the statutes in consideration for the Terminal Dividends received under the Proposed Settlement.

of notice, administration and implementation of the Proposed Settlement, an expense (which would otherwise be borne by the Settlement Class as a whole). Adkins Decl., at ¶ 12. And Penn Mutual has agreed to pay Class Counsel's attorneys' fees separate from, and in addition to, the relief afforded to the Settlement Class, in the amount approved by the Court but not to exceed $10 million in fees and $700,000 in expenses. *Id.*[4]

**Second**, the Proposed Settlement is the result of extended arms-length negotiations. *Mehling*, 246 F.R.D. at 472; *see also, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (granting preliminary approval of settlement reached "after extensive arms-length negotiation between very experienced and competent counsel"); *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (preliminarily approving settlement where there was "nothing to indicate that the proposed settlement ... [was] not the result of good faith, arms-length negotiations between adversaries"). The Proposed Settlement was reached only after some four years of litigation (including the preparation and exchange of multiple, comprehensive expert reports), through lengthy negotiations and via a two-day JAMS mediation before a respected retired U.S. District Court Magistrate Judge. Adkins Decl., at ¶¶ 5, 7-8. There is not a hint of collusion; the Proposed Settlement instead arose out of "serious, informed, non-collusive negotiations." *In re: Shop-Vac Mktg. and Sales Practices Litig.*, 2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) (quoting *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

**Third**, the Proposed Settlement was reached through the collective effort of highly experienced Class Counsel, who unanimously concur that it is in the best interests of the Settlement Class. Adkins Decl., at ¶ 14, and Exhibits A – D thereto. *See Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("[t]he opinions and

---

[4] Class Counsel will submit a separate application for an award of attorneys' fees and expenses as part of the final approval process. *See, e.g.*, *Blandina v. Midland Funding, LLC*, 2:13-cv-1179-NIQA [ECF 88] (E.D. Pa. Mar. 9, 2016).

recommendation of such experienced counsel are indeed entitled to considerable weight."); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith.").

In sum, the Proposed Settlement falls well within the range of reasonableness, and there is no conceivable basis for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – could not ultimately be satisfied. Indeed, as Plaintiffs will establish through the final approval process, the Proposed Settlement achieves a truly exceptional result. Successful litigation of this Action required Plaintiffs' counsel to master and grapple with complex legal issues and highly technical accounting and actuarial concepts and to surmount daunting defenses to obtain redress under insurance statutes that Penn Mutual claimed to be superannuated and ineligible for private enforcement. Adkins Decl., at ¶ 14. To achieve this result Plaintiffs furthermore shouldered enormous litigation and financial risks (including advancing more than $700,000 in out-of-pocket expenses) in the face of uncertainties that the Proposed Settlement now resolves in a very favorable fashion. *Id.*, ¶ 21.

### B. The Proposed Settlement Class Warrants Preliminary Certification

As a general matter, an action may be certified for class treatment for settlement purposes only. *See, e.g., In re General Motors*, 55 F.3d at 777-78. The Court first approves preliminary certification of the class. *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010); *Gates*, 248 F.R.D at 439. Final certification of the class is determined by the Court when it rules on final approval of the class settlement agreement. *In re Certainteed*, 269 F.R.D. at 476; *Gates*, 248 F.R.D. at 439.

### 1. The Requirements of Rule 23(a) Are Met

A proposed settlement class must satisfy the requirements of Rule 23(a), that is, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (requiring proponents of class certification to demonstrate that all of the Rule 23(a) requirements are met). Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

### a. Numerosity

The first requirement for maintaining a class action under Rule 23(a) is that the proposed class be so numerous that joinder of all members be "impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). In addition, when considering the numerosity of the class, "[i]t is proper for the court 'to accept common sense assumptions in order to support a finding of numerosity.'" *Cumberland Farms, Inc. v. Browning Ferris Ind.*, 120 F.R.D. 642, 645 (E.D. Pa. 1988) (quoting *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D. Pa. 1979)).

Here, Penn Mutual has reported some 293,322 par policies in force as of December 31, 2015. Adkins Decl., at ¶ 15. For purposes of preliminary certification, the numerosity requirement is easily satisfied.

### b. Commonality

"A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "Their claims must depend upon a common contention ... that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *In re Nat'l Football League Players Concussion Injury Litig.*, No. 15-2206, 2016 WL 1552205, at *7 (3d Cir. Apr. 18, 2016) (quoting *Dukes*, 564 U.S. at 350).

Here, common questions cut across every claim of every Settlement Class member, who are by definition similarly situated Penn Mutual par policyholders, including: the applicability of Section 614, the appropriate calculation methodology for determining the Safety Fund calculation under Section 614, and the amount owed and due the putative Class of par policyholders as a whole. *Rodriguez*, 726 F.3d at 383 ("[T]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant."). For purposes of preliminary class certification, the commonality requirement is satisfied.

### c. Typicality

Rule 23(a)(3)'s typicality requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Third Circuit has "set a 'low threshold' for typicality. Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *In re NFL Players Litig.*, 2016 WL 1552205, at *8 (internal citations omitted).

Plaintiffs in this action allege precisely the same claims, and advance precisely the same interests, as the other Penn Mutual par policyholders comprising the Settlement Class – all of whom share the same rights to divisible surplus calculated in accordance with their standardized form contracts and Pennsylvania law. Plaintiffs seek recovery under the same legal theories for the same wrongful conduct as the Settlement Class they represent. *In re NFL Players Litig.*, 2016 WL 1552205, at *8 (internal citations omitted). For purposes of preliminary certification, the typicality requirement is satisfied.

### d. Adequate Representation

The final Rule 23(a) requirement, adequacy, requires that a representative party must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "This requires a determination of (1) whether the representatives' interests conflict with those of the class and (2)

whether the class attorney is capable of representing the class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001).

Here the interests of the Harshbargers, as participating policyholders of Penn Mutual, are completely aligned with and have diligently represented the interests of the other Settlement Class members, all of whom claim the same entitlement to divisible surplus calculated in accordance with Section 614. Adkins Decl., at ¶ 22. *In re NFL Players Litig.*, 2016 WL 1552205, at *11. And Class Counsel are all highly experienced in class action litigation, as recognized on numerous occasions. Adkins Decl., at Exhibits A - D; *see also, e.g.*, *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J. 2005) (recognizing BFFB's significant experience in class actions and insurance sales practices cases makes it "more than adequate" representatives of the class); *Goldstein v. Savings Bank Life Insurance Co.*, 2004 WL 5783465 at n.10 (Mass. Super. 2004) (in safety fund litigation granting class certification; "Counsel [AKZ] for the proposed class are experienced and qualified in class litigation, and no suggestion has been made that counsel have not or will not continue to conduct this litigation with vigor. Indeed, the SBLIC complains of the exact opposite."). Settlement Class Counsel furthermore vigorously prosecuted the Action, before both this Court and the Department, ultimately securing a $110 million settlement and at all times acted at arm's length from Penn Mutual. Adkins Decl., at ¶¶ 5, 10. *In re Gen. Motors*, 55 F.3d at 801. For purposes of preliminary certification, the adequacy requirement is satisfied.

## 2. The Requirements of Rule 23(b)(1)(A) and 23(b)(2) Are Met

A class may be certified under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." As explained by the Supreme Court, Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike." *Amchem*, 521 U.S. at 614 (citations omitted) (offering, as an example, as a utility must act toward its customers). For example, the certification of Rule 23(b)(1)(A) classes alleging claims against plan administrators and other

fiduciaries under ERISA is common because of the defendants' statutory and fiduciary obligation to treat putative class members uniformly. *See, e.g., In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) (certifying ERISA 401(k) breach of fiduciary duty cased under Rule 23(b)(1)(A)); *see generally, In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 594 (3d Cir. 2009) ("Section 502(a)(2) claims are, by their nature, plan claims.").

Here, uniform treatment of all par policyholders is not only imperative given their shared status as members of a mutual insurance company, it is **mandated** by the Pennsylvania insurance law. *See* 40 P.S. § 1171.5(a)(7)(i) (prohibiting "any unfair discrimination between individuals of the same class … in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such [insurance] contract"). Should individual par policyholders be permitted to demand different or individualized calculation of the statutory limit, Penn Mutual would be prejudiced through incompatible judicial determinations interfering with its ability to pursue a uniform course of conduct – particularly under a statutory scheme that prohibits discrimination among par policyholders. Adkins Decl. at ¶ 20. As in ERISA cases, here the only relief par policyholders could obtain for the proper calculation of the Safety Fund limit is relief that must be available to other policyholders on the same uniform terms. Certification under Rule 23(b)(1)(A) is therefore appropriate and warranted.

Under Rule 23(b)(2), on the other hand, a case may be certified as a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) certification is warranted where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury. *Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"). Thus, the Rule seeks to redress group injury, as opposed to individual injuries: a class action is properly certified under (b)(2) where the claims seek to define the relationship between the defendant and a group uniformly situated

in relation to the defendant. *See, e.g.*, *Est. of Gardner v. Contl. Cas. Co.*, 3:13CV1918(JBA), 2016 WL 806823, at *9 (D. Conn. Mar. 1, 2016) (certifying (b)(2) litigation class of policyholders seeking uniform interpretation of policy language).

Moreover, in the settlement context the Court may support a determination that the defendant has acted or refused to act on grounds that apply generally to the class by reference to the terms of the agreed settlement. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 317 (3d Cir. 2011) (2012) (en banc) ("the parties' mutual decision to settle claims 'on grounds generally applicable to the class' complies with the text of Rule 23(b)(2) and should be respected"). "Important to the analysis "is that the relief sought ... should benefit the entire class," and "the putative class [must] 'demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of res judicata.'" *Sullivan*, 667 F.3d at 617-18 (*quoting Baby Neal*, 43 F.3d at 59 (*quoting Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir.1988)). "[I]njunctive actions, seeking to define the relationship between the defendant and the 'world at large,' will usually satisfy the requirement." *Id.*

Given the Department's entry of the Consent Order – which requires Penn Mutual to declare and pay Terminal Dividends to the Settlement Class as a whole – once approved by the Court, this final injunctive relief will serve as an essential component of the resolution of the Plaintiffs' class claims against Penn Mutual. Adkins Decl. at ¶ 22.

Accordingly, the injunctive relief obtained by Plaintiffs requiring the payment of Terminal Dividends is uniformly applicable to the entire Settlement Class of Penn Mutual par policyholders, obviating any need for inquiry into circumstances or characteristics of the individual Settlement Class members. Adkins Decl. at ¶¶ 21-22. *See, e.g., Sullivan*, 667 F.3d at 317-18 (district court acted within its discretion in accepting the defendant's stipulation to the injunctive relief); *In re Budeprion XL Mktg. & Sales Litig.*, 09-MD-2107, 2012 WL 2527021, at *11 (E.D. Pa. July 2, 2012) (certifying Rule 23(b)(2) settlement class: "The language of Rule 23(b)(2) is clear: such a class may be certified if the party opposing the class has acted in a way

applicable generally to the class so that final injunctive relief is appropriate respecting the class as whole.").

Certification of a Rule 23(b)(2) settlement class is therefore also both appropriate and warranted.

## C. Class Counsel Should Be Preliminarily Appointed to Represent the Proposed Settlement Class

The application for class counsel "is generally submitted as part of the certification motion." Manual 4th, § 21.273. Courts within this district have included the appointment of class counsel in the preliminary approval order, which makes sense given the court's Rule 23(a)(4) adequacy determination. *See, e.g., Alexander v. Coast Professional, Inc.*, No. 2:12-cv-12-1461-NIQA [ECF 92] (E.D. Pa. August 10, 2015).

Rule 23(g) sets out a non-exhaustive list of factors for courts to consider when appointing class counsel. They include counsel's work in the pending class action, experience in handling class actions or other complex litigation, knowledge of the applicable law, and the resources available for representing the class. *In re NFL Players Litig.*, 2016 WL 1552205, at *9.

Here, Proposed Class Counsel (a) have successfully steered this putative class action to a rare and remarkable $110 million Proposed Class Settlement, (b) have decades of action experience handling class action litigation involving insurance matters, including in the particular area of safety fund litigation, (c) have developed and used an intimate knowledge of the often esoteric insurance, actuarial and legal issues pertaining to divisible surplus and statutory accounting standards, and (d) have already expended some $700,000 in litigation expenses (primarily expert witness fees and expenses) in order to go toe-to-toe with Penn Mutual and its vast financial resources. Adkins Decl., at ¶ 21.

## D. The Proposed Class Notice Program Is More than Adequate

The Supreme Court set the fundamental due process standard for class notice in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), writing:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Id.* at 314. Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." What constitutes the best notice practicable under the circumstances depends upon the individual facts of the case. *See In re Prudential Insurance Co. of America Sales Practices Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997).

Although not strictly necessary in the context of a Rule 23(b)(1) or (b)(2) settlement class,[5] the Parties propose to give individual mailed notice to each member of the Proposed Settlement Class, using Penn Mutual's reliable policyholder contact information. Adkins Decl., at ¶ 16. Generally speaking, delivering notice "via first class mail to the last known address in defendant's records ... [is] the most efficient and effective means for reaching individual members of the class." *Am. Sales Co. v. SmithKline Beecham Corp.*, 274 F.R.D. 127, 137 (E.D. Pa. 2010) (quoting *Parks v. Portnoff Law Assocs.*, 243 F.Supp.2d 244, 250 (E.D.Pa.2003)).

Here, Penn Mutual maintains the names and the last known address for all members of the Settlement Class in its business records and direct mailings will be made to them. Adkins Decl., at ¶ 16. Furthermore, the SOS requires Penn Mutual to: (1) utilize the national change of address database to update its mailing records prior to the initial mailing; (2) re-mail any Class Settlement Notice Packages that are returned by the U.S. Postal Service with forwarding addresses; and (3) investigate the availability of correct addresses for any settlement notices returned without a forwarding address. SOS, Sections V and VI.C. Thus, the proposed means of

---

[5] *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."). Courts "periodically opt to issue individual notice to (b)(1) and (b)(2) settlement class members even though only general notice is required." Newberg on Class Actions § 8:15 (5th ed. 2014) (and cases cited therein).

notice is the best practicable under the circumstances. *See e.g. Bourlas v. Davis Law Associates*, 237 F.R.D. 345, 356 (E.D.N.Y. 2006) (direct mailing in class settlement clearly satisfies due process). Adkins Decl., at ¶ 16.

The form of the class notice is governed by Fed. R. Civ. P. 23(c)(2), which sets forth the information to be clearly and concisely communicated. The proposed form of Class Notice, styled after a form previously approved by the Court,[6] and the accompanying cover letter meets all the pertinent requirements. SOS, Exhibits 1 and 2. The Proposed Class Notice Package clearly and concisely states, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the Settlement Class as certified; (iii) the class claims, issues, or defenses; (iv) that a Settlement Class member may object to any aspect of the Proposed Settlement; (v) that a Settlement Class member may enter an appearance through an attorney if the member so desires; and (vi) the binding effect of the judgment on Settlement Class members under Rule 23(c)(3), including in particular the verbatim language of the release to be afforded Penn Mutual under the Proposed Settlement. In addition, the Class Notice provides a telephone line and dedicated email address by which Class members can get their questions answered and request copies of the SOS or any other submissions before this Court concerning the Proposed Settlement. Adkins Decl., at ¶ 16.

Because the proposed notices are informative and easy to read, and because the notice plan appears designed to reach the class efficiently, the Court should approve the Proposed Class Notice Program. *See, e.g., In re: Shop-Vac*, 2016 WL 3015219, at *7.

## VI.    PROPOSED TIMETABLE

The Proposed Settlement Agreement sets forth an orderly procedure and timetable for disseminating notice to the Settlement Class and for final approval:

➢ Class Settlement Notice Package to be mailed to the members of the proposed Settlement Class within thirty (30) days of entry of the Court's order preliminarily

---

[6] *See, e.g.,* Preliminary Approval Order, *Alexander v. Coast Professional Inc.*, 2:12-cv-01461-NIQA [ECF 92] (E.D. Pa. Aug. 10, 2015).

approving the Proposed Settlement, advising them of the pendency of the Proposed Settlement and of their opportunity to appear and be heard, and including the right to object to any aspect of it;

➢ Plaintiffs' motion for final approval of the Proposed Settlement and approval of Penn Mutual's payment of fees, expenses and service awards to be filed twenty-one (21) days before the deadline for objections;

➢ Any objections to the settlement or to the request for expenses, and all notices of intentions to appear at the Fairness Hearing, must be filed with the Court and mailed to Class Counsel and counsel for Penn Mutual no more than forty-five (45) days after mailing of the Class Settlement Notice Package;

➢ Fairness Hearing to be set by the Court at the time of preliminary approval, within 100 days of the entry of the Preliminary Approval Order.

The foregoing timetable is incorporated into the Proposed Preliminary Approval Order.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary approval of the Proposed Settlement and preliminary certification of the Proposed Settlement Class and appointment of Class Counsel is well-taken, and should be granted. Plaintiffs accordingly respectfully request that the Court enter the proposed form of Preliminary Approval Order as agreed to by the parties, which has been lodged with the Court, directing the issuance of Class Notice and the scheduling of the Fairness Hearing.


Dated:  April 25, 2017                      Respectfully Submitted,

                                                        BY DANIEL J. AND EDITH M.
                                                        HARSHBARGER,

                                                        By Their Attorneys:


                                                        s/Joseph N. Kravec, Jr.
                                                        Joseph N. Kravec, Jr., (PA ID 68992)

19

**FEINSTEIN DOYLE PAYNE &
KRAVEC, LLC**
429 Fourth Avenue, Suite 1300
Pittsburgh, PA  15219
(412) 281-8400

Jason B. Adkins (*pro hac vice*)
**ADKINS, KELSTON & ZAVEZ, P.C.**
90 Canal Street, 5th Floor
Boston, MA  02114
(617) 367-1040

Andrew S. Friedman (*pro hac vice*)
Francis J. Balint, Jr. (*pro hac vice*)
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, AZ  85016
(602) 274-1100

Mark A. Chavez (*pro hac vice*)
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA  94941
(415) 381-5599

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 25, 2017.


Dated: April 25, 2017.                               /s/ Jason B. Adkins