IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA

DANIEL J. HARSHBARGER AND )
EDITH M. HARSHBARGER, Individually )
and on Behalf of all Persons Similarly Situated, )
) Civil Action No. 2:12-cv-06172-NIQA
Plaintiffs, )
)
v. )
)
THE PENN MUTUAL LIFE INSURANCE )
COMPANY, )
)
Defendant. )
)

**DECLARATION OF JASON B. ADKINS IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED CLASS SETTLEMENT AGREEMENT,
PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS,
<u>AND APPOINTMENT OF CLASS COUNSEL</u>**

I, Jason B. Adkins, state upon the pains and penalties of perjury, based on my own direct knowledge or staff upon whom I rely, the following:

1. I am an attorney in good standing in the state of Massachusetts and all federal courts to which I am admitted, and represent Plaintiff in this case. I was admitted *pro hac vice* for this action under Local Rule of Civil Procedure 83.52(b) on January 22, 2013.

2. With this declaration and affidavit, I attach true and correct copies of the documents referenced as Exhibits, and attest to the facts set forth herein.

3. Plaintiffs Daniel J. Harshbarger and Edith M. Harshbarger own participating ("par") whole life insurance policies issued by the Defendant The Penn Mutual Life Insurance Company ("Penn Mutual"). On October 12, 2012, the Harshbargers filed suit in this Court

1

against Penn Mutual, alleging Penn Mutual had breached its obligations to its par policyholders by retaining surplus due to them ("divisible surplus") in an amount exceeding the maximum retention limit permitted by 40 P.S. § 614 ("Section 614" or "the Safety Fund Law"). [ECF 1] Under Pennsylvania law, all participating policies delivered in Pennsylvania must contain language providing that the policies will share in the insurer's divisible surplus, which Plaintiffs alleged includes all surplus over the limit established by Section 614. The Harshbargers therefore asserted class claims against Penn Mutual for breach of contract, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unjust enrichment and money had and received. The parties held significantly divergent interpretations of the Safety Fund law, as reflected in the divergent opinions of the parties' respective expert witnesses.

4. On April 11, 2014, concluding that Plaintiffs' claims raised complex regulatory issues, the Court abstained from exercising jurisdiction and stayed these class action proceedings pending a preliminary determination of those issues by the Department. [ECF 33 & 34] Plaintiffs accordingly filed a complaint with the Department, and proceeded through discovery towards an administrative hearing.

5. After substantial discovery and pre-hearing preparation, including the preparation and exchange of expert reports, Plaintiffs and Penn Mutual agreed to participate in a mediation in an attempt to resolve both the pending administrative proceedings and this putative class action. Throughout the mediation the parties engaged in arms' length negotiations through their counsel, all of whom are experienced in complex insurance and class action litigation, and reached a compromise resolution of both the class claims and the administrative proceedings. The mediation and negotiations occurred on May 24 - 25, 2016. The negotiations lasted two days and were unquestionably adversarial and were overseen by retired U.S. District Court Magistrate

Judge Diane Welsh of JAMS, in Philadelphia. Judge Welsh was actively engaged in and oversaw the arms' length negotiation process leading to the Settlement. The proposed settlement has been evaluated and contingently approved (as subject to the final approval by this Court) by the Pennsylvania Insurance Commissioner in proceedings before the Pennsylvania Department of Insurance ("the Department").

6. The Proposed Settlement, which is memorialized by the Stipulation of Settlement[1] executed October 11, 2016 [ECF 47] ("SOS"), is expressly conditioned upon entry by the Department of a Consent Order ("the Consent Order") addressing the administrative interpretation and application of the operative insurance statutes, 40 P.S. §§ 510(f) and 614. SOS, Section XII. The administrative proceedings will be terminated and dismissed upon entry of the Final Order and Judgment by this Court. *Id.*

7. Fact discovery in this case began shortly after the filing of the Administrative Complaint on February 20, 2015 and extended through the mediation, with confirmatory discovery produced by Penn Mutual. The parties exchanged multiple requests for documents, admissions and interrogatories as well as responses to each. Plaintiffs' motions to compel the production of documents and interrogatory responses were adjudicated by the Department. The parties also negotiated a detailed stipulation of facts. Over the course of discovery, Penn Mutual produced (and Plaintiff's counsel reviewed) over 33,000 pages of documents as well as multi-page spreadsheets. This discovery covered all of the substantive issues raised in this case.

8. Before entering into settlement negotiations, the Parties exchanged expert disclosures and reports. All told, Plaintiff served disclosures and reports for three experts (a life insurance statutory accountant, insurance rating agency expert and law and insurance professor

---

[1] Capitalized terms in this memorandum have the same meaning as those terms are defined in the SOS.

on mutuality and insurance regulation), and Penn Mutual served disclosures for its two experts (a life insurance statutory accountant, and a former Pennsylvania Insurance Commissioner for her legal and regulatory expertise).  The parties exchanged opening expert reports for each of these experts and were prepared to exchange their rebuttal reports at the time they agreed to engage in mediation.

9. Fact discovery in the administrative action was completed before the scheduled administrative hearing and before the Parties began to explore settlement. This Action had progressed through the conclusion of discovery and was poised for an administrative hearing before the Pennsylvania Department of Insurance when the Settlement was reached.

10. Penn Mutual aggressively defended this case from the outset, and absent the Settlement would continue to do so.  At the administrative hearing, Penn Mutual would have presented testimony from highly qualified experts in support of its contentions and defenses, including its statutory accountant and former Pennsylvania Insurance Commissioner. In addition, during the administrative discovery process, Penn Mutual was required by the New York Department of Insurance to substantially increase the amount of reserves on certain life insurance products in its New York financial statements.  If the case were not settled, Penn Mutual would have argued at the administrative hearing that the additional reserves required by New York would have changed its safety fund calculation or otherwise entitled it to the requested discretionary relief from the Pennsylvania Department of Insurance to maintain surplus above the alleged statutory cap.  The Settlement is inarguably valuable because, if approved, it will despite Penn Mutual's contentions and defenses provide members of the Settlement Class with declaratory judgment and injunctive relief ("the Settlement Class Benefits") and immediate, tangible financial benefit while avoiding all risk of receiving nothing

for policyholders who owned policies from January 1, 2006 to December 31, 2015 ("a Settlement Policy"). Penn Mutual has agreed to a common fund settlement of $110 million for the benefit of the Settlement Class. The financial benefits will be distributed the form of a "Terminal Dividend" – a permanent dividend paid in addition to any other dividends declared by Penn Mutual. SOS, Section IV. The manner in which the Terminal Dividend injunction will be effectuated depends on whether the Settlement Policy (a) was in-force as of December 31, 2015 ("In Force Settlement Policies") or (b) had fully terminated by lapse, surrender or death on or before December 31, 2015 ("Terminated Settlement Policies"). Settlement Class members whose Settlement Policies were in force as of December 31, 2015 will receive – in addition to all contractual benefits otherwise due under the policy – a Terminal Dividend in an amount equal to 1.8% of the total Cash Surrender Value for each In Force Settlement Policy as of December 31, 2015. (Penn Mutual is obligated under the Proposed Settlement to pay Terminal Dividends for In Force Settlement Policies totaling $97 million.) SOS, Section IV. Settlement Class members whose Settlement Policies terminated by lapse or surrender on or before December 31, 2015, will receive a pro rata share of a $13 million Terminal Dividend Fund established by Penn Mutual, based on a formula set out in the Stipulation of Settlement. That formula establishes a minimum cash payment of $25 per Terminated Settlement Policy. *Id*. There is no subjective or disproportionate treatment of the Settlement Class members, because all of them will receive Settlement Class Benefits calibrated to the objectively determined Cash Surrender Values of their respective Settlement Policies.

11. This exceptional relief, including some $110 million in additional dividends, is tailored to Plaintiffs' specific claims that Penn Mutual failed to declare and pay sufficient annual dividends to its participating policyholders during the Class Period.

12. In addition to, and without in any way diminishing, the foregoing Settlement Class Benefits, Penn Mutual will pay (a) all costs of to administer and implement the Settlement, including all Class Notice expenses, (b) Plaintiffs' Court-approved litigation expenses not to exceed $700,000, (c) Plaintiffs' attorneys' fees in an amount approved by the Court not to exceed $10 million, and (d) service awards to Plaintiffs in an amount approved by the Court not to exceed $3,750 each. SOS, Sections VI & IX.

13. Thus, under the Proposed Settlement the Settlement Class members will receive Terminal Dividends totaling $110 million, payable immediately or upon termination (whether by surrender or upon death). Importantly, Penn Mutual will be ordered to pay the Settlement Class Benefits automatically; the Settlement Class members will not need to file a claim or take any other steps to receive the payments due to them under the Proposed Settlement.

14. The Settlement achieves a favorable outcome for the Settlement Class, especially considering the substantial costs, risks, and delay of continued litigation. Successful litigation of this Action required Class Counsel to master and grapple with complicated and highly technical accounting and actuarial concepts and to surmount daunting defenses to obtain redress under insurance statutes that Penn Mutual claimed to be superannuated and ineligible for private enforcement. Class Counsel unanimously concur that this Settlement is in best interest of the Settlement Class.

15. The parties have agreed on certification of the Settlement Class for settlement purposes only as stated in the SOS, § II. Based on the books and records of Penn Mutual as conveyed to Plaintiff's counsel, the Settlement Class encompasses approximately 293,322 policyholders, in jurisdictions across the country.

16. The parties have agreed to the form and content of the Settlement Class Notice which will be distributed directly to the Settlement Class Members, subject to approval of the Court. SOS, Exhibit 2. The Parties propose to give individual mailed notice to each member of the Proposed Settlement Class, using Penn Mutual's reliable policyholder contact information. Specifically, Penn Mutual maintains the names and the last known address for all members of the Settlement Class in its business records and direct mailings will be made to them. Furthermore, the SOS requires Penn Mutual to: (1) utilize the national change of address database to update its mailing records prior to the initial mailing; (2) re-mail any Class Settlement Notice Packages that are returned by the U.S. Postal Service with forwarding addresses; and (3) investigate the availability of correct addresses for any settlement notices returned without a forwarding address. SOS, V and VI.C. The notice is to be distributed within a reasonable time after Preliminary Approval of the Settlement, no later than 30 days after Preliminary Approval is granted. In addition, the Class Notice provides a telephone line and dedicated email address by which Class members can get their questions answered and request copies of the SOS or any other submissions before this Court concerning the Proposed Settlement. The proposed means of notice is the best practicable under the circumstances. *See e.g. Bourlas v. Davis Law Associates*, 237 F.R.D. 345, 356 (E.D.N.Y. 2006) (direct mailing in class settlement clearly satisfies due process).

17. To satisfy commonality a plaintiff must show that the class claims "depend upon a common contention" and that determining the truth or falsity of that contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011). The Settlement Class Members here share just such a significant common issue: whether Penn Mutual breached a contractual duty in its calculation of

the permissible Safety Fund. Resolution of whether Penn Mutual's action constitutes a breach of duty to its participating policyholders would resolve an issue central to the validity of the alleged class claim "in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Moreover, it is clear that Plaintiff's alleged injury is premised on the same act (that is, Penn Mutual's alleged violation of the Safety Fund limit) and on the same legal theory (breach of contract) as that of every other member of the Settlement Class, meeting the typicality requirement.

18. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This element is generally characterized as an inquiry into whether the attorneys together with the named plaintiffs will act diligently on behalf of the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63-64 (D. Mass. 1997). The Third Circuit employs a two-part test in analyzing adequacy: "(1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001). Here, Plaintiffs interests, as participating policyholders of Penn Mutual, are completely aligned with the rest of Penn Mutual's participating policyholders that comprise the Settlement Class. Plaintiffs have devoted their time and effort to pursuing this litigation over four years on behalf of the putative class, including reviewing pleadings and responding to discovery. Plaintiffs are fully aware of their responsibilities as a representative for the Settlement Class. In addition, Plaintiff's counsel are experienced class action lawyers whose diligence and commitment to this litigation has fully demonstrated their ability to adequately protect the interests of the Settlement Class. *See* Exhibits A (firm bio for Adkins, Kelston & Zavez, PC); B (firm bio for Bonnett, Fairbourn, Friedman &

Balint, PC); C (firm bio for Chavez & Gertler, LLC); D (firm bio for Feinstein, Doyle, Payne & Kravec, LLC).

19. A class may be certified under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." As explained by the Supreme Court, Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike." *Amchem*, 521 U.S. at 614 (citations omitted) (offering, as an example, as a utility must act toward its customers).

20. Here, uniform treatment of all par policyholders is not only imperative given their shared status as members of a mutual insurance company, it is ***mandated*** by the Pennsylvania insurance law. *See* 40 P.S. § 1171.5(a)(7)(i) (prohibiting "any unfair discrimination between individuals of the same class … in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such [insurance] contract"). Should individual par policyholders be permitted to demand different or individualized calculation of the statutory limit, Penn Mutual would be prejudiced through incompatible judicial determinations interfering with its ability to pursue a uniform course of conduct – particularly under a statutory scheme that prohibits discrimination among par policyholders.

21. Under Rule 23(b)(2), a case may be certified as a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Thus, the Rule seeks to redress group injury, as opposed to individual injuries: a class action is properly certified under (b)(2) where the claims seek to define the relationship between the defendant and a group uniformly situated in relation to the defendant. *See, e.g.*, *Est. of*

*Gardner v. Contl. Cas. Co.*, 3:13CV1918(JBA), 2016 WL 806823, at *9 (D. Conn. Mar. 1, 2016) (certifying (b)(2) litigation class of policyholders seeking uniform interpretation of policy language). Given the Department's entry of the Consent Order – which requires Penn Mutual to declare and pay Terminal Dividends to the Settlement Class as a whole – once approved by the Court, this final injunctive relief will serve as an essential component of the resolution of the Plaintiffs' class claims against Penn Mutual.

22. Moreover, in the settlement context the Court may support a determination that the defendant has acted or refused to act on grounds that apply generally to the class by reference to the terms of the agreed settlement. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 317 (3d Cir. 2011) (2012) (en banc). The injunctive relief obtained by Plaintiffs requiring the payment of Terminal Dividends is uniformly applicable to the entire Settlement Class of Penn Mutual par policyholders, obviating any need for inquiry into circumstances or characteristics of the individual Settlement Class members. *See, e.g., Sullivan*, 667 F.3d at 317-18 (district court acted within its discretion in accepting the defendant's stipulation to the injunctive relief).

23. Courts within this district have included the appointment of class counsel in the preliminary approval order, which makes sense given the court's Rule 23(a)(4) adequacy determination. *See, e.g., Alexander v. Coast Professional, Inc.*, No. 2:12-cv-12-1461-NIQA [ECF 92] (E.D. Pa. August 10, 2015). Rule 23(g) sets out a non-exhaustive list of factors for courts to consider when appointing class counsel. They include counsel's work in the pending class action, experience in handling class actions or other complex litigation, knowledge of the applicable law, and the resources available for representing the class. *In re NFL Players Litig.*, 2016 WL 1552205, at *9. It is appropriate that the undersigned Plaintiffs' counsel be appointed as Class Counsel for the Settlement Class pursuant to Rule 23(g), as they are experienced in

complex insurance and class action litigation, including specifically allegations concerning safety funds in excess of safety fund limits. *See* Exhibits A - D. Proposed Class Counsel have devoted substantial resources to this case over more than four years, and have been successful in obtaining a compromise resolution which they can and do endorse as a fair, reasonable and adequate settlement of the putative class claims.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of April, 2017 at Boston, Massachusetts.

/s/ Jason B. Adkins<br>
Jason B. Adkins (admitted pro hac vice)<br>
ADKINS, KELSTON & ZAVEZ, P.C.<br>
90 Canal Street, 5th Floor<br>
Boston, MA  02114

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DECLARATION OF JASON B. ADKINS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AGREEMENT, PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS, AND APPOINTMENT OF CLASS COUNSEL was served electronically through the Court's CM/ECF system on April 25, 2017.

Dated: April 25, 2017.          s/Joseph N. Kravec, Jr.
                                       Joseph N. Kravec, Jr.