12-6172

United States Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street, Courtroom 8-B
Philadelphia, PA 19106

FILED
AUG 08 2017
KATE BARKMAN, Clerk
By_____ Dep. Clerk

July 28, 2017

I am stating that I have never recieved any dividends on my policy #7891281 from its inception on 08/18/1992 to 12/31/2017 when Penn Mutual said it had lapsed.

Another letter sent by Penn Mutual said Pol. #7-891-281 can be reinstated within five years of this date.

Dividends -0- 1992-2017
Lapsed 12/31/2017

John W. Mansfield

THE UPS STORE
JUL 28 2017
NO. 3307

| PennMutual. The Penn Mutual Life Insurance Company | 07-28-2017 Customer Service 1-800-523-0650 | BILLING NOTICE PREMIUM |

| POLICY NUMBER | INSURED | PRODUCT | DUE DATE |
|---|---|---|---|
| 7 891 281 | JOHN W MANSFIELD | Universal Life | 08/19/2015 |

**Bill To:**
JOHN W MANSFIELD
5528 FLAMINGO AVE
LAKELAND FL 33809-3522

**For Insurance Service Consult:**
YOUR AGENT AT
PML HOME OFFICE
600 DRESHER ROAD
HORSHAM PA 19044

Preparation Date        07/27/2015

### Of Interest To You

The tax-deferred growth of your policy, combined with additional premium deposits, may be a good way to save for the future. So why not discuss the wisdom of making regular, additional premium deposits with your Penn Mutual representative who can help you decide if that's the right course for you.

### Information About This Policy

### Details About This Bill

Payments received during the month of July, 2015 will earn 4.00% interest.

Base specified amount:    $30,000.00

Premium for 12 months          $460.00

Total Amount Due        $460.00

**PennMutual**
The Penn Mutual Life Insurance Company

*07-28-2017* (handwritten)

Customer Service 1-800-523-0650

**BILLING NOTICE**
**PENDING LAPSE**

| POLICY NUMBER | INSURED | PRODUCT | DUE DATE |
|---|---|---|---|
| 7 891 281 | JOHN W MANSFIELD | Universal Life | 05/21/2016 |

**Bill To:**
JOHN W MANSFIELD
5528 FLAMINGO AVE
LAKELAND FL 33809-3522

**For Insurance Service Consult:**
YOUR AGENT AT
PML HOME OFFICE
600 DRESHER ROAD
HORSHAM PA 19044

Preparation Date   03/21/2016

**Of Interest To You**

URGENT! On 03/21/2016, insufficient policy value was available to cover the monthly insurance charges. This policy will lapse with no value remaining, unless an additional payment of $1,364.63 is received before 05/21/2016. The additional payment shown will keep the policy in force to this date.

**Information About This Policy**

**Details About This Bill**

Payments received during the month of March, 2016 will earn 4.00% interest.

Base specified amount:   $30,000.00

Total amount required   $1,364.63

**Total Amount Due**   $1,364.63

**Penn Mutual**
*A better way of life*

The Penn Mutual Life Insurance Company   *07-28-2017*
Philadelphia, PA 19172
*Customer Service 1-800-523-0650*

BILLING NOTICE
PREMIUM

| POLICY NUMBER | INSURED | PRODUCT | DUE DATE |
|---|---|---|---|
| 7 891 281 | JOHN W MANSFIELD | Universal Life | 08/19/2012 |

**Bill To:**
JOHN W MANSFIELD
5528 FLAMINGO AVE
LAKELAND FL 33809-3522

**For Insurance Service Consult:**
JAMES R SCAGGS
1213 COLLINS DR
EFFINGHAM IL 62401
217-864-3508

Preparation Date     07/25/2012

**Of Interest To You**

This year commemorates the 20th year that your Penn Mutual policy has been in force. Thank you for remaining one of our most loyal and valued customers over these 20 years!

**Information About This Policy**

**Details About This Bill**

Payments received during the month of July, 2012 will earn 4.00% interest.

Base specified amount:     $30,000.00

Premium for 12 months     $460.00

*ck #1564  8-9-2012*

Total Amount Due     $460.00

Jan. 7, 2016

Penn Mutual Life Ins. Co.
P.O. Box 7460
Philadelphia, PA 19101

THE UPS STORE
JUL 28 2017
NO. 3307

Dear Sirs:

I am enclosing ck. #1703 in the amount of $1205.05 for Universal Policy No. 7 891 281 issued by Penn Mutual Life Ins. Co. with an annual premium of $460.00. This Universal policy #7 891 281 was purchased with an 135 exchange of a New York Life whole life policy # 2706 3572 plus an annual premium of $460.00 on 08-19-1992.

I need justification for this check of $1205.05. Please itemized and justify a jump in cost in this universal policy # 7 891 291 from a $460.00 annual premium which has been billed and paid on time for 23 years to this amount of $1205.05. There have been no loans or withdrawals on this policy # 7 891 291.

5528 Flamingo Ave.
Lakeland, FL 33909-3522

John W. Mansfield

THE UPS STORE          07-28-2017

JUL 28 2017            p.

NO. 3307

My objection to being a class action participant in this Harshbarger, et. al. v. The Penn Mutual Life Insurance Co. Settlement is the fact or facts listed below on the Life Insurance Policy #:7891281 on John W. Mansfield purchased Aug. 18, 1992. Papers were signed for a $30,000 whole life policy. Premiums were established at $460.00 annually. Interest was to be paid @ 8%. based on figures established by Penn Mutual. A N.Y.L. 27063572 policy, $20,000.00 was given at the signing and a check for first year premiums $460.00. All dividends were to be paid and added to the policy

1. No premiums other than $460.00 annually and for 25 years were timely paid to Penn Mutual Insurance. Reminders of date due for this premium were sent. The policy #7891281 was presented with being paid up in ten years when purchased; a time table sheet was given to me showing cash values over the years yet Penn Mutual says there is no value. Penn Mutual has taken all monies paid, including monies from my N.Y.L. $20,000.00 policy.

07-28-201
p.2

Penn Mutual has acted in bad faith; Penn Mutual accepted all these payments on the basis of it being a whole life policy with dividends and interest being accumulated, building a paid-up policy being worth $30,000.00 plus. How can such a major company show no integrity toward a long and trusted policyholder, especially senior citizens. Isn't this fraud, particially against seniors? Instead of taking an attitude of this being a worthless policy, in truth in all aspects, this policy should be treated as Penn Mutual's prime product as life long protection.

Penn Mutual would never furnish a copy to me of my policy after frequent requests (I assume to keep us in the dark.)

I was never made aware of a court case action in progress (class action suit). I was notified of this court case a few weeks ago. A possible plan of Penn Mutual's was to withhold public knowledge. I was notified a few weeks ago (2017).

John W. Mansfield

THE UPS STORE
JUL 28 2017
NO. 3307

Harshbarger, et al. v The Penn Mutual Life Insurance Co.   07/28/2017  p. 3

Case No 2:12 No 1:12-cv-06172-NIQA

Monies paid to Penn Mutual
| Date | Description | Amount | |
|---|---|---|---|
| 8-18-1992 | NYL Policy | $5732.39 | 135 ofcharge |
| 8-18-1992 | Annual Premium | $460.00 | |
| 1993-2015 | 460.00 x 25 | $11,500.00 | |
| | extra payment | $200.00 | |
| 1-7-16 | extra | $1205.05 | |
| 9-18-16 | extra | $1365.02 | |
| | extra | $1364.63 | |

Total Paid $21,827.09

THE UPS STORE
JUL 28 2017
NO. 3307

The Penn Mutual Life Insurance Company
600 Dresher Road
Horsham, PA 19044

P-4

June 12, 2017

PNN0208351638

JOHN MANSFIELD
5528 FLAMINGO AVE
LAKELAND, FL 33809-3522

Life Insurance Policy #: 7891281

THE UPS STORE
JUL 28 2017
NO. 3307

Re:   Notice of Proposed Class Action Settlement

Dear Policyholder,

Our records indicate that you are the owner of the participating life insurance policy listed above issued by Penn Mutual that was in force at some time from January 1, 2006 through December 31, 2015; or are the owner or beneficiary (for a policy if terminated due to death) of a policy that was terminated due to death, surrender, lapse or maturity from January 1, 2006 through December 31, 2015. Therefore, according to our records, you are a member of the Settlement Class in *Harshbarger, et al. v. The Penn Mutual Life Insurance Co.*, Case No. 12-cv-06172-NIQA ("the *Harshbarger* Action"), which is currently pending in the United States District Court for the Eastern District of Pennsylvania (the "Court"). At the direction of the Court, the Plaintiffs in the *Harshbarger* Action also brought an administrative proceeding before the Pennsylvania Insurance Department (the "Department") raising the same matters.

Penn Mutual has worked with the Plaintiffs in the *Harshbarger* Action to resolve these matters in a way that benefits you and other Penn Mutual policyholders. Specifically, the Parties have arrived at a proposed settlement whereby owners or beneficiaries of in force participating policies as of December 31, 2015, as well as owners or beneficiaries of policies that were terminated from January 1, 2006 through December 31, 2015, will receive either a terminal dividend or a cash payment. These payments to the Settlement Class will total approximately $110 million.

The terms of the proposed settlement have been approved by the Department. However, the proposed settlement is not final until also approved by the Court in the *Harshbarger* Action.

The enclosed Notice of Proposed Class Action Settlement (the "Notice") describes your rights in connection with the settlement approval process in the *Harshbarger* Action. The Notice describes the procedure you must follow should you wish to object to any aspect of the proposed settlement. Please carefully review these materials.

Penn Mutual does not expect the proposed settlement to affect in any way its ability to pay claims and to honor its commitments to policyholders, nor will it adversely affect the amount of dividends that might be paid in the future.

As explained in the enclosed Notice, you may request copies of documents relating to the proposed settlement, as well as other documents filed in the *Harshbarger* Action, for free by emailing your request to harshbargersettlement@pennmutual.com. Should you have any questions, please call 1-877-765-8777. Plaintiffs' counsel in the *Harshbarger* Action can be reached directly by email at akz@akzlaw.com. We're here to help.

Sincerely,
Kevin Reynolds
Chief Legal Officer
The Penn Mutual Life Insurance Company

Harshbarger, et al. v The Penn Mutual Life Insurance Co.
Case No. 2:12 No. 2:12-cv-06172-NIQA        p 5

Reasons to file an objection and be a non-participant in a class action lawsuit are listed below:

Bad faith from inception of Policy 7-891-281 by Penn Mutual statements made and deliberate falsehoods given over 25 plus years, (1992-2017).

I was never informed about this 2012 class action lawsuit in a timely manner. Penn Mutual dated their correspondence June 19, 2017 but it was received in July, 2017. This created a untimely burden for my response as I was hospitalized at James A. Haley Veterans Hospital, Tampa, Fl. This gave me no time to prepare an objection to the class membership or have legal consult about the lawsuit having been filed in 2012, Harshbarger, et al. v The Penn Mutual Life Insurance Co.. It should have been mandatory as this is a direct concern financial to me. Instead Penn Mutual contacted me for more money (enclosed). I also am to pay until I am 95 yrs.

According to chart given by Penn Mutual at 20 years the value was $18,993.00 and fully paid-up in 10 years (2002). Interest was steadily reduced to 4% in my policy. Mr. Scaggs said it would be worth $63,509.2. Other policys were given dividends plus 5%.

My thoughts were/are, Penn Mutual conspired and colluded to change premiums costs, especially Seniors.

THE UPS STORE
JUL 28 2017
NO. 3307

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## LEGAL NOTICE OF CLASS ACTION SETTLEMENT

*Harshbarger, et al. v. The Penn Mutual Life Insurance Co.*, Case No. 2:12-cv-06172-NIQA

**If you owned or were the beneficiary under a Participating Life Insurance Policy Issued By The Penn Mutual Life Insurance Company that was in force at any time from January 1, 2006 through December 31, 2015, then your rights may be affected by a class action settlement.**

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- This Notice advises you of a proposed Settlement in a class action lawsuit that may entitle you to money and affect your legal rights.

- You may be a Settlement Class Member and entitled to money from this Settlement if you owned, or became the beneficiary of a death benefit under, a Penn Mutual participating life insurance policy that was in force at any time from January 1, 2006 through December 31, 2015.

- If the Court approves this Settlement, Penn Mutual will provide the following benefits to Settlement Class Members:

    o *For policies in force* as of December 31, 2015, Penn Mutual will declare Terminal Dividends, amounting to 1.8% of its participating policies' combined cash surrender value, payable on each policy upon the earlier of the insured's death or the policy's termination by lapse or surrender according to a formula. The Terminal Dividends will total approximately $97 million in the aggregate.

    o *For policies terminated* due to death, surrender or lapse between January 1, 2006 and December 31, 2015, Penn Mutual will declare and pay a policy dividend totaling $13 million to the owners or beneficiaries of those policies.

- If the Court approves this Settlement, Settlement Class Members will give up any right they may have to sue Penn Mutual over the allegations at issue in the lawsuit that is being settled.

- Penn Mutual will also pay the Plaintiffs' lawyers' reasonable attorneys' fees (not to exceed $10 million) and expenses (not to exceed $700,000), and pay the Class Representatives service awards, all subject to Court approval.

THE UPS STORE   JUL 28 2017   NO. 3307

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT ||
|---|---|
| WHAT YOU CAN DO: | WHAT WILL HAPPEN AS A RESULT: |
| Do Nothing | You will be part of the Settlement. You will be eligible for a monetary payment if the Court approves the Settlement. You will give up any right you may have to pursue your own lawsuit on these claims. |
| Object – Submit Your Objection Filed or Postmarked By July 28, 2017 | You can write to the Court about why you do not think all or any part of the Settlement should be approved. The Court can only approve or deny the Settlement, not change the terms of the Settlement. |

- 1 -

| | |
|---|---|
| Discuss The Settlement With The Court – Submit Your Request To Attend The Hearing Postmarked By August 25, 2017 | You can ask the Court for permission to speak in Court about your opinion of the Settlement. You may hire an attorney to represent you if you so desire. The Court will hold a hearing to determine whether to approve the Settlement on November 14, 2017. |

If you have any questions after reading the detailed Settlement notice below, please call 1-877-765-8777.

## NOTICE OF CLASS ACTION SETTLEMENT PURSUANT TO FED. R. CIV. P. 23(e)(1)

To: All owners of participating life insurance policies issued by Penn Mutual that were in force at any time from January 1, 2006 through December 31, 2015; and all beneficiaries of policies that were terminated due to death from January 1, 2006 through December 31, 2015, provided Penn Mutual received a valid notice of death claim under the operative policy on or before December 31, 2015, or if Penn Mutual otherwise learned or learns of said death, prior to the date funds in this case are to be distributed (collectively, the "Settlement Class").

According to Penn Mutual's records, you are a member of this Settlement Class. The purpose of this Notice is to advise you of your rights relating to this Settlement.

JUL 28 2017

NO. 3307

### Class Action Determination

This Settlement will end a class action lawsuit brought by Daniel J. Harshbarger and Edith M. Harshbarger ("Plaintiffs") against The Penn Mutual Life Insurance Company ("Penn Mutual"). The lawsuit is pending before United States District Judge Nitza I. Quiñones Alejandro of the United States District Court for the Eastern District of Pennsylvania (the "Court").

The Court has determined, for purposes of possible settlement, that this lawsuit may proceed as a class action pursuant to Rule 23(b)(1)(A) and (b)(2) of the Federal Rules of Civil Procedure. The Court has also preliminarily determined that Plaintiffs fairly and adequately represent the interests of the Settlement Class.

### Description of the Lawsuit

This lawsuit is about Plaintiffs' allegation that Penn Mutual was legally required to pay more policy dividends to Penn Mutual's participating life insurance policyholders than Penn Mutual actually paid. The members of the Settlement Class described above are (a) owners of participating life insurance policies issued by Penn Mutual that were in force at any time from January 1, 2006 through December 31, 2015, and (b) beneficiaries of such policies that were terminated due to death from January 1, 2006 through December 31, 2015.

### Procedural Background

Plaintiffs filed this lawsuit on November 2, 2012. Plaintiffs alleged that Section 410(f) of Pennsylvania's Insurance Company Law of 1921, 40 P.S. § 510(f) ("Section 510(f)"), requires Penn Mutual to pay to participating policyholders, through policy dividends, any surplus held by Penn Mutual that exceeds the surplus limit under Section 429 of the Insurance Company Law of 1921, 40 P.S. § 614 ("Section 614"). Plaintiffs thus asserted that "excess surplus" under Section 614 was "divisible surplus" under Section 510(f) and must be distributed as policy dividends to Penn Mutual's participating life insurance policyholders. Based on these allegations, Plaintiffs brought claims on

United States District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street, Courtroom 8-B
Philadelphia, PA 19106

Failure to comply with the objection requirements described above (and in Section VII of the Settlement Agreement) will result in the waiver or forfeiture of any and all rights you may have had to appear separately and/or object to the terms of the Settlement.

To be clear, however, any Settlement Class Member who properly objects to the Settlement, shall nevertheless be entitled to all of the benefits of the Settlement, if it is approved by the Court.

### Addresses of the Parties' Legal Counsel

**Class Counsel:**

Jason B. Adkins
John Peter Zavez
**ADKINS, KELSTON & ZAVECZ, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114

Joseph N. Kravec, Jr.
**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Law & Finance Building, 13th Floor
429 Fourth Avenue
Pittsburgh, PA 15219

Mark A. Chavez
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA 94941

Andrew S. Friedman
Francis J. Balint, Jr.
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016

**Penn Mutual's Counsel:**

Jay H. Calvert, Jr.
John P. Lavelle, Jr.
Joseph B. G. Fay
David L. Harbaugh
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103

THE UPS STORE
JUL 28 2017
NO. 3307

If you have any questions after reading the detailed Settlement notice above, please call 1-877-765-8777.

Penn Mutual has entered into this Settlement without admitting that any of Plaintiffs' allegations have any basis in law or in fact, and without admitting any fault, liability, or culpability. More detailed information concerning the claims of the respective parties, and the proposed scope of relief can be obtained from reviewing the Settlement and the pleadings on file with the Court, which may be requested free of charge by emailing harshbargersettlement@pennmutual.com.

### Effect of the Class Action Determination

All members of the Settlement Class as defined above will be bound by the judgment entered by the Court, whether or not favorable to the Settlement Class. That is, the judgment in this case will specifically resolve the rights of the Settlement Class with respect to the claims raised by Plaintiffs in this litigation, and any future litigation, arbitration, regulatory action, remediation, or other proceeding based upon, arising out of, relating to, and/or in conjunction with the Released Transactions. Pursuant to the terms of the Settlement, Penn Mutual will pay Class counsel's reasonable attorneys' fees not to exceed $10 million and Class counsel's expenses not to exceed $700,000, subject to the approval of the Court. Penn Mutual will also pay the two Class Representatives service awards of $3,750 each, likewise subject to approval of the Court. Plaintiffs will file a motion seeking approval of an amount as and for Class counsel's reasonable attorneys' fees, Class counsel's expenses, and the service awards, together with supporting information, on or before October 13, 2017.

Finally, Penn Mutual is also paying all notice and administrative expenses relating to the Settlement. You are not obliged to pay any judgment, court costs, or lawyers' fees, unless you elect to retain your own attorney, at your own expense.

THE UPS STORE
JUL 28 2017
NO. 3307

### Right to Object

As a member of the Settlement Class, you need not engage your own attorney. Plaintiffs are represented by attorneys Jason B. Adkins and John P. Zavez of Adkins, Kelston & Zavez, P.C., Andrew S. Friedman and Francis J. Balint, Jr. of Bonnett, Fairbourn, Friedman & Balint, P.C., Mark A. Chavez of Chavez & Gertler LLP, and Joseph N. Kravec, Jr. of Feinstein Doyle Payne & Kravec, LLC ("Class Counsel"). You will be represented (without any charge to you) by Class Counsel. If you wish, however, you may appear either by hiring your own lawyer or by representing yourself.

The Court has set a Fairness Hearing on the approval of this proposed Settlement for November 14, 2017 at 10:00 am. As a member of the Settlement Class, you have the right to voice your approval of, or objections to, any aspect of the proposed Settlement. Any such objection must be in writing, and must on or before July 28, 2017 be (a) sent to Class Counsel and Penn Mutual's counsel at their respective addresses identified at the end of this Notice and (b) filed with the Court. The objection must include the specific reasons, if any, for your objection, including any legal support you believe should be brought to the Court's attention, any evidence or other information you wish to introduce in support of the objection, along with your policy number(s), name, address, and any email address and phone number. You may make objections on your own or through an attorney retained at your own expense.

Should you file an objection, you also have the right to appear and be heard at the Fairness Hearing. Should you or your hired attorney wish to appear at the Fairness Hearing, a notice of intention to appear must on or before August 25, 2017 be (a) sent to Class Counsel and Penn Mutual's counsel at their respective addresses identified at the end of this Notice and (b) filed with the Court. As noted above, the Fairness Hearing will occur on November 14, 2017 at 10:00 am, at the below location:

behalf of themselves and other Penn Mutual policyholders for breach of contract, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unjust enrichment, and money had and received.

Following briefing on Penn Mutual's Motion to Dismiss, on April 11, 2014, the Court entered an order in which it abstained from hearing the lawsuit in deference to the primary jurisdiction of the Pennsylvania Insurance Commissioner ("the Commissioner") and stayed the lawsuit pending resolution of Plaintiffs' claims before the Pennsylvania Insurance Department ("the Department"). On February 20, 2015, Plaintiffs filed their Insurance Complaint ("Complaint") with the Department, requesting among other things that the Commissioner confirm how excess surplus is to be calculated under Section 614; find that Penn Mutual had retained surplus in excess of the Section 614 limit; and rule that excess surplus under Section 614 constitutes "divisible surplus" under Section 510(f) which must be distributed as policy dividends. The Parties proceeded through discovery before the Department, which involved extensive document productions as well as the exchange of initial expert reports.

On May 26, 2016, following a two day mediation before the Honorable Diane M. Welsh (Ret.) of JAMS, the Parties agreed to a proposed settlement of the pending proceedings before the Department and the Court according to the terms described below, which have been approved by the Department, preliminarily approved by the Court, and are subject to the final approval of the Court.

THE UPS STORE
JUL 28 2017
NO. 3307

### Terms of Proposed Settlement

The Settlement affords members of the Settlement Class the following benefits:

For each Policy in force as of December 31, 2015 (individually referred to as an "In Force Policy"), Penn Mutual's Board of Trustees will approve and declare a Terminal Dividend payable upon the earlier of: (1) the death of the insured; or (2) the termination of the In Force Policy upon lapse, surrender or maturity of the Policy. Under the Settlement Penn Mutual will pay Terminal Dividends to such In Force Policies totaling $97,073,303. This amount will be allocated as follows. First, each In Force Policy will be allocated a Terminal Dividend of $25. The aggregate cost of these dividends ($7,333,050) will be deducted from the $97,073,303 fund and the remainder of that fund ("Remaining In Force Amount"), which amounts to $89,740,253, will then be allocated to each In Force Policy that had a Cash Surrender Value as of December 31, 2015 ("Second In Force Allocation"). The Second In Force Allocation will be *pro rata*, which means each eligible In Force Policy's share under the Second In Force Allocation will equal the Remaining In Force Amount times the Cash Surrender Value of the In Force Policy divided by the aggregate Cash Surrender Value of all such eligible In Force Policies.

For those Policies that were terminated due to death, surrender, lapse or maturity from January 1, 2006 through December 31, 2015 (the "Terminated Policies"), Penn Mutual will pay a total of $13 million to the owners or beneficiaries (for those Policies terminated due to death) of those Policies. This amount will be allocated as follows. First, each Terminated Policy will be allocated a Terminal Dividend of $25. The aggregate cost of these dividends ($4,347,075) will be deducted from the $13 million fund and the remainder of that fund ("Remaining Terminated Amount"), which is $8,652,925, will then be allocated to each Terminated Policy that had a cash surrender value at termination ("Second Terminated Allocation"). The Second Terminated Allocation will be *pro rata*, which means each eligible Terminated Policy's share under the Second Terminated Allocation will equal the Remaining Terminated Amount times the cash surrender value of the Terminated Policy divided by the aggregate cash surrender value of all the eligible Terminated Policies.

Penn Mutual's obligation to pay the Terminal Dividends is conditioned on Penn Mutual having risk based capital ("RBC") levels of no less than 500% of its "authorized control level" RBC amount

("RBC Threshold Amount"). If this condition is not met, the Company will suspend and defer the payment of Terminal Dividends until such time as its RBC next exceeds the RBC Threshold Amount. Payment of deferred Terminal Dividends will thereafter resume when, and will continue for so long as, Penn Mutual's RBC exceeds the RBC Threshold Amount.

### Proposed Release and Waiver

In exchange for receiving benefits under the Settlement, Settlement Class Members will give up any right they may have to sue Penn Mutual for claims related to this lawsuit. This is pursuant to the Settlement's Release and Waiver provision which is re-printed verbatim below:

### A. Definitions

1. The term "Releasees" means Penn Mutual and its past, present and future parents, divisions, subsidiaries, affiliates, predecessors, successors and assigns (which shall include any person or entity that controls, is controlled by, or is under common control with any such party), and each of their respective past, present and future officers, directors, trustees, employees, representatives, agents, appointed agents, attorneys, successors and assigns, or any of them, including any person or entity acting on behalf or direction of any of them.

2. The term "Released Transactions" means the events, transactions, or circumstances concerning the Settlement Policies that were alleged or asserted, or that could have been alleged or asserted in the Action based on the same factual predicate as the claims alleged in the Action (including without limitation matters asserted in the pleadings filed in the Action and in the administrative proceeding, the motions papers, submissions and other filings of the Parties, or in Plaintiffs' expert reports), including specifically: (a) Penn Mutual's payment of dividends, or alleged failure to pay adequate or legally required dividends, on any of the Settlement Policies; (b) Penn Mutual's compliance or alleged non-compliance with the provisions of Section 614 and/or Section 510(f); (c) Penn Mutual's compliance or alleged non-compliance with any policy provisions contained in or otherwise incorporated in the Settlement Policies in accordance with Section 510(f); and (d) Penn Mutual's computation of its safety fund amount under Section 614 so long as it is consistent with the Consent Order.

THE UPS STORE
JUL 28 2017
NO. 3307

### B. Release and Waiver

1. Plaintiffs and the Settlement Class Members, on behalf of themselves, their spouses, heirs, assigns, beneficiaries, executors, administrators, trusts, trustees, predecessors and successors, hereby expressly release and discharge the Releasees from any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, whether known or unknown, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, either as a class claim or as an individual claim, or before any court, arbitration panel or regulatory or administrative agency.

2. Plaintiffs and the Settlement Class Members hereby expressly further agree that they shall not now or hereafter institute, maintain, or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class, or on behalf of any other person or entity any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, including, without limitation, claims for mental anguish and/or punitive or exemplary damages, whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or

4

any other source, based upon, arising out of, relating to, and/or in conjunction with the Released Transactions.

      3. Nothing in this Release shall be deemed to alter Plaintiffs' or the Settlement Class Members' contractual rights under the Settlement Policies except as expressly specified in this Settlement.

      4. Plaintiffs and the Settlement Class Members expressly understand that §1542 of the Civil Code of the State of California provides that

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS [OR HER] FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM [OR HER] MUST HAVE MATERIALLY AFFECTED HIS [OR HER] SETTLEMENT WITH THE DEBTOR.

To the extent that California or other similar federal or state law may apply (because of or notwithstanding the choice of law provisions in this Agreement), Plaintiffs and the Settlement Class Members hereby agree that the provisions of § 1542 and all such similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Settlement Class Members based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, and Plaintiffs and the Settlement Class Members agree that this is an essential term of this Agreement.

      5. In connection with this Release, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, facts in addition to or different from those which they now know or believe to be true, or losses that may exist or have been underestimated based upon, arising out of, relating to, and/or in conjunction with the Released Transactions herein. Plaintiffs and the Settlement Class Members nevertheless agree that this Release fully, finally, and forever shall settle, discharge and release all liability based upon, arising out of, relating to, and/or in conjunction with the Released Transactions, which exists, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding).

      6. As of the Final Settlement Date, each of the Releasees shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Class Counsel, Plaintiffs and each and all of the Settlement Class Members, from all claims (including, without limitation, unknown claims) based upon, arising out of, relating to, and/or in conjunction with the Released Transactions and the institution, prosecution, assertion, settlement, or resolution of the Action and administrative proceeding before the Department.

      7. Without limiting the foregoing, nothing in this Release shall release, preclude, or limit any claim or action to enforce the terms of this Agreement.

* * *

      The proposed Settlement and final relief to the Settlement Class is contingent upon the approval of both the Commissioner and upon the final approval, judgment, and order of the Court. The Parties have obtained the approval of the Settlement from the Commissioner. A Fairness Hearing on the final approval of the Settlement is scheduled before the Court for: November 14, 2017 at 10:00 am.

THE UPS STORE

JUL 28 2017

NO. 3307