# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PENNSYLVANIA
### (PHILADELPHIA)

| | |
|---|---|
| DANIEL J. HARSHBARGER AND EDITH M. HARSHBARGER, Individually and on Behalf of all Persons Similarly Situated,<br><br>                         Plaintiffs,<br><br>     v.<br><br>THE PENN MUTUAL LIFE INSURANCE COMPANY,<br><br>                       Defendant. | Civil Action No. 2:12-cv-06172-NIQA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT AGREEMENT AND FINAL CERTIFICATION OF THE SETTLEMENT CLASS**

Dated: October 13, 2017

Andrew S. Friedman (pro hac vice)
Francis J. Balint, Jr. (pro hac vice)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2235 East Camelback Road, Suite 300
Phoenix, AZ 85016
(602) 274-1100

Jason B. Adkins (pro hac vice)
John Peter Zavez (pro hac vice)
**ADKINS, KELSTON & ZAVEZ, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114
(617) 367-1040

Joseph N. Kravec, Jr. (PA ID 68992)
**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 281-8400

Mark. A. Chavez (pro hac vice)
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA 94941
(415) 381-5599

*Attorneys for Plaintiffs and the Settlement Class*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................................ 1

        A.     Pre-Settlement Proceedings ......................................................................... 1
        B.     Summary of the Proposed Settlement .......................................................... 2
        C.     Post-Settlement Proceedings ........................................................................ 4
        D.     Objections to the Proposed Settlement ........................................................ 5

III.    LEGAL STANDARD ............................................................................................... 6

IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......................... 7

        A.     The Proposed Settlement Is Presumptively Fair ......................................... 7
        B.     The Complexity, Expense and Likely Duration of the Litigation ......................... 8
        C.     Reaction of the Class to the Settlement ..................................................... 10
        D.     The Stage of the Litigation and the Amount of Discovery Completed ............... 11
        E.     The Risks of Establishing Liability ............................................................ 12
        F.     The Risks of Establishing Damages ........................................................... 13
        G.     The Risks of Maintaining the Class Action through Trial ................................ 14
        H.     Penn Mutual's Inability to Withstand a Greater Judgment ............................... 14
        I.     The Range of Reasonableness of the Settlement ......................................... 14
        J.     The Lack of a Right to Opt-out of the Settlement ............................................ 15
        K.     The Reasonableness of the Provision for Attorneys' Fees .................................. 17
        L.     A Fair and Reasonable Means of Processing Class Member Claims .................. 18

V.      INDIVIDUAL RESPONSES/OBJECTIONS .............................................................. 18

        A.     Timely Filed Objection ............................................................................... 19
        B.     Unfiled/Untimely Objections ..................................................................... 21
               1.     Procedural Deficiencies ................................................................. 21
               2.     Lack of Substantive Merit .............................................................. 22
                      a.     The Unfiled Objections Requesting Exclusion ...................... 22
                      b.     The Untimely/Unfiled Objections of Mr. Howard
                             and Ms. Coulter ....................................................................... 23
                      c.     The Untimely Objections of Mr. Mansfield ............................ 25

VI.     THE SETTLEMENT CLASS STILL MEETS ALL THE REQUIREMENTS FOR RULE
        23(B)(1)(A) AND 23(B)(2) CERTIFICATION ........................................................ 25

VII.    CONCLUSION ....................................................................................................... 26

<u>Cases</u>

*Alexander v. Coast Prof'l Inc., Civ. Class Action No.*
    12-1461, 2016 WL 861329 (E.D. Pa. Mar. 7, 2016) ................................................ *passim*
*Arnett v. Bank of Am., N.A.,*
    No. 3:11-cv-1372-SI, 2014 WL 4672458 (D. Or. Sept. 18, 2014) ...................................20
*Austin v. Pa. Dept. of Corrections,*
    876 F. Supp. 1437 (E.D. Pa.1995) ...................................................................................10
*Barel v. Bank of Am.,*
    255 F.R.D. 393 (E.D. Pa. 2009)...........................................................................8, 12, 13
*Bell Atl. Corp. v. Bolger,*
    2 F.3d 1304 (3d Cir. 1993)...............................................................................................11
*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)..........................................................................................................19
*Boone v. City of Philadelphia,*
    668 F. Supp. 2d 693 (E.D. Pa. 2009) ...............................................................................11
*Bussie v. Allmerica Fin. Corp.,*
    50 F. Supp. 2d 59 (D. Mass. 1999) ...................................................................................8
*Chakejian v. Equifax Info. Servs., LLC,*
    275 F.R.D. 201 (E.D. Pa. 2011)........................................................................................11
*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ............................................................................................20
*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)...............................................................................................7
*Delandro v. County of Allegheny,*
    Civ. A. No. 06-927, 2011 WL 2039099 (W.D. Pa. May 24, 2011)...................................10
*Devlin v. Ferrandino & Son, Inc.,*
    Civ. A. No. 15-4976, 2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) .....................................6
*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    177 F.R.D. 54 (D. Mass. 1997).........................................................................................24

*Ebner v. Merchs. & Med. Credit Corp.,*

Civ. A. No. 14-06882, 2017 WL 1079966 (E.D. Pa. Mar. 22, 2017)..................................8

*Esslinger v. HSBC Bank Nevada, N.A.,*
Civ. A. No. 10-3213, 2012 WL 5866074 (E.D. Pa. Nov. 20, 2012)................................25

*Est. of Gardner v. Contl. Cas. Co.,*
316 F.R.D. 57 (D. Conn. 2016).....................................................................................17

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975)............................................................................... *passim*

*Gomes v. Extra Space Storage, Inc.,*
No. 2:13-cv-929 (KSH)(CLW), 2017 WL 2999020 (D.N.J. July 13, 2017) ............. *passim*

*Graudins v. Kop Kilt, LLC,*
Civ. A. No. 14-2589, 2017 WL 736684 (E.D. Pa. Feb. 24, 2017) ...............................8, 14

*Halley v. Honeywell Int'l, Inc.,*
861 F.3d 481 (3d Cir. 2017).......................................................................................6, 7

*Haynes v. Shoney's, Inc., 89–30093–RV,*
1993 WL 19915 (N.D. Fla. Jan. 25, 1993) ....................................................................21

*Hendricks v. Starkist Co.,*
No. 13-cv-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016).........................20

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.,*
No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) .............................................24

*In re Am. Family Enters.,*
256 B.R. 377 (D.N.J. 2000) ..........................................................................................21

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.,*
No. 07-md-01871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)....................................20

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001)...........................................................................10, 11, 13

*In re Centocor, Inc. Sec. Litig.,*
No. 92-CV-1071, 1993 WL 189937(E.D. Pa. June 2, 1993) ...........................................21

*In re CertainTeed Corp. Roofing Shingle Products Liab. Litig.,*
269 F.R.D. 468 (E.D. Pa. 2010)....................................................................................10

*In re Checking Account Overdraft Litig.,*
830 F. Supp. 2d 1330 (S.D. Fla. 2011) .........................................................................21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)................................................................................ *passim*

*In re Ikon Office Sols., Inc. Sec. Litig.,*
    209 F.R.D. 94 (E.D. Pa. 2002).........................................................................11

*In re Ins. Brokerage Antitrust Litig.,*
    579 F.3d 241 (3d Cir. 2009)............................................................................6

*In re Interpublic Sec. Litig.,*
    No. 02 Civ.6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)............25

*In re Lupron Mktg. & Sales Practices Litig.,*
    228 F.R.D. 75 (D. Mass. 2005).......................................................................24

*In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.,*
    Civ. A. Nos. 05-1151 & 05-2369 (SRC), 2009 WL 331426 (D.N.J. Feb 10, 2009).........16

*In re Nat'l Football League Players Concussion Injury Litig.,*
    821 F.3d 410 (3d Cir. 2016)............................................................................6

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*
    148 F.3d 283 (3d Cir. 1998)................................................................ *passim*

*In re Relafen Antitrust Litig.,*
    231 F.R.D. 52 (D. Mass. 2005).......................................................................11

*In re StockerYale, Inc. Sec. Litig.,*
    No. 1:05cv0177-SM, 2007 WL 4589772 (D.N.H. Dec. 18, 2007).....................8

*In re Vitamins Antitrust Litig.,*
    No. 99-197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000).........................24

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004)...........................................................................11

*Leap v. Yoshida,*
    Civ. A. No. 14-3650, 2016 WL 1730693 (E.D. Pa. May 2, 2016) ....................8

*Mehling v. New York Life Ins. Co.,*
    246 F.R.D. 467 (E.D. Pa. 2007)......................................................................17

*Rougvie v. Ascena Retail Grp., Inc.,*
    Civ. A. No. 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016).....................24

*Sala v. Nat'l R.R. Passenger Corp.,*
    721 F. Supp. 80 (E.D. Pa.1989) .....................................................................10

*Shelton v. Bledsoe,*
    775 F.3d 554 (3d Cir. 2015)...........................................................................17

*Stoetzner v. U.S. Steel Corp.,*

897 F.2d 115 (3d Cir. 1990) .................................................................................... 10

*Sullivan v. DB Invs., Inc.,*

667 F.3d 273 (3d Cir. 2011) ......................................................................... *passim*

*Trewin v. Church & Dwight Co.,*

No. 3:12-CV-01475 (MAS) (DEA), 2015 WL 12844405 (D.N.J. June 19, 2015) ........... 21

*Varacallo v. Massachusetts Mut. Life Ins. Co.,*

226 F.R.D. 207 (D.N.J. 2005) ..................................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338 (2011) .................................................................................................... 16

*Weber v. Gov't Emps. Ins. Co.,*

262 F.R.D. 431 (D.N.J. 2009) ..................................................................................... 14

*Wetzel v. Liberty Mut. Ins. Co.,*

508 F.2d 239 (3d Cir. 1975) .......................................................................... 15, 17, 22

## **Other**

40 P.S. §§ 221.1-A ....................................................................................................... 19

40 P.S. § 510(f) ......................................................................................................... 2, 4

40 P.S. § 614 ............................................................................................................. 1, 4

40 P.S. § 1171.5(a)(7)(i) ........................................................................................ 15, 22

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 6

## I.    INTRODUCTION

Plaintiffs Daniel J. Harshbarger and Edith M. Harshbarger ("Plaintiffs" or the "Harshbargers") respectfully submit this memorandum in support of their motion for final approval of a proposed class settlement (the "Settlement") resolving all claims alleged in the above-captioned action against Defendant The Penn Mutual Life Insurance Company ("Penn Mutual"). The terms of the Settlement are set forth in the Parties' "Stipulation of Settlement" filed on April 25, 2017 [ECF 47 ("SOS")], as preliminarily approved by this Court on May 12, 2017 [ECF 52 ("PA Order").]

The proposed Settlement, if finally approved, will provide $110 million in settlement benefits to the Settlement Class Members[1] while resolving complex insurance contract issues arising out of Plaintiffs' allegations that Penn Mutual underpaid dividends to half a million policyholders. The Settlement has been evaluated and preliminarily approved by the Pennsylvania Insurance Commissioner in a Consent Order issued pursuant to administrative proceedings before the Pennsylvania Department of Insurance (the "Department"). [ECF 49-1.] The Department's approval will become final, and the corresponding administrative proceedings closed, upon final approval of the proposed class settlement by this Court.

For the reasons set forth below, the Settlement readily satisfies the Third Circuit standards for final approval and class certification. Plaintiffs' motion for final approval of the Settlement is therefore well-taken, and should be granted.

## II.    PROCEDURAL BACKGROUND

### A.    Pre-Settlement Proceedings

Plaintiffs own five participating ("par") whole life insurance policies issued by Penn Mutual. Plaintiffs filed suit in this Court against Penn Mutual on November 1, 2012, alleging that Penn Mutual breached its obligations to its par policyholders by retaining surplus due to them ("divisible surplus") in an amount exceeding the maximum retention limit permitted by 40 P.S. §

---

[1] Capitalized terms that are not separately defined in this memorandum have the same meaning as the corresponding defined terms in the Settlement Agreement.

614 ("Section 614" or the "Safety Fund Law"). [ECF 1.] Under Pennsylvania law, all participating policies delivered in Pennsylvania must contain language providing that the policies will share in the insurer's divisible surplus (40 P.S. § 510(f) ("Section 510(f)")), which Plaintiffs allege includes all surplus over the limit established by Section 614. Plaintiffs therefore asserted class claims against Penn Mutual for breach of contract, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unjust enrichment and money had and received.

Determining that Plaintiffs' claims of underpaid dividends raised complex insurance issues, the Court on April 11, 2014, elected to abstain from exercising jurisdiction and stayed the class action proceedings pending a referral to the Department for preliminary determination of those issues. [ECF 33 & 34.] Plaintiffs accordingly filed an administrative complaint with the Department, and litigated the putative class claims through the administrative hearing process. After substantial discovery over several years (involving the review of tens of thousands of pages of documents) and pre-hearing work, including the preparation and exchange of expert reports, briefing of significant issues for the Department's hearing officer, and the review of voluminous regulatory filings, Plaintiffs and Penn Mutual agreed to engage in a global mediation of both the pending administrative proceedings and this stayed class action. [Declaration of Jason B. Adkins in Support of Plaintiffs' Motion for Preliminary Approval, etc. [ECF 50 ("Adkins PA Decl."), ¶ 5.] Following two days of mediation before retired U.S. District Court Magistrate Judge Diane Welsh of JAMS, the parties reached a compromise resolution encompassing both the class claims and the administrative proceedings. *Id.*

**B.     Summary of the Proposed Settlement**

The proposed Settlement provides declaratory and injunctive relief (the "Settlement Class Benefits") to all Penn Mutual par policyholders for each par policy that was in force at any time during the period commencing January 1, 2006 and ending December 31, 2015 (a "Settlement Policy"), in the form of a "Terminal Dividend" – a monetary benefit that will be paid automatically in addition to any other dividends declared by Penn Mutual. [SOS, Section IV.] The manner of

allocating Terminal Dividends required by the injunction depends on whether the Settlement Policy was (a) in-force as of December 31, 2015 ("In Force Settlement Policies") or (b) fully terminated by lapse, surrender or death on or before December 31, 2015 ("Terminated Settlement Policies"):

- ***In Force Settlement Policies***:  Under the Settlement Penn Mutual will be ordered by the Department and by this Court to pay to those Settlement Class Members whose Settlement Policies were in force as of December 31, 2015 – in addition to all contractual benefits otherwise due under the policy – Terminal Dividends in an amount equal to 1.8% of the total Cash Surrender Value for each In Force Settlement Policy as of December 31, 2015. Penn Mutual is required to pay the Terminal Dividend upon termination of each In Force Settlement Policy (whether by surrender or upon death of the insured).  Penn Mutual is obligated under the Settlement to pay Terminal Dividends for In Force Settlement Policies totaling $97 million, based on a formula set out in the Stipulation of Settlement that establishes a minimum cash payment of $25 per In Force Settlement Policy.

- ***Terminated Settlement Policies:***  Under the Settlement Penn Mutual will be ordered by the Department and by this Court to pay to those Settlement Class Members whose Settlement Policies terminated by lapse, surrender or death on or before December 31, 2015, a *pro rata* share of a $13 million Terminal Dividend Fund established by Penn Mutual, based on a formula set out in the Stipulation of Settlement. That formula establishes a minimum cash payment of $25 per Terminated Settlement Policy.

[SOS, Section IV.]

Thus, under the proposed Settlement the Settlement Class Members will receive Terminal Dividends or cash payments totaling $110 million. [Declaration of Jason B. Adkins dated October 13, 2017 ("Adkins Decl.") ¶ 17.] Importantly, Penn Mutual will be ordered to pay the Settlement Class Benefits automatically; the Settlement Class Members will not need to file a claim or take any other steps to receive the payments due to them under the Settlement.  [*Id.*] In addition to, and

without in any way diminishing, the foregoing Settlement Class Benefits, Penn Mutual will pay (a) all costs to administer and implement the Settlement, including all Class Notice expenses, (b) Plaintiffs' Court-approved litigation expenses not to exceed $700,000, (c) Plaintiffs' attorneys' fees in an amount approved by the Court not to exceed $10 million, and (d) service awards to Plaintiffs in an amount approved by the Court not to exceed $3,750 each. [*Id.*; SOS, Sections VI & IX.]

In short, the Settlement provides $110 million in non-speculative, substantial economic relief to the Settlement Class Members without the need for any claims process or eligibility determination and without being diminished by Penn Mutual's separate payment of costs that would otherwise be borne by the Settlement Class, including all notice, administration and implementation expenses, attorneys' fees and litigation expenses.

In return for the foregoing Settlement Class Benefits, the Settlement Class Members will release all claims that Plaintiffs alleged or could allege arising out of the same factual predicate alleged in the Complaint, and the Parties agree to the entry of the Consent Order by the Department. [SOS, Sections VIII, XIII(1).] As is typical in such class-wide settlements, Penn Mutual expressly denies any and all wrongdoing, and does not by virtue of the Settlement admit or concede any claimed, actual or potential wrongdoing or liability in connection with any claims which have been or could have been alleged against it in this Action or before the Department. [SOS, Section I(B)(2).]

### C. Post-Settlement Proceedings

The Settlement is expressly conditioned upon entry by the Department of a consent order (the "Consent Order") addressing the administrative interpretation and application of the operative insurance statutes, 40 P.S. §§ 510(f) and 614. [SOS, Section XII.] The Department entered the Consent Order on April 18, 2017. [ECF 49-1.] The administrative proceedings will be terminated and dismissed upon entry of the Final Order and Judgment by this Court. [Adkins PA Decl., ¶ 6.]

The Court by its Order dated May 12, 2017, certified the Settlement Class pursuant to Rule 23(b)(1)(A) and (b)(2), appointed Class Counsel pursuant to Rule 23(g), and preliminarily approved the Settlement pursuant to Rule 23(e). [PA Order, at 3-4.] The Court in the PA Order furthermore ordered that the approved form of notice be given the Settlement Class Members, and that any such member desiring to object to the Settlement file and serve such objection by July 28, 2017, in the manner prescribed by the Court. [*Id.* at 4-5.] The Court ordered Class Counsel (a) to file "[a]ll motions, briefs, memoranda, petitions, and affidavits in support of final approval of the Settlement" on or before October 13, 2017, and (b) to file any response to class member objections on or before November 3, 2017. [*Id.* at 6.] The Court furthermore scheduled a final approval hearing for November 14, 2017. [*Id.* at 6.]

By Order dated June 2, 2017, the Court reaffirmed the foregoing schedule. [ECF 54.] By order dated July 5, 2017, the Court extended the objection deadline to August 11, 2017, for certain "Affected Settlement Class Members,"[2] while maintaining its established schedule in all other respects. [ECF 57.]

The Settlement Administrator sent the Court-approved Class Notice by U.S. Mail to approximately 500,000 policyholder members of the Settlement Class, and established a toll-free telephone number where Settlement Class Members could seek additional information and created an email address where Settlement Class Members could request copies of the Settlement Agreement and other pertinent materials. Defendant Penn Mutual's Proof of Compliance [ECF 68], at 1-3. Settlement Class Members had no fewer than 45 days to object to any aspect of the Settlement Agreement. [*Id.*]

### D. Objections to the Proposed Settlement

The response rate by the Settlement Class Members indicates exceptionally strong acceptance of the Settlement terms by the Settlement Class. [Adkins Decl. ¶ 34.] ***Of the more***

---

[2] The three categories of Affected Settlement Class Members are described in Penn Mutual's Unopposed Motion for Approval of Supplemental Class Notice and Extension of Objection Deadline for Certain Class Members. [ECF 56.]

**than 500,000 Settlement Class Members, there is only 1 timely filed substantive objection in response to the Class Notice** (an infinitesimal 0.0002% of the Settlement Class). [*Id.*] In the interests of thoroughness, however, every arguable objection received by Class Counsel (whether or not timely or otherwise filed in compliance with the PA Order) is addressed below.[3] No objection warrants denial of the proposed Settlement's benefits to the remaining 99.999% of the Settlement Class Members who have voiced no objection to the Settlement and thus presumably desire to receive its benefits.

## III. LEGAL STANDARD

The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig. (In re Gen. Motors)*, 55 F.3d 768, 784 (3d Cir. 1995). "Thus, courts should favor the use of devices that tend to foster negotiated solutions to ... actions. Prima facie, this would include settlement classes." *Id.*; *accord, Alexander v. Coast Prof'l Inc.*, Civ. Class Action No. 12-1461, 2016 WL 861329, at *2 (E.D. Pa. Mar. 7, 2016) (recognizing strong judicial policy in favor of voluntary settlement of class action litigation); *Devlin v. Ferrandino & Son, Inc.*, Civ. A. No. 15-4976, 2016 WL 7178338, at *3 (E.D. Pa. Dec. 9, 2016) (same).

Final approval of a class-action settlement requires a finding by the Court that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). The Third Circuit has recognized a presumption of fairness applies where: "(1) the negotiations occurred at arms-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected...." *In re Nat'l Football League*

---

[3] For the Court's convenience, a table of all responses (timely filed or otherwise) is attached as Appendix A.

*Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (internal quotation marks and citation omitted).

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit articulated nine factors for district courts to consider in deciding whether a class-action settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (alterations omitted)); *see also, Halley*, 861 F.3d at 488-89 (quoting *Girsh* factors*); In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157).

Finally, in *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit Court identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider when appropriate. *Halley*, 861 F.3d at 488-89. Because the *Prudential* factors generally overlap with the *Girsh* factors, however, only the *Prudential* factors relevant to the litigation in question need be addressed. *In re Prudential*, 148 F.3d at 323-24; *Alexander*, 2016 WL 861329, at *3.

For the reasons discussed below, the proposed Settlement is not only presumptively fair, it undoubtedly satisfies each of the relevant *Girsh* and *Prudential* factors.

## IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A. The Proposed Settlement Is Presumptively Fair

The proposed Settlement (a) was negotiated at arms' length, under the auspices of an experienced and reputable mediator, (b) was reached only after extensive discovery in administrative proceedings before the Department, (c) was negotiated by counsel not only

generally experienced in class litigation, but also specifically experienced in the prosecution of claims under various state "Safety Fund" statutes, and (d) is supported by 99.999% of the Settlement Class. [Adkins Decl. ¶ 24.] Therefore, "a presumption of fairness attaches." *Graudins v. Kop Kilt, LLC*, Civ. A. No. 14-2589, 2017 WL 736684, at *6 n.2 (E.D. Pa. Feb. 24, 2017).

## B. The Complexity, Expense and Likely Duration of the Litigation

"The first [*Girsh*] factor captures the probable costs, in both time and money, of continued litigation." *Barel v. Bank of Am.*, 255 F.R.D. 393, 400 (E.D. Pa. 2009) (citation and internal quotation marks omitted). "This factor weighs heavily in favor of settlement" where "[c]ontinued litigation would entail a potential dispute over class certification, a possible summary judgment motion, and trial—not to mention the possibility for appeals from a certification decision or verdict." *Ebner v. Merchs. & Med. Credit Corp.*, Civ. A. No. 14-06882, 2017 WL 1079966, at *4 (E.D. Pa. Mar. 22, 2017); *see also, e.g., In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were facts weighing in favor of settlement). "With complexity comes expense and, too often, delay." *Leap v. Yoshida*, Civ. A. No. 14-3650, 2016 WL 1730693, at *8 (E.D. Pa. May 2, 2016). "Because trial is risky, it is logical for the class members to accept the award from the Settlement Agreement and move on." *Gomes v. Extra Space Storage, Inc.*, No. 2:13-cv-929 (KSH)(CLW), 2017 WL 2999020, at *2 (D.N.J. July 13, 2017) (unpublished opinion).[4]

The complexity of the Safety Fund claims alleged by Plaintiffs cannot be gainsaid. This case presented complicated insurance, accounting and actuarial issues concerning mutual insurance companies and their compliance with the Pennsylvania "Safety Fund" law. [Adkins Decl. ¶ 63.] In its Abstention Order this Court found the issues sufficiently esoteric to abstain from

---

[4] *See also In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv0177-SM, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (where settlement was achieved in the face of "various defenses [that] could result in no liability and zero recovery for the class," the balance weighs in favor of settlement); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999) ("[T]he reality that the Class would encounter significant, and potentially insurmountable, obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement.").

exercising jurisdiction pending referral of the parties to the Department. [ECF 33, at 10 (finding that "the questions at issue involve policy considerations within the Department's particular field of expertise").] Likewise, the Department found the issues to be sufficiently complex that it set the matter for a full administrative hearing and permitted discovery – something the Department rarely permits. [Adkins Decl., ¶ 65 & Ex. F.]

Penn Mutual itself contended that the complexity and novelty of those issues before both this Court and the Department. [ECF 8, at 21 ("Attempts to resolve these questions would require the Court to immerse itself in the intricacies of the Pennsylvania insurance laws") & 24 ("Plaintiffs' claims require resolution of complex issues of state insurance law").]

In addition, absent settlement, prolonged litigation was a virtual certainty here. [Adkins Decl. ¶ 26.] First, given this Court's abstention ruling, Plaintiffs commenced what proved to be years of administrative proceedings before the Department, involving written discovery, the review of thousands of documents both from Penn Mutual and within the Department's archives, the resolution of discovery disputes, and the retention and analysis of multiple expert witnesses. [*Id.*] Any ruling by the Department's Hearing Officer would itself be subject to further review, both administratively and judicially in the state courts. [*Id*.] Only after a final administrative determination and the exhaustion of all appeals in the state courts would the matter then be returned to this Court under the federal jurisdiction retained in Abstention Order. [*Id.*] Appellate review in the Third Circuit would be inevitable as well. [*Id.*]

Penn Mutual is a well-financed adversary, represented by experienced defense counsel. Penn Mutual certainly has the financial and legal wherewithal to, and did, aggressively defend the claims from the outset. [Adkins Decl. ¶ 27.] Moreover, it could be counted on to continue to do so through the administrative proceedings before the Department, through trial before this Court, and through the inevitable appeals. If the Settlement had not been achieved, this litigation would be protracted, expensive and time consuming. [*Id.*; Adkins PA Decl. ¶ 10.]

Nevertheless, Class Counsel pursued the case with vigor, devoting 4,697 hours of attorney time and expending $741,233.61 in litigation expenses, all on a contingent basis. [Adkins Decl. ¶¶ 75 & 78.] It is certainly fair to say that challenging Penn Mutual on such esoteric actuarial issues was a complicated and expensive proposition, supporting final approval of the proposed Settlement. *See, e.g., Devlin*, 2016 WL 7178338, at *8 ("this case was complex, and the litigation was neither quick nor easy").

### C. Reaction of the Class to the Settlement

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re CertainTeed Corp. Roofing Shingle Products Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001); *see generally, Austin v. Pa. Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa.1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider."). A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy. *Alexander*, 2016 WL 861329, at *3 (and authorities cited therein); a*ccord, Delandro v. County of Allegheny*, Civ. A. No. 06-927, 2011 WL 2039099, at *11 (W.D. Pa. May 24, 2011) ("A low number of objectors compared to the number of potential class members creates a strong presumption in favor of approving the settlement.") (citing *In re Cendant Corp. Litig.*, 264 F.3d at 234–35); *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa.1989) ("The utter absence of objections from the class itself militates strongly in favor of approval of the settlement.").

As discussed above, only 1 of approximately 500,000 Settlement Class Members timely voiced any substantive objection to the proposed Settlement. [Adkins Decl. ¶ 34.] This showing of 99.999% support for the Settlement by the class demonstrates its fundamental fairness. *See, e.g., In re Prudential*, 148 F.3d at 318 (affirming district court's conclusion that class reaction was favorable when 19,000 out of 8,000,000 class members opted out and 300 objected); *Stoetzner v.*

*U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that "only" 29 objections in 281-member class "strongly favors settlement"). Consequently, this factor is "persuasive evidence" of the fairness and adequacy of the proposed Settlement, and weighs in favor of a final approval. *Alexander*, 2016 WL 861329, at *4.[5]

### D. The Stage of the Litigation and the Amount of Discovery Completed

When evaluating this *Girsh* factor, courts consider the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)). "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Alexander*, 2016 WL 861329, at *4 (quoting *In re Cendant Corp. Litig.*, 264 F.3d at 235).

This was no quick settlement. Plaintiffs' initial complaint was filed nearly five years ago. [Adkins PA Decl. ¶ 3.] Discovery began in February 2015, after commencement of the administrative proceedings before the Department, followed by expert disclosures and reports. [*Id.* ¶¶ 4-9.] By the time of settlement, Penn Mutual had produced and Class Counsel had reviewed approximately 33,000 pages of documents, including numerous complex, multi-page electronic spreadsheets. [*Id.* ¶¶ 4-5, 7.] Thousands of additional filings and records archived by the Department were reviewed as well. [Adkins Decl. ¶ 25.] Plaintiffs furthermore served disclosures and reports for three experts (a life insurance statutory accountant, an insurance rating agency expert, and a professor of insurance mutuality and insurance regulation), and Penn Mutual served disclosures for its two experts (a life insurance statutory accountant, and a former Pennsylvania Insurance Commissioner). [*Id.*] The parties exchanged opening expert reports for each of these

---

[5] Plaintiffs address every arguable objection to the Settlement on the merits below, whether or not timely filed or otherwise properly submitted in compliance with the PA Order. *See, infra*, at 17-25.

experts and were prepared to exchange their rebuttal reports at the time they agreed to engage in mediation. [*Id.*]

The foregoing discovery and expert analysis demonstrates that Plaintiffs had ample information to reach a reliable assessment of the strengths and weaknesses of the parties' respective claims and defenses. *Gomes*, 2017 WL 2999020, at *3; *Alexander*, 2016 WL 861329, at *4. The advanced development of the record thus weighs in favor of approval. *See, e.g., Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken."); *Barel*, 255 F.R.D. at 401. Indeed, this case is the polar opposite of "a case where the bulk of the attorneys' time was spent on negotiations." *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 73 (D. Mass. 2005).

### E. The Risks of Establishing Liability

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. "These inquiries 'survey the possible risks of litigation … to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement.'" *In re Ikon Office Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (quoting *In re Prudential*, 148 F.3d at 319. The existence of obstacles, if any, to the plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319.

A dispositive ruling at any stage of this prolonged process could mean a zero recovery for the class. [Adkins Decl. ¶ 29.] Penn Mutual asserted many substantial defenses, any one of which could have eliminated any possibility of recovery for the class. For example, Penn Mutual took the position that Section 614 had been implicitly repealed by subsequent insurance acts. [ECF 8.] Plaintiffs were also faced with the practical risk that the Department would be inclined to construe the Safety Fund Law in Penn Mutual's favor, particularly where the Department itself purportedly

had taken no action to enforce compliance with the alleged limits on excess surplus in recent decades. [Adkins Decl. ¶ 29.] Moreover, even if Plaintiffs were successful in establishing that Penn Mutual violated the Safety Fund law, Penn Mutual raised several arguments concerning which assets should be included as surplus for the Safety Fund calculation that, if accepted by the Department or this Court, would have eliminated or significantly reduced the amount of underpaid dividends. [*Id.*]

Although Plaintiffs remain convinced that their claims are meritorious, they unquestionably faced significant risks that they would not prevail and the policyholders would receive nothing, or if they prevailed, policyholders would receive a significantly reduced amount. [Adkins Decl. ¶ 54.] Thus, this *Girsh* factor weighs in favor of approval. *Alexander*, 2016 WL 861329, at *4; *Barel*, 255 F.R.D. at 401 ("The results of a trial here are by no means clear.").

F.      **The Risks of Establishing Damages**

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Alexander*, 2016 WL 861329, at *4 (quoting *In re Cendant Corp. Litig.*, 264 F.3d at 238-39). The assessment of experienced counsel is appropriately considered under this factor. *See, e.g, Gomes*, 2017 WL 2999020, at *3.

Absent settlement, this case at one level presented an "all or nothing" scenario, which turned on the interpretation of a statute enacted in 1921. [Adkins Decl. ¶ 30.] Class Counsel also recognized that Plaintiffs' damages calculation might yield claimed damages too high for the Department or a jury to countenance. [Adkins Decl. ¶ 31.] These risks to establishing damages compounded the difficulties in establishing liability, which itself turned on nuanced issues of statutory accounting, actuarial principles and legislative history. [*Id.*] Furthermore, in light of Penn Mutual's substantial defenses discussed above (*infra*), Plaintiffs were confronted with a real risk of a zero damages determination, or a severely reduced damage determination. [*Id.*] On top of those risks, Penn Mutual took the position that the Department had ultimate discretion to grant a

waiver of the Safety Fund limit "for cause." [*Id.*] Such a waiver, if allowed by the Department and sustained on appeal, could have impaired Plaintiffs' case. [*Id.*]

**G.      The Risks of Maintaining the Class Action through Trial**

As "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. *Alexander*, 2016 WL 861329, at *5 (quoting *In re Gen. Motors*, 55 F.3d at 817). Because the risk of decertification here is no more substantial than the risk in any class action, this factor is neutral here. *Alexander*, 2016 WL 861329, at *5.

**H.      Penn Mutual's Inability to Withstand a Greater Judgment**

Since Penn Mutual's ability to pay was never an issue in the litigation or settlement, this factor is likewise neutral. *Sullivan*, 667 F.3d at 323; *Graudins*, 2017 WL 736684, at *8; *see also, Gomes*, 2017 WL 2999020 at * 4 ("in any class action against a large corporation, the defendant is entirely likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement") (*quoting Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009)).

**I.      The Range of Reasonableness of the Settlement**

The final two *Girsh* factors, considered together, require the Court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. To assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Alexander*, 2016 WL 861329, at *5 (quoting *In re Prudential*, 148 F.3d at 322).

Any risk-based assessment of the Settlement must factor in the significant risk of zero recovery in this case based on Penn Mutual's defenses to any liability whatsoever. [Adkins Decl. ¶ 30.] A contrary construction of the Safety Fund Law, by either the Department or this Court, would be potentially fatal to the Class claims, as might a waiver by the Department. [*Id.*] And the

failure to achieve a compromise resolution would consign the Parties to years of further litigation. [*Id.*]

Furthermore, the range of potential recovery attainable through continued litigation was heavily dependent on resolution of the many accounting issues impacting the ultimate Safety Fund calculation. Plaintiffs' damages expert opined that, had Plaintiffs prevailed on every one of the disputed issues in this case, Penn Mutual had accumulated surplus exceeding the Safety Fund limit by $750 million as of 2014. [Adkins Decl., ¶ 32.] Penn Mutual's expert, in turn, opined that if the Company prevailed on even a few of the disputed accounting issues, Plaintiffs' damages would be zero. [*Id.*] Considering the $375 million midpoint of the parties' respective projected damage estimates and discounting it by the myriad risks described above, the Settlement amount of $110 million (plus the additional costs of providing notice, settlement administration, attorneys fees and expenses and class representative awards) certainly falls within the range of reasonableness for a compromise resolution of this complex, risk-fraught litigation. [*Id.*]

Thus, the *Girsh* factor focusing on the damages sought discounted by the risk of non-recovery also substantiates the reasonableness of the proposed $110 million Settlement. *See, e.g., Alexander*, 2016 WL 861329, at *5 ("In light of the questions of fact and law present in this litigation, the value the proposed settlement substantially outweighs the mere possibility of future relief.").

## J.       The Lack of a Right to Opt-out of the Settlement

One *Prudential* factor to consider is the lack of a right to opt-out of a class certified under Rule 23(b)(1)(A) or (b)(2). But here the mandatory cohesiveness inherent in Penn Mutual's obligation to treat every policyholder evenhandedly supports approval of a proposed settlement which, to be effective, must be applied across all such policyholders as a whole. *See, generally Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 252–53 (3d Cir. 1975) (allowing opt-outs from (b)(2) classes would "defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication.").

Certification of a mandatory class under Rule 23(b)(1)(A) undoubtedly eliminates the risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Here, uniform treatment of all Penn Mutual par policyholders is not only imperative given their shared status as members of a mutual insurance company, it is mandated by Pennsylvania insurance law. *See* 40 P.S. § 1171.5(a)(7)(i) (prohibiting "any unfair discrimination between individuals of the same class … in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such [insurance] contract"). Should individual par policyholders be permitted to demand different or individualized calculation of the statutory limit, Penn Mutual would be prejudiced through incompatible judicial determinations interfering with its ability to pursue a uniform course of conduct – particularly under a statutory scheme that prohibits discrimination among par policyholders. As in ERISA cases, here the only relief par policyholders could obtain for the proper calculation of the Safety Fund limit is relief that must be available to other policyholders on the same uniform terms. *Compare In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*, Civ. A. Nos. 05-1151 & 05-2369 (SRC), 2009 WL 331426, at \*12 (D.N.J. Feb 10, 2009). Certification of a mandatory class under Rule 23(b)(1)(A) is therefore appropriate and warranted.

In addition, a case may be certified as a class action under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Sullivan*, 667 F.3d at 318 ("the parties' mutual decision to settle claims 'on grounds generally applicable to the class' complies with the text of Rule 23(b)(2) and should be respected"). Such Rule 23(b)(2) certification is warranted where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'") (citation omitted). Thus, a mandatory

class is properly certified under (b)(2) where the claims seek to define the relationship between the defendant and a group uniformly situated in relation to the defendant, such that a single declaratory judgment or injunction would provide relief to either every member of the class or to no member of the class. *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015); *see, e.g., Stoetzner,* 897 F.2d at 119 (certification of Rule 23(b)(2) mandatory settlement class was appropriate where the key factual questions concerning benefits packages at issue were dispositive as to all class members); *Est. of Gardner v. Contl. Cas. Co.*, 316 F.R.D. 57, 68-69 (D. Conn. 2016) (certifying (b)(2) litigation class of policyholders seeking uniform interpretation of policy language); *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 476 (E.D. Pa. 2007) (certifying under Rule 23(b)(2) settlement class of participants in insurance company's ERISA pension plan).

Here, all members of the Settlement Class either are or are not entitled to relief under the Pennsylvania Safety Fund Statute, which Plaintiffs alleged is incorporated as a matter of law into every one of the standardized Policy contracts. Allowing Class members of such a highly cohesive group to opt out from a unified class would indeed "defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication." *Wetzel,* 508 F.2d at 252-53.

**K.     The Reasonableness of the Provision for Attorneys' Fees**

This *Prudential* factor supports settlement because, as set forth in Plaintiffs' separate application for court approval of its common fund fee award, Plaintiffs' Counsel seeks approval of Penn Mutual's payment of fees equating to only 9% of the value of the common benefit created solely through Class Counsel's efforts, a fee request that is far below the range recognized in the Third Circuit. *See, e.g., In re Gen. Motors*, 55 F.3d at 822 (observing that in common fund cases fee awards generally range from 19% to 45% of the settlement fund). Furthermore, here the fee is being paid by Penn Mutual above and beyond the $110 million common benefit, and will not diminish the relief to the Class by a single penny. [Adkins Decl. ¶ 67.] Thus, both the amount and the source of the attorneys' fee payment strongly support the reasonableness of the Settlement.

### L.    A Fair and Reasonable Means of Processing Class Member Claims

This final *Prudential* factor also weighs in favor of approval, because every member of the Settlement Class will receive relief automatically, without the need to submit any sort of claim-in process. [Adkins Decl. ¶ 17; SOS, Section IV.]

### V.    INDIVIDUAL RESPONSES/OBJECTIONS

Of the approximately 500,000 members of the Settlement Class, only one responded in a way that could reasonably be construed as a timely and properly filed substantive objection to the proposed Settlement.[6] As noted above, this equates to an overwhelming 99.99% approval rate. One other timely filer specifically requested to be ***included*** in the Settlement.[7] Two other timely filers[8] raised issues that Penn Mutual acknowledges are unrelated to the subject matter of this litigation, thus beyond the scope of the class release. [Adkins Decl. ¶ 34.]; *see, e.g., Gomes*, 2017 WL 2999020, at *4-5 (overruling objections that have no bearing on whether the settlement should be approved).

Four untimely objections were filed.[9] One of those untimely objections, which was submitted with the collaboration of a professional objector, will be addressed in a separate response filed by Plaintiffs.[10] [Adkins Decl. ¶ 35.] Finally, five other arguable objections were received by mail, but not filed with the Court as required by the PA Order;[11] of these, four expressed a desire to opt-out of the proposed Settlement (which could be construed as an objection to certification of a mandatory class). [*Id.* ¶ 36.]

---

[6] Cornish [ECF 60.]

[7] Grecco [ECF 61] ("Please include me.").

[8] Kistler [ECF 59 & 65] (asserting that PennMutual has not paid a duly submitted death claim); Soberdash [ECF 62] (asking that their policies not be surrendered "until the time of our death")

[9] Bommarito [ECF 63]; Howard [ECF 64]; Mansfield [ECF 66]; Brown [ECF 67.] Bommarito's untimely response does not appear to object to any substantive provision of the proposed Settlement. [ECF 63.]

[10] *See* Plaintiffs' Memorandum of Points and Authorities in Response to Untimely Objection filed by Jeff M. Brown, filed concomitantly herewith.

[11] Adkins Decl., Exhibits A [Gifford]; B [Harden]; C [Sullivan]; D [Vazquies]; ECF 68-3 [Coulter.]

As shown below and in Plaintiffs' additional separate response, none of the foregoing objections, whether or not timely or properly filed, warrants rejection of the proposed Settlement.

### A.      Timely Filed Objection

Objector Cornish[12] opposes the provision in the Stipulation of Settlement that permits PennMutual to *temporarily* defer payment of terminal dividends under the Settlement should its financial condition deteriorate to a specified percentage of its risk-based capital ("RBC") level. [SOS, § IV.F, at 19-20.] This provision was included in the Settlement to assure Penn Mutual's primary regulator, the Department, that Penn Mutual's obligations under the Settlement could neither cause nor aggravate the deterioration of Penn Mutual's financial condition to a level warranting enhanced regulatory concern (the "RBC Threshold Amount"). [Adkins Decl. ¶ 38.]

Contrary to Objector Cornish's concern, RBC thresholds are established regulatory measurements which (unlike the apportionment of divisible surplus) are *not* subject to Penn Mutual's discretion. *See* 40 P.S. §§ 221.1-A, *et seq.* And once Penn Mutual's financial condition returns to levels above the RBC Threshold Amount, its obligation to comply with the terms of the Settlement Agreement automatically resumes. [SOS, § IV.F, at 19-20.] ("Penn Mutual *shall pay* any such Deferred Terminal Dividends and shall resume payment of Terminal Dividends at such time as its RBC next equals or exceeds the RBC Threshold Amount.") (emphasis added). Moreover, given its current RBC of 1,214%, and the fact that its RBC has exceeded 1,100% since at least 2001, the possibility of Penn Mutual's RBC deteriorating to the 500% threshold is extremely remote. [Adkins Decl. ¶ 38.] Allowing Penn Mutual to temporarily defer the payment of terminal benefits in the highly unlikely event its RBC drops to the specified regulatory level does not meaningfully diminish the value of the common fund benefit conferred by the Settlement upon the Settlement Class as a whole, and is necessary and appropriate to ensure the financial solvency of the Company. [*Id.*]

---

[12] Cornish [ECF 60.] In this filing, Ms. Cornish first requests that her name be corrected in Penn Mutual's records. [*Id.* at 1.]

In an opposition to Penn Mutual's payment of attorneys' fees, Objector Cornish also asserts that Class Counsel is "looking to profit" from fees that are "not dependent on any condition." [ECF 60, at 1-2.] The receipt of fees by Class Counsel is, however, in fact dependent upon final approval by the Court of a class settlement which – through Class Counsel's efforts alone – generated a $110 million direct benefit for the Settlement Class. [SOS §XIII]; *see generally, Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *accord, In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07-md-01871, 2012 WL 6923367, at *2 (E.D. Pa. Oct. 19, 2012) (common fund fees are awarded to avoid "the unjust enrichment of those who otherwise would benefit from the fund without sharing in the expenses incurred by the successful litigant") (citation and internal quotation omitted).

Finally, Objector Cornish requests a breakdown "in plain monetary terms" of her individual recovery given the *pro rata* distribution of the common fund, absent which the settlement "should not be approved." [ECF 60, at 2.] Had Objector Cornish requested an estimate, Penn Mutual would have provided one to her as stated in the Class Notice. [Adkins Decl. ¶ 39.] In any event, courts have consistently rejected such demands for individual quantification of *pro rata* recovery. *See, e.g., Hendricks v. Starkist Co*., No. 13-cv-00729-HSG, 2016 WL 5462423, at *8 (N.D. Cal. Sept. 29, 2016) (description of recovery on a *pro rata* basis suffices for class notice; "the failure to disclose class size or an estimate of a member's pro rata share is not a fatal deficiency"); *Arnett v. Bank of Am., N.A.*, No. 3:11-cv-1372-SI, 2014 WL 4672458, at *3 (D. Or. Sept. 18, 2014) (stating that the recovery from the settlement fund would be a *pro rata* share suffices); *see generally, Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (internal quotation marks omitted)). As one court has explained:

> Had the [Class] Notice contained an estimated recovery of each individual Settlement Class Member, and that estimate turned out either to over-estimate or

under-estimate the amount of that recovery, objectors would surely come forward complaining that they were misled to their detriment by the Notice. It is likely for this reason that settlement notices rarely, if ever, provide such information. In short, the Court agrees that any specific figures provided in the Notice would have been misleading, if not erroneous, and led to another generation of claims. Besides, under Rule 23(e), such information is clearly not required to be set forth in a class notice.

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1342 n.10 (S.D. Fla. 2011).

In short, the concerns expressed in the lone properly filed and timely objection to the Settlement do not warrant rejecting any aspect of the Settlement or sending the parties "back to the negotiation table," let alone consigning them to what could be years of further administrative and judicial proceedings. [Adkins Decl. ¶ 54.]

## B.      Unfiled/Untimely Objections

For the sake of thoroughness, and without waiving the fact that objections not timely filed in accordance with the Court's PA Order are a nullity, Plaintiffs have separately submitted unfiled objections with the Court. [Adkins Decl., Exs. A – D.] The Court should overrule these objections on both procedural and substantive grounds. *In re Am. Family Enters.*, 256 B.R. 377, 396-97 (D.N.J. 2000) (overruling objection as untimely ***and*** on the merits).

### 1.      Procedural Deficiencies

Objections to the Settlement not filed within the time and in the manner required by the PA Order should be overruled on those grounds alone. *See, e.g., Trewin v. Church & Dwight Co.*, No. 3:12-CV-01475 (MAS) (DEA), 2015 WL 12844405, at *4 (D.N.J. June 19, 2015) ("The Court has reviewed and considered the Objection served on Class Counsel by Elizabeth Rahwan, and finds it to be both untimely and, as it was not filed with the Court, improper and of no effect."); *see also, e.g., In re Centocor, Inc. Sec. Litig.*, No. 92-CV-1071, 1993 WL 189937, at *4 n.5 (E.D. Pa. June 2, 1993) (refusing to consider late objection); *Haynes v. Shoney's, Inc.*, 89–30093–RV, 1993 WL 19915, at *2 (N.D. Fla. Jan. 25, 1993) (that objection was filed two days after deadline "would be reason enough to reject ... objection"). The Class Notice approved by the Court in this case included an explicit warning requiring compliance with its terms:

Failure to comply with the objection requirements described above (and in Section VII of the Settlement Agreement) will result in the waiver or forfeiture of any and all rights you may have had to appear separately and/or object to the terms of the Settlement.

[ECF 47, at 56.]

All objections that were not timely and properly filed with the Court should, therefore, be summarily overruled.

### 2. Lack of Substantive Merit

Even if the Court were for the sake of thoroughness to treat the unfiled requests for exclusion as objections to the certification of a mandatory class under Rule 23(b)(1)(A) and 23(b)(2), they nevertheless lack merit. *See, e.g., Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 246 (D.N.J. 2005) (rejecting untimely objections on the merits).

### a. The Unfiled Objections Requesting Exclusion

Several people within the Settlement Class mailed to Class Counsel unfiled requests to exclude themselves from the class certified by the Court under Rule 23(b)(1)(A) and Rule 23(b)(2).[13] To the extent these requests could be construed as an unfiled objection to the inability to opt-out of the mandatory Settlement Class, such an objection is not well-taken. *Sullivan*, 667 F.3d at 318 ("the parties' mutual decision to settle claims 'on grounds generally applicable to the class' complies with the text of Rule 23(b)(2) and should be respected"). As explained above (*supra*, at § IV(J)), uniform treatment of all Penn Mutual par policyholders is not only imperative given their shared status as members of a mutual insurance company, it is mandated by the Pennsylvania insurance law. *See* 40 P.S. § 1171.5(a)(7)(i) (prohibiting "any unfair discrimination between individuals of the same class … in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such [insurance] contract"). Should individual par policyholders be permitted to demand different or individualized calculations of the statutory limit, Penn Mutual would be prejudiced through incompatible judicial determinations interfering with

---

[13] Gifford, Harden, Sullivan and Vazquies [Adkins Decl., Exs. A – D.]

its ability to pursue a uniform course of conduct – particularly under a statutory scheme that prohibits discrimination among par policyholders. Allowing Settlement Class Members of such a highly cohesive group to opt out from a unified class would "defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication." *Wetzel*, 508 F.2d at 252-53.

> **b.** **The Untimely/Unfiled Objections of Mr. Howard and Ms. Coulter**

Mr. Howard opposes the allocation formula for Settlement Class Members holding policies that had been terminated "due to death" such as himself.[14] Under the Settlement, all such class members (who already received the death benefit under their policies) will receive settlement relief, including a minimum payment of $25. Mr. Howard appears to oppose a settlement fund less than the aggregate of individual claims to the allegedly underpaid dividends, and to a *pro rata* distribution of the net settlement fund.[15] Ms. Coulter also complains of the $25 minimum payment under the Settlement.[16] But a recovery of every penny claimed by Plaintiffs in the litigation is not realistic given the risks to prevailing described above, ***especially*** for policyholders holding terminated policies; the better course is to accept a compromise common fund of $13 million, to be allocated across all similarly situated policyholders holding terminated policies with a minimum payment of $25. [Adkins Decl. ¶ 40.]

---

[14] Howard [ECF 64.] Mr. Howard also obliquely raises the same concern expressed by Objector Cornish with respect to the temporary deferral of Penn Mutual's performance in the unlikely event that its RBC diminish to 500%. [*Id.* at 1.] This objection is not well-taken for the reasons discussed *supra*, at § V(A).

[15] Mr. Howard asserts the use of "[a]ny denominator other than '1' . . . will result in only partial satisfaction of the entitlement under the terms of the contract" and would unjustly enrich Penn Mutual and Class Counsel. [ECF 64, at 1-2.] Mr. Howard has misunderstood the nature of the *pro rata* allocation, which uses the cash value of each policy as the numerator and the total cash value of all eligible Terminated Class Members as the denominator – fairly distributing the pro rata allocation. A denominator of "1" would be impossible in a *pro rata* allocation. Moreover, none of the settlement fund will revert to Penn Mutual, and Class Counsels' attorney fees are to be paid by Penn Mutual directly, and not from the settlement fund.

[16] Coulter [ECF 68-3.]

Mr. Howard and Ms. Coulter understandably wish for a larger settlement. Plaintiffs have described above, however, the very real risks to any recovery at all in this action, including the risk that the Department might adopt Penn Mutual's interpretation of the Pennsylvania Safety Fund Law or grant a discretionary waiver under Section 614 that withstands appeal. [Adkins Decl. ¶ 40.] A settlement "represents a compromise between the maximum possible recovery and the inherent risk of litigation, including a difficult burden to show liability and certify a trial class." *Rougvie v. Ascena Retail Grp., Inc.*, Civ. A. No. 15-724, 2016 WL 4111320, at *22 (E.D. Pa. July 29, 2016). "The test is whether the settlement is adequate and reasonable and ***not*** whether a better settlement is conceivable." *Id.* (quoting *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *2 (D.D.C. Mar. 31, 2000) (emphasis added; internal citation omitted)); *see, e.g., In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *6 (E.D. Pa. Nov. 21, 2008) (overruling objections to the amount of the settlement that "do not provide any suggestion as to how to enhance the value of the settlement").

The Court can be assured that both Plaintiffs and Class Counsel were highly motivated to secure as large a common fund as possible, as demonstrated by the substantial time and money devoted to pursuing this litigation. [Adkins Decl. ¶ 54.] But compromise means yielding the highest hopes to practical risks of continuing the litigation. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 72 (D. Mass. 1997) ("The issue is whether the relief that the settlement does provide is adequate and reasonable. The fact that some might have preferred more lucrative relief does not control that question. A settlement is, after all, not full relief but an acceptable compromise."); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97-98 (D. Mass. 2005) ("While it is possible to hypothesize about larger amounts that might have been recovered … '[t]he evaluating court must … guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'") (quoting *In re Gen. Motors*, 55 F.3d at 806); *accord*, *In re Interpublic Sec. Litig.*, No. 02 Civ.6527(DLC), 2004 WL 2397190, at *8 (S.D.N.Y. Oct. 26,

2004) ("While the objectors have complained that the settlement is paltry, in light of the difficulties plaintiffs would encounter in further litigating this case, the Gross Settlement Fund is adequate."); *Esslinger v. HSBC Bank Nevada, N.A.*, Civ. A. No. 10-3213, 2012 WL 5866074, at *7 (E.D. Pa. Nov. 20, 2012) ("While the Court is sympathetic to the objectors' individual experiences, a settlement is, by its nature, a compromise. Considering the legal and factual obstacles that Plaintiffs must surmount to prove their claims, the Class members face a serious risk of recovering nothing without the settlement.").

### c.     The Untimely Objections of Mr. Mansfield

Another untimely filed objection complains about the lack of notice of the pendency of the putative class litigation.[17] However, a notice of pendency is not required unless and until the Court certifies the putative class, and was in this case properly given following the Court's certification of the Settlement Class in the PA Order.  [Adkins Decl., ¶ 42 & Ex. E.] Mr. Mansfield was sent notice in the June 12, 2017 mailing. [*Id*. at Ex. E.] The Class Notice was thus sent at the Court's direction, the timing of which was plainly not, as Mansfield asserts, "[a] possible plan of Penn Mutual's … to withhold public knowledge." [ECF 66, at 7.] Mansfield in his submission acknowledges receipt of the Class Notice "a few weeks ago," obviously in ample time for him to lodge a timely objection. [*Id.*]

## VI.    THE SETTLEMENT CLASS STILL MEETS ALL THE REQUIREMENTS FOR RULE 23(B)(1)(A) AND 23(B)(2) CERTIFICATION

The benefits of the proposed Settlement can only be achieved through the certification of the Settlement Class, which under the Stipulation of Settlement is defined as "(a) all persons who own or owned a Settlement Policy; and (b) all Beneficiaries of any Settlement Policy terminated by death on or before December 31, 2015, if such Beneficiaries notify or notified Penn Mutual of a death claim, or if Penn Mutual otherwise learns of a death, prior to the Implementation Date."

---

[17] [Mansfield, ECF 66, at 7.] Mr. Mansfield also complains of unrelated alleged misconduct by Penn Mutual in ways that Penn Mutual acknowledges is not relevant to this litigation and thus not prejudiced by the Settlement or the class release. [ECF 66, at 6-7; Adkins Decl. ¶ 42 at n.13.]

[SOS Section II, ¶ 35.]  A "Settlement Policy" means a participating life insurance policy issued by Penn Mutual that was in-force at any time during the period commencing January 1, 2006 and ending December 31, 2015.  [*Id.*, ¶ 37.]

As discussed in detail in the PA Order, the Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b) [ECF 52, at 1-3; Adkins PA Decl, at ¶¶ 18-21.]   In particular, the requirement for consistent treatment and the cohesiveness of the proposed Settlement Class are concretely established in this case. *See*, *supra*, at § IV(J); *see, e.g., Est. of Gardner*, 316 F.R.D. at 68-69 (certifying (b)(2) litigation class of policyholders seeking uniform interpretation of policy language). Furthermore, the declaratory and injunctive relief accepted by Penn Mutual and confirmed by the Department obviates any need for inquiry into unique circumstances or characteristics of the individual Settlement Class members. *See, e.g., Sullivan*, 667 F.3d at 317-18 (district court acted within its discretion in accepting the defendant's stipulation to the injunctive relief). Certification of a mandatory class under Rule 23(b) is therefore entirely appropriate and warranted in connection with the settlement of Plaintiffs' claims under the Pennsylvania Safety Fund Law.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for final approval of the Proposed Settlement and final certification of the Proposed Settlement Class is well-taken, and should be granted. The Court should accordingly enter the proposed form of Final Order and Judgment as agreed to by the parties, which Plaintiffs have previously lodged with the Court [ECF 47, at Ex. 4.]

**DATED:** October 13, 2017

**RESPECTFULLY SUBMITTED,**

BY DANIEL J. AND EDITH M. HARSHBARGER,

By Their Attorneys:


/s/ Jason B. Adkins
Jason B. Adkins (*pro hac vice*)
**ADKINS, KELSTON & ZAVEZ, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114
Phone: (617) 367-1040

Andrew S. Friedman (*pro hac vice*)
Francis J. Balint, Jr. (*pro hac vice*)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Phone: (602) 274-1100

Mark A. Chavez (*pro hac vice*)
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA 94941
Phone: (415) 381-5599

and

Joseph N. Kravec, Jr., (PA ID 68992)
**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
429 Fourth Avenue, Suite 1300
Pittsburgh, PA 15219
Phone: (412) 281-8400

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent by U.S. Mail to the non-registered participants listed below on October 13, 2017.

Thomas S. Bommarito
786 Camino Drive
Santa Clara, CA 95050

Risie R. Howard
1316 West Second Avenue
Pine Bluff, AR 71601-3905

Jeff M. Brown
750 South Dixie Highway
Boca Raton, FL 33432

William H. Kistler & Lillian N. Kistler Family Trust
c/o Richard E. Kistler
209 E. Maple Ave.
El Segundo, CA 90245

Cecily Cornish
PO Box 1643
Kennesaw, GA 30166-8643

John Mansfield
5528 Flamingo Avenue
Lakeland, FL 33809-3522

Anna Coulter
10070 Wyecliff Drive
Highlands Ranch, CO 80126

Donald and Patricia Soberdash
728 North Franklin Avenue
Somerset, PA 15501

Richard Gifford
[ADDRESS REDACTED]

James W. Sullivan
[ADDRESS REDACTED]

Michael Grecco
3 Auditorium Drive
Atlantic Highlands, NJ 07716

Larry Vazquies
[ADDRESS REDACTED]

Phillip and Edith Harden
[ADDRESS REDACTED]

Dated: October 13, 2017.                    /s/ *Jason B. Adkins*

28