# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL J. HARSHBARGER** | : | **CIVIL ACTION** |
| and **EDITH M. HARSHBARGER**, | : | |
| individually, and on behalf of all | : | **NO. 12-6172** |
| persons similarly situated | : | |
| *Plaintiffs* | : | **CLASS ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE PENN MUTUAL LIFE** | : | |
| **INSURANCE COMPANY** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    DECEMBER 20, 2017

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a *motion for final approval of the proposed class settlement and final certification of the settlement class* filed pursuant to Federal Rule of Civil Procedure ("Rule") 23, by Plaintiffs Daniel J. Harshbarger and Edith M. Harshbarger ("Plaintiffs"), which seeks final approval of a proposed Stipulation of Settlement (the "Settlement") that resolves all individual and class claims presented in this matter. [ECF 70]. Defendant The Penn Mutual Life Insurance Company ("Penn Mutual") filed a memorandum in support of approval of the motion. [ECF 78].

Consistent with Rule 23, on May 12, 2017, the Settlement was preliminarily approved by this Court. [ECF 52]. On November 14, 2017, a fairness hearing was held to entertain oral argument on, *inter alia*, the aforementioned motion for final approval. Counsel for the parties appeared and argued. For the reasons stated herein, Plaintiffs' motion is granted.

## BACKGROUND

Plaintiffs, who own five participating ("par") whole life insurance policies issued by Penn Mutual, filed this civil action on behalf of themselves and other similarly situated persons

("Class"), seeking damages and/or equitable relief resulting from Penn Mutual, *inter alia*, for alleged breaches of contract, violations of Pennsylvania's *Unfair Trade Practices and Consumer Protection Law* (the "Consumer Protection Law"), and failure to pay the full amount of annual policy dividends out of divisible surplus ("Divisible Surplus") due Plaintiffs under 40 Pa. Stat. Ann. § 614 ("Section 614" or the "Safety Fund Law").[1]  [ECF 1 at ¶ 1].

On December 28, 2012, Penn Mutual filed a motion to dismiss Plaintiffs' complaint in which it asked, in *part*, that the Court abstain from exercising jurisdiction over Plaintiffs' claims. [ECF 8]. Numerous motions for extensions to respond or reply were filed and granted. On July 19, 2013, this civil action was reassigned to the undersigned. [ECF 29]. By Order dated April 11, 2014, this Court found that Plaintiffs' claims raised complex insurance issues, granted the motion to dismiss by electing to abstain from exercising jurisdiction, and stayed these proceedings pending a referral to the Pennsylvania Department of Insurance (the "Department") for a preliminary determination of the issues presented in Plaintiffs' complaint. [ECF 34]. Thereafter, Plaintiffs filed an administrative complaint with the Department wherein the parties prepared to litigate the putative class claims through the administrative hearing process. After extensive discovery, the parties agreed to participate in a global mediation to resolve both the administrative proceedings and this putative class action. (*See* Declaration of Jason B. Adkins [ECF 74] (the "Adkins Declaration"), at ¶¶ 10-14). Following two days of mediation before

---

[1] Section 614 provides, in relevant part:

> Any mutual life insurance company, incorporated under the laws of this Commonwealth and transacting business therein, may establish and maintain, or, if already established, may continue to maintain, a surplus or safety fund to an amount not in excess of ten per centum of its reserve, or one hundred thousand dollars, whichever is greater, and the excess of the market value of its securities over their book value.

40 Pa. Stat. Ann. § 614.

retired United States Magistrate Judge Diane M. Walsh, a JAMS mediator and arbitrator, the parties reached a settlement that globally resolved both the administrative proceedings and this putative class action. (*Id.* at ¶ 14).

Briefly, the terms of the Settlement provide for declaratory and injunctive relief (the "Settlement Class Benefits") to all Penn Mutual par policyholders for each par policy that was in force during the period commencing January 1, 2006, and ending December 31, 2015 (a "Settlement Policy"), in the form of a "Terminal Dividend," defined as a monetary benefit that will be paid automatically in addition to any other dividends declared by Penn Mutual. The manner of allocation will depend on whether a particular policyholder's Settlement Policy was (a) in-force as of December 31, 2015 ("In Force Settlement Policies") or (b) fully terminated by lapse, surrender or death on or before December 31, 2015 ("Terminated Policies"). Under the terms of the Settlement, Penn Mutual would be ordered by the Department and by this Court to provide the following benefits to eligible policyholders ("Settlement Class Members"), *to wit*:

1. For those policyholders who owned In Force Settlement Policies, Penn Mutual will pay Terminal Dividends in an amount equal to 1.8 percent of the total Cash Surrender Value for each In Force Settlement Policy as of December 31, 2015, in addition to all contractual benefits otherwise due under the policy. Penn Mutual is obligated under the Settlement to pay Terminal Dividends for In Force Settlement Policies totaling $97 million, based on a formula set out in the Stipulation of Settlement that establishes a minimum cash payment of $25 per In Force Settlement Policy.

2. For those policyholders who owned Terminated Policies, Penn Mutual will be ordered by the Department and by this Court to pay a *pro rata* share of a $13 million Terminal Dividend Fund to be established by Penn Mutual, based on a formula set out in the Stipulation of Settlement. That formula establishes a minimum cash payment of $25 per Terminated Settlement Policy.

(*See* Stipulation of Settlement ("SOS") [ECF 47] at § IV(B)-(C)). Thus, under the terms of the Settlement, the Settlement Class Members will receive Terminal Dividends equivalent to cash

payments totaling $110 million. (Adkins Declar. at ¶ 17). Penn Mutual will be ordered to pay the Settlement Benefits automatically; the Settlement Class Members will not need to file a claim or take any other steps to receive the payments due to them under the Settlement. (*Id.*). The Settlement also provides that, in addition to, and without in any way diminishing, the Settlement Class Benefits, Penn Mutual will pay (a) all costs to administer and implement the Settlement, including all Class Notice expenses, (b) Plaintiffs' Court-approved litigation expenses (which are not to exceed $700,000), (c) Plaintiffs' attorneys' fees in an amount approved by this Court (not to exceed $10 million), and (d) service awards to Plaintiffs in an amount approved by this Court (not to exceed $3,750 each). (*Id.* at ¶ 19).[2]

The Settlement is expressly conditioned upon the Department entering a consent order (the "Consent Order") addressing the administrative interpretation and application of the operative insurance statutes; *to wit:* 40 Pa. Stat. Ann. §§ 510(f) and 614. (*See* SOS, § XII). On April 18, 2017, the Department entered the Consent Order. [ECF 49-1]. The Settlement further stipulated that the administrative proceedings would be terminated and dismissed upon the entry of this Court's Final Approval Order and Judgment. (*See* SOS, § XII).

On March 7, 2016, Plaintiffs filed an unopposed *Motion for Preliminary Approval of the Settlement*. [ECF 48]. By Order dated May 12, 2017 (the "PAO Order"), this Court certified the Settlement Class pursuant to Rule 23(b)(1)(A) and (b)(2), appointed Class Counsel pursuant to Rule 23(g), preliminarily approved the Settlement pursuant to Rule 23(e), ordered that the approved form of notice (the "Settlement Class Notice Package") be sent to the Settlement Class Members by June 12, 2017, advising any Settlement Class Member who wished to object to the

---

[2] Plaintiffs have filed a motion for this Court's approval of the portion of the Settlement that sets forth the parties' agreement with respect to fees, litigation expenses, and the class representatives' service awards. [ECF 72]. This motion will be addressed in a separate memorandum opinion and order.

4

Settlement to file and serve the objection by July 28, 2017, in the manner prescribed by this Court, and scheduled a hearing for final approval for November 14, 2017. [ECF 52]. The Settlement Administrator sent the Court-approved Class Notice by U.S. Mail to approximately 500,000 Settlement Class Members. Penn Mutual subsequently discovered that due to inadvertent technical errors, the Settlement Notice Package had not been sent to certain categories of Settlement Class Members (the "Affected Settlement Class Members").[3] This Court extended the objection period deadline to August 11, 2017, for the Affected Settlement Class Members, while maintaining its established schedule in all other respects. [ECF 57]. On August 25, 2017, Penn Mutual submitted a Proof of Compliance with this Court's PAO, showing, *inter alia*, that approximately 539,649 Settlement Notice Packets were mailed and that only 11 Settlement Class Members objected to the Settlement.

On October 13, 2017, Plaintiffs filed the instant motions, and oral argument was heard on November 14, 2017. No parties or Settlement Class Members appeared at the hearing to object to the motion.

**DISCUSSION**

Rule 23(e) provides that a court may approve a class action settlement only after "a hearing and on a finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The decision of whether to approve a settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). "While the law generally favors settlement in complex or class action cases for its conservation of judicial

---

[3] Those Settlement Class Members who were affected by this defect are described in greater detail in Penn Mutual's *Unopposed Motion for Approval of Supplemental Class Notice and Extension of Objection Deadline for Certain Class Members*. [ECF 56].

resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members." *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). Consequently, prior to approving a settlement, a court must determine whether the notice provided to class members was adequate. *In re Aetna Inc.*, 2001 WL 20928 at *4 (citations omitted).[4] The court must also "scrutinize the terms of the settlement to ensure that it is 'fair, adequate, and reasonable.'" *Id.* (quoting *In re Gen. Motors,* 55 F.3d at 785). In cases such as this, "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously," the United States Court of Appeals for the Third Circuit has required district courts "to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (quoting *In re Gen. Motors*, 55 F.3d at 805). "This heightened standard is intended to ensure that class counsel has engaged in sustained advocacy throughout the course of the proceedings, particularly in settlement negotiations, and has protected the interests of all class members." *Id*.

Class action settlement agreements are entitled to "initial presumption of fairness" when: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016); *see also In re Gen. Motors,* 55 F.3d at 785. There is a "strong presumption in favor of voluntary settlement," particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v.*

---

[4] The adequacy of the Class Settlement Notice Package was addressed in this Court's Preliminary Approval Order, [ECF 52], and will not be reassessed herein.

*Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2012) (internal quotation and citation omitted). The presumption of fairness may attach even where a class is certified for settlement purposes only, as long as the requirement of adequate representation has been satisfied. *In re Warfarin Sodium*, 391 F.3d at 535.

In *Girsh,* the Third Circuit developed a nine-factor test "which provides the analytic structure for determining whether a class action settlement is fair, reasonable and adequate under Rule 23(e)." *In re Cendant Corp. Litig.,* 264 F.3d 201, 231 (3d Cir. 2001) (citation omitted). The nine factors (the "*Girsh* factors") are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). However, no one factor is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider for a "thoroughgoing analysis of settlement terms." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). These *Prudential* factors often overlap with the *Girsh* factors, and include:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other

factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
(2) the existence and probable outcome of claims by other classes and subclasses;
(3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;
(4) whether class or subclass members are accorded the right to opt out of the settlement;
(5) whether any provisions for attorneys' fees are reasonable; and
(6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* However, only the *Prudential* factors relevant to the litigation in question need be addressed. *In re Prudential*, 148 F.3d at 323-24.

### A. Presumption of Fairness

Before applying the *Girsh* and relevant *Prudential* factors, this Court must address whether the Settlement is entitled to an initial presumption of fairness. Applying the aforementioned five factors relevant to this inquiry, this Court finds that the Settlement is entitled to a presumption of fairness. The Settlement resulted from arm's-length negotiations that occurred during extensive JAMS mediation and after years of discovery. Class Counsel has extensive experience litigating complex actions such as the one at hand. As noted, less than one percent of the Settlement Class Members filed objections to the Settlement and, given an opportunity to appear, did not attend the hearing scheduled.

### B. The Girsh and Relevant Prudential Factors

Keeping in mind the heightened standard of review that applies when considering the fairness of a settlement that results from negotiations that preceded formal class certification, as well as the initial presumption of fairness that should attach to the Settlement, this Court must now consider the *Girsh* and relevant *Prudential* factors. Having applied these factors, for the reasons that follow, this Court concludes that the Settlement is fair, adequate, and reasonable.

*Girsh Factors*

1. *The complexity, expense and likely duration of the litigation*

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League,* 821 F.3d at 437 (citations and internal quotation marks omitted). "This factor weighs heavily in favor of settlement" where "[c]ontinued litigation would entail a potential dispute over class certification, a possible summary judgment motion, and trial—not to mention the possibility for appeals from a certification decision or verdict." *Ebner v. Merchs. & Med. Credit Corp.*, 2017 WL 1079966, at *4 (E.D. Pa. Mar. 22, 2017).

Here, this case involves mutual insurance companies and their compliance with the Safety Fund Law, and presents complicated insurance, accounting, and actuarial issues. This Court initially found the issues presented in this case were sufficiently esoteric to abstain from exercising jurisdiction pending a referral of the parties to and a decision by the Department. Likewise, the Department found the issues to be complex enough to warrant a full administrative hearing and discovery—something the Department "rarely permits." (*See* Adkins Decl. at ¶ 65). Thus, in light of the complexity and novelty of the issues, a prolonged litigation was a virtual certainty.

Moreover, given this Court's abstention ruling (the "Abstention Order"), Plaintiffs would be facing years of administrative proceedings against a well-financed adversary that would require, *inter alia*, the review of thousands of documents, the resolution of discovery disputes, the deposition of numerous witnesses, and the retention and analysis of multiple experts. Any ruling by the Department's Hearing Office would be the subject of further review, both administratively and judicially in Pennsylvania state courts. Under the Abstention Order issued, this matter would be subject to the jurisdiction of this Court only after a final administrative

determination and the exhaustion of all appeals in state court. Notably, this matter is over five years old.

In sum, if the Settlement had not been reached, this litigation could have been more protracted, expensive, and time-consuming for both parties. The continued prosecution of Plaintiffs' claims against Penn Mutual would have required significant additional expense and a substantial delay before any potential recovery. Furthermore, no matter the outcome of a trial, it is likely that an appeal would have been filed, leading to further litigation costs and delay in any realized recovery. Therefore, this Court concludes that this factor weighs in favor of approving the Settlement. *See In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

### 2. *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant,* 264 F.3d at 234-35). A low number of objectors is persuasive evidence of the Settlement's fairness and adequacy. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35); *see also Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989) ("The utter absence of objections from the class itself militates strongly in favor of approval of the settlement.").

Here, only one of the approximately 500,000 Settlement Class Members voiced a timely objection to the Settlement, (*see* Adkins Declar. at ¶ 34), and only eleven Settlement Class Members filed purported objections. Among these purported objections, four were untimely filed; five were mailed, but not filed with this Court, as required by this Court's Preliminary

Approval Order; and two raised issues that are unrelated to the subject matter of this litigation and beyond the scope of the class release. (*See id.*). The small percentage of objectors leads this Court to conclude that the Settlement is satisfactory to the large majority of the Settlement Class Members.[5] Consequently, this factor is persuasive evidence of the fairness and adequacy of the

---

[5] This Court reviewed the substance and merits of each objection. As to the objection filed on July 5, 2017, by Cecily D. Cornish ("Cornish"), [ECF 60], although it was timely filed, it lacks merit. Cornish raises a number of objections to the Settlement, *inter alia*, that the Stipulation of Settlement ("SOS") permits Penn Mutual to temporarily defer payment of Terminal Dividends under the Settlement should its financial condition deteriorate to a specified percentage of its risk-based capital ("RBC") level. (*See* SOS, § IV.F, at pp. 19-20). As explained by counsel, this provision was included in the Settlement to assure the Department that Penn Mutual's obligations under the Settlement could neither cause nor aggravate deterioration of Penn Mutual's financial condition to a level warranting enhanced regulatory concern (the "RBC Threshold Amount"), (Adkins Decl. ¶ 38), regulatory measurements which (unlike the apportionment of divisible surplus) are ***not*** subject to Penn Mutual's discretion. *See* 40 P.S. §§ 221.1-A, *et seq.*, and that once Penn Mutual's financial condition returns to levels above the RBC Threshold Amount, its obligation to comply with the terms of the Settlement automatically resumes. (*See* SOS, § IV.F, at 19-20) ("Penn Mutual ***shall pay*** any such Deferred Terminal Dividends and shall resume payment of Terminal Dividends at such time as its RBC next equals or exceeds the RBC Threshold Amount.") (emphasis added). Moreover, given its current RBC of 1,214%, and the fact that its RBC has exceeded 1,100% since at least 2001, the possibility of Penn Mutual's RBC deteriorating to the 500% threshold is extremely remote. (*See* Adkins Decl. ¶ 38). Allowing Penn Mutual to temporarily defer the payment of terminal benefits in the highly unlikely event its RBC drops to the specified regulatory level does not meaningfully diminish the value of the common fund benefit conferred by the Settlement upon the Settlement Class as a whole, and is necessary and appropriate to ensure the financial solvency of the Company. [*Id.*]. Cornish also objects to the amount of attorneys' fees requested and asserts that Class Counsel is "looking to profit" from fees that are "not dependent on any condition." (*See* ECF 60 at pp. 1-2). The receipt of fees by Class Counsel is, however, dependent on the final approval by this Court of the Settlement which, through Class Counsel's efforts, has generated $110 million for the Settlement Class. (*See* SOS §XIII); *see generally, Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *accord, In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2012 WL 6923367, at *2 (E.D. Pa. Oct. 19, 2012) (common fund fees are awarded to avoid "the unjust enrichment of those who otherwise would benefit from the fund without sharing in the expenses incurred by the successful litigant") (citation and internal quotation omitted). Cornish also requested a breakdown "in plain monetary terms" of her individual recovery given the *pro rata* distribution of the common fund, absent which the settlement "should not be approved." [ECF 60, at 2.] However, courts have consistently rejected such demands for individual quantification of *pro rata* recovery. *See, e.g., Hendricks v. Starkist Co.*, 2016 WL 5462423, at *8 (N.D. Cal. Sept. 29, 2016) (holding that a description of recovery on a *pro rata* basis suffices for class notice; "the failure to disclose class size or an estimate of a member's pro rata share is not a fatal deficiency"); *Arnett v. Bank of Am., N.A.*, 2014 WL 4672458, at *3 (D. Or. Sept. 18, 2014) (holding that the recovery from the settlement fund would be a *pro rata* share suffices). In sum, the objections raised by Cornish lack merit and are overruled. In this Court's opinion, these objections do not warrant rejecting any aspect of the Settlement.

This Court also reviewed the objection filed by Richard D. Kistler ("Kistler"), on July 5, 2017, [ECF 59], and finds that, although it was timely filed, the issues raised are unrelated to the subject matter of this litigation. Specifically, Kistler asserts that Penn Mutual has not paid a duly submitted death claim. (*Id.*). Since Kistler has not raised any objections to the Settlement itself, his objection are overruled. *See, e.g., Gomes*, 2017 WL 2999020, at *4-5 (overruling objections that have no bearing on whether the settlement should be approved).

Plaintiffs contend that four objections, namely those submitted by Settlement Class Members Thomas S. Bommarito ("Bommarito"), Risie R. Howard ("Howard"), John W. Mansfield ("Mansfield"), and Jeff Brown ("Brown"), were filed untimely and, therefore, should be summarily overruled. (*See* ECF 63-64, 66-67). Bommarito's and Howard's objections, although dated July 25, 2017, and July 26, 2017, respectively were not filed until July 31, 2017. [ECF 63-64]. Mansfield's objection, dated July 28, 2017, was filed on August 8, 2017. [ECF 66]. Brown's objection is undated, but was filed with this Court on August 10, 2017. This Court's PAO provided that objections to any portion of the Settlement were to be filed with the Clerk of Court on or before July 28, 2017, (*see* ECF 52 at ¶ 4), a date that was extended to August 11, 2017. [ECF 57]. This Court is not obligated to consider late objections. *See In re Cendant*, 264 F.3d 201 at 252 (objectors waived untimely objections that plaintiff class did not satisfy Rule 23(a)'s requirements); *In re Centocor, Inc. Secs. Litig.*, 1993 WL 189937, at *3 n.5 (E.D. Pa. June 2, 1993) (court refused to consider late objections). The Class Notice approved by this Court provided as follows:

> Failure to comply with the objection requirements described [in this Court's PAO Order] (and in Section VII of the [Settlement]) will result in the waiver or forfeiture of any and all rights you may have had to appear separately and/or object to the terms of the Settlement.

(ECF 47 at p. 56). Nevertheless, given that Penn Mutual sought leave from this Court to cure certain defects in the class notice mailing process, and, by Order dated July 5, 2017, this Court extended the objection deadline to August 11, 2017, this Court is reluctant to treat the four aforementioned objections as untimely filed. Accordingly, this Court will briefly address the merits of each of these four objections.

By letter dated July 25, 2017, Bommarito complained that his share of the total settlement fund is "close to nothing," which Bommarito attributes to Penn Mutual's alleged failure to comply with Pennsylvania insurance law and the resulting underpayment of dividends, and in turn, eroded the value of his policy to "next to nothing." [ECF 63]. Bommarito, however, does not identify any particular aspect of the Settlement that is unfair, unreasonable, or inadequate with respect to him or anyone else. Bommarito's dissatisfaction with his individual settlement award stems from the distribution of settlement funds in proportion to policy value. However, Bommarito does not identify what aspect of the Settlement uniquely disadvantages him, or is unfair to the class as a whole. Calculating individual settlement awards based on relative policy value represents a heavily negotiated compromise intended to treat all members fairly, keeping in mind the fact that the settlement class is composed of holders and beneficiaries of polices that vary significantly in value, independent of any alleged underpayment of dividends. Even assuming that Penn Mutual had underpaid dividends, all of the policies would have been affected in the same way. This analysis only supports the fairness and reasonableness of paying the settlement funds in proportion to policy values. Accordingly, Bommarito's objection is overruled.

Howard objects to the use of "[a]ny denominator other than "1," which will result in only partial satisfaction under the terms of the contract" and would unjustly enrich Penn Mutual and Class Counsel. [ECF 64 at pp. 1-2]. Howard apparently misunderstands the *pro rata* allocation formula, which uses the

Settlement, and weighs in favor of a final approval. *See In re Cendant*, 264 F.3d at 234-35 (finding that a low number of objectors and opt-outs strongly favors approval of the settlement). As noted, this Court has considered the arguments and objections made by a proportionately

---

cash value of each policy as the numerator and the total cash value of all eligible Terminated Class Members as the denominator. This formula fairly distributes the *pro rata* allocation while a denominator of "1" would be impossible in a *pro rata* allocation. Under the settlement terms, none of the settlement unallocated fund will revert to Penn Mutual; and Class Counsel's attorneys' fees, when approved by the Court, will be separately paid by Penn Mutual rather than from the settlement fund. Howard also objects to the proposed allocation formula for Terminated Policies, and argues that Penn Mutual should be obligated to pay the cash value and dividends owed to each Settlement Class Member based upon their individual policy's specified value. (*Id.*). As explained by this Court *supra* in its *Girsh* analysis, given the risks posed by continued litigation, the present value of the Settlement is fair and adequate compensation for Terminated Policyholders. Although Howard understandably wishes for a larger recovery, the objection does not warrant rejecting the Settlement, given the attendant risks of continued litigation. Accordingly, Howard's objection is overruled.

      In a handwritten document dated July 28, 2017, Mansfield complains that he never received any dividends from Penn Mutual and recites the history of his policy. [ECF 66]. Mansfield's objection does not pertain to any term of the Settlement and is not relevant to the Court's Rule 23 inquiry into the fairness, reasonableness, and adequacy of the Settlement. Thus, the objection is overruled.

      Brown raises a number of objections to the substance of Class Counsel's fee application, and calls into question this Court's compliance with Rule 23(h). [ECF 67]. This Court will weigh the merits of Brown's objection in its memorandum opinion addressing Plaintiffs' *motion for Defendant's payment of attorneys' fees, reimbursed litigation expenses, and class representative service awards*, filed concomitantly herewith. To the extent that the objection is not to the Settlement itself, no further comment is needed.

      Several individuals within the Settlement Class, namely Richard Gifford, Phillip E. Harden, Ethel J. Harden, James W. Sullivan, and Larry Vazquies, (*See* ECF 74-1-4), mailed to Class Counsel unfiled requests to be excluded from the class certified by the Court under Rules 23(b)(1)(A) and 23(b)(2). To the extent these requests could be construed as unfiled objections to the inability to opt-out of the mandatory Settlement Class, this Court finds they lack merit. Given the nature of the highly homogenous Class, the nature of the injunctive and declaratory relief under the Settlement, and the requirements under Pennsylvania law that all par policyholders be treated uniformly, certification of a mandatory Settlement Class under both Rules 23(b)(1)(A) and 23(b)(2) was entirely appropriate and warranted in this instance.

      Finally, this Court has also reviewed additional correspondence from several Settlement Class Members concerning their participation in the Settlement. This includes correspondence from one Settlement Class Member who asked to be *included* in the Settlement, and a letter from two policyholders who asked that their individual policies not be surrendered "until the time of our death." To the extent that these correspondence qualify as objections, they do not identify any particular aspect of the Settlement that is unfair, unreasonable, or inadequate with respect to any class member and, thus, should have no bearing on this Court's analysis of the Settlement under Rule 23.

small number of Settlement Class Members, and finds that these objections do not warrant disapproving the Settlement. Accordingly, this Court finds that the second *Girsh* factor weighs in favor of approving the Settlement.

### 3. *The stage of the proceedings and the amount of discovery completed*

When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the Settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium,* 391 F.3d at 537. Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)). "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Alexander v. Coast Prof., Inc.,* 2016 WL 861329, at *4 (E.D. Pa. Mar. 7, 2016) (quoting *In re Cendant*, 264 F.3d at 235).

As set forth above, this case has been actively litigated from its commencement for more than five years. (*See* Adkins Decl. at ¶ 8). Following the referral to the Department, discovery began in February 2015. (*Id.* at ¶ 10). By the time of settlement, Penn Mutual had produced and Class Counsel had reviewed approximately 33,000 pages of documents, including, numerous complex, multi-page electronic spreadsheets. (*Id.*). Thousands of additional filings and records archived by the Department were also reviewed. (*Id.* at ¶ 25). The parties had exchanged expert reports for each of their expert witnesses and were prepared to exchange rebuttal expert reports when they agreed to engage in mediation. (*Id.*).

As a result of the extensive discovery that preceded the parties' settlement, the parties had ample opportunity to identify and grasp their respective strengths and weaknesses. Consequently, this Court finds that this factor weighs in favor of approval. *See, e.g., Chakejian*

*v. Equifax Info Servs.,* 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of the case, and mediation efforts undertaken").

### 4. *The risks of establishing liability*

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to a plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319.

A dispositive ruling at this stage in the litigation could mean a zero recovery for the Class. Penn Mutual asserted many substantial defenses, any one of which could have eliminated any possibility of recovery for the class. (*See* Adkins Decl. ¶ 29). For example, Penn Mutual argued that Section 614 had been implicitly repealed by subsequent insurance actions, and that it could no longer form a basis for recovery. (*See* ECF 8). Plaintiffs were also faced with the practical risk that the Department would be inclined to construe the Safety Fund Law in favor of Penn Mutual, particularly where, as Plaintiffs point out, the Department itself purportedly had taken no action in recent decades to enforce compliance with the alleged limits on excess surplus. (*See* Adkins Decl. ¶ 29). Moreover, even if Plaintiffs were successful in establishing that Penn Mutual violated the Safety Fund law, Penn Mutual raised several arguments which could have eliminated or significantly reduced the amount of underpaid dividends awarded to the class. (*See id.*). Plaintiffs unquestionably faced significant risks in litigating this case to trial. Thus, this Court finds that this *Girsh* factor weighs in favor of approval. *See Barel*, 255 F.R.D. at 401. ("The results of a trial here are by no means clear.").

*5. The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. Absent settlement, this case presented an "all or nothing" scenario for liability which turned on the interpretation of the Safety Fund statute. (*See* Adkins Decl. at ¶ 30). Class Counsel also recognized that Plaintiffs' damages calculation might yield claimed damages too high for the Department or a jury to countenance. (*Id.* at ¶ 31). The risks to establishing damages compounded the difficulties in establishing liability, which itself turned on nuanced issues of statutory accounting, actuarial principles and legislative history. (*Id.*). Furthermore, as discussed *supra*, Plaintiffs were confronted with the risk of a significantly reduced damages award, or no award at all. (*Id.*). For all of these reasons, the fifth *Girsh* factor also weighs in favor of approval of the Settlement.

*6. The risks of maintaining the class action through trial*

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," *In re Gen. Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. *Id.* This case was preliminarily certified as a class action by Order dated May 12, 2017. (*See* ECF 52). Because the risk of decertification here is no more substantial than the risk in any other class action, this *Girsh* factor is neutral. *See In re CertainTeed Corp.*, 269 F.R.D. at 488 (quoting *In re Cendant*, 264 F.3d at 239) (when "the risk of decertification appears to be extremely slight, the factor is really neutral"); *see also Alexander*, 2016 WL 861329, at *5.

*7. The ability of Defendant to withstand a greater judgment*

This factor considers "whether [a defendant] could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. According to

16

Plaintiffs, Penn Mutual's ability to pay was never an issue in the litigation or settlement. (*See* ECF 71 at p. 14). Therefore, this factor is neutral.

*8-9. The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation*

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. *In re Warfarin*, 391 F.3d at 538. In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the Settlement." *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the Settlement substantially outweighs the mere possibility of future relief. As noted *supra,* Plaintiffs faced significant risks that they might be unsuccessful in obtaining any recovery for the Settlement Class, given the defenses made and the issues of statutory construction raised in this litigation. Furthermore, the range of potential recovery attainable through continued litigation was heavily dependent on resolution of complex accounting and actuarial issues. Plaintiffs' damages expert opined that, assuming Plaintiffs had prevailed on every one of the disputed issues in the case, Penn Mutual had accumulated surplus exceeding the Safety Fund limit by $750 million as of 2014. (*See* Adkins Decl. ¶ 32). Penn Mutual's expert, in turn, opined that if Penn Mutual prevailed on even a few of the disputed accounting issues, Plaintiffs' damages would be zero. (*Id.*). Considering the disparate calculations of the parties' experts, the Settlement amount of $110 million certainly falls within the range of reasonableness for a compromise resolution of this complex, risk-fraught litigation. Thus, these factors weigh in favor of approval.

**Relevant *Prudential* Factors**

*1. Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a mature point in the proceedings. Discovery had been conducted and, as such, the parties were in a position to fully evaluate the strengths, weaknesses, and merits of their respective case. The development of the record weighs in favor of approval. *See Chakejian*, 275 F.R.D. at 215 (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken").

*4. Whether any provisions for attorneys' fees are reasonable*

As set forth in Plaintiffs' *motion for approval of Defendant's payment of attorneys' fees, reimbursed litigation expenses, and class representatives' incentive awards*, [ECF 72], this *Prudential* factor supports settlement because Class Counsel seek approval of a fee award that equates to only 9% of the value of the common benefit created solely through Class Counsel's efforts, and is a fee request that is far below the range customarily awarded by courts in the Third Circuit. *See, e.g., In re Gen. Motors*, 55 F.3d at 822 (observing that in common fund cases fee awards generally range from 19% to 45% of the settlement fund). Furthermore, the fee request is being paid by Penn Mutual above and beyond the $110 million common benefit, and will in no way diminish the relief to Settlement Class Members. (*See* Adkins Decl. ¶ 67). Thus, both the amount and the source of the attorneys' fees payment strongly support the reasonableness of the Settlement.

*5. Whether the procedure for processing individual claims under the settlement is fair and reasonable*

This final *Prudential* factor also weighs in favor of approval, because every member of the Settlement Class will receive relief automatically without the need to submit any sort of claim-in process. (Adkins Decl. ¶ 17).

**CONCLUSION**

Upon consideration of each of the relevant *Girsh* factors and *Prudential* factors, and for the reasons stated, this Court finds that the proposed class action Settlement is fair, reasonable and adequate. Accordingly, Plaintiffs' *motion for final approval of the proposed class Settlement and final certification of the settlement class*, [ECF 70], is granted. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.